UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK BRUNCKHORST III, individually and in his capacity as trustee of THE FRANK BRUNCKHORST III 2001 TRUST,<br><br>        Plaintiff,<br><br>        -against-<br><br>ERIC BISCHOFF; J.P. MORGAN TRUST COMPANY OF DELAWARE as trustee of THE ERIC BISCHOFF 2012 TRUST; THE ERIC BISCHOFF 2012 TRUST; SUSAN STRAVITZ KEMP, in her capacity as co-trustee of THE BARBARA BRUNCKHORST 1994 TRUST and executrix of THE ESTATE OF BARBARA BRUNCKHORST, AND RICHARD TODD STRAVITZ, in his capacity as co-trustee of THE BARBARA BRUNCKHORST 1994 TRUST, trustee of THE BARBARA BRUNCKHORST 2010 TRUST, and executor of THE ESTATE OF BARBARA BRUNCKHORST,<br><br>        Defendants. | Case No. 1:21-cv-04362-JPC<br><br><br><br><br><br><br><br>**ERIC BISCHOFF'S ANSWER COUNTERCLAIM, AND CROSSCLAIM** |
| ERIC BISCHOFF,<br><br>        Counterclaim-Plaintiff,<br><br>        v.<br><br>FRANK BRUNCKHORST III, individually and in his capacity as trustee of THE FRANK BRUNCKHORST III 2001 TRUST,<br><br>        Counterclaim-Defendant. | |

ERIC BISCHOFF,

               Crossclaim-Plaintiff,

         -v.-

SUSAN STRAVITZ KEMP, in her capacity as
co-trustee of THE BARBARA
BRUNCKHORST 1994 TRUST and executrix
of THE ESTATE OF BARBARA
BRUNCKHORST, AND RICHARD TODD
STRAVITZ, in his capacity as co-trustee of THE
BARBARA BRUNCKHORST 1994 TRUST,
trustee of THE BARBARA BRUNCKHORST
2010 TRUST, and executor of THE ESTATE OF
BARBARA BRUNCKHORST,

               Crossclaim-Defendants.

## ANSWER

Defendant Eric Bischoff ("Eric" or "Defendant"), by his undersigned counsel, answers the Complaint for Declaratory Relief (the "Complaint")[1] filed by Plaintiff Frank Brunckhorst III ("Frank" or "Plaintiff"), individually and in his capacity as trustee of the Frank Brunckhorst III 2001 Trust ("Frank's 2001 Trust") as follows:

## GENERAL DENIAL

Except as otherwise expressly stated herein, Defendant denies each and every allegation in the Complaint, including without limitation, (1) any allegations contained in introduction, headings, subheadings, unnumbered paragraphs and footnotes of the Complaint; (2) specifically denies that Defendant caused Plaintiff any harm; (3) denies any liability to Plaintiff; and (4) denies knowledge or information sufficient to form a belief as to the truth or falsity of the

[1] Capitalized terms that are not otherwise defined herein shall have the meanings ascribed to them in the Complaint.

allegations that consist of excerpts from and/or references to third-party publications or statements.

Defendant reserves the right to challenge the authenticity of all sources and documents referred to or purportedly quoted from in the Complaint. Further, in each case where Defendant admits that Plaintiff accurately quotes a portion of a document, Defendant does not thereby admit any allegation concerning the document's application, any characterization of the document or portion thereof, or that the selective quotation fairly represents the document as a whole, and respectfully refers the Court to such document for a true and complete accounts of its contents.

Defendant reserves the right to seek to amend or supplement his Answer as may be necessary or appropriate.

## RESPONSES TO SPECIFIC ALLEGATIONS

1.      Denies the allegations contained in Paragraph 1 of the Complaint. Boar's Head Provisions Co. Inc. ("Boar's Head" or the "Company') was founded in 1933 by Frank Brunckhorst Jr. and Bruno Bischoff, the son and son-in law of Frank Brunckhorst, respectively, some two years after the death of Frank Brunckhorst. Admits that Boar's Head became a successful business through the hard work of Bruno Bischoff and his brother-in-law, Frank Brunckhorst Jr.

2.      Admits that Alvina Bischoff, the daughter of Boar's Head founder Bruno Bischoff, married and took Martin as her last name and that Barbara Brunckhorst ("Barbara") was the daughter of the Boar's Head founder Frank Brunckhorst Jr.. Admits that keeping Boar's Head as a family-owned business to be controlled by the descendants of Bruno Bischoff and Frank Brunckhorst, Jr. was important to the owners of Boar's Head and that, to that end, the owners of Boar's Head entered into the 1991 Shareholder's Agreement and Irrevocable Trust

(the "Shareholder's Agreement" or the "Agreement"), which contains certain provisions that

███████████████████████████████████████████████████

██████, and respectfully refers the Court to the Shareholder's Agreement for its full and

complete contents, and otherwise denies the allegations of Paragraph 2.

   3.  Denies the first sentence of Paragraph 3 of the Complaint, but admits that

the Shareholder's Agreement ████████████████████████████████████

██████, admits the remaining allegations contained in Paragraph 3, and respectfully refers

the Court to the Shareholder's Agreement for its full and complete contents.

   4.  Paragraph 4 of the Complaint states a legal conclusion to which no

response is required.  Defendant respectfully refers the Court to the Shareholder's Agreement for

its full and complete contents.

   5.  Paragraph 5 of the Complaint states a legal conclusion to which no

response is required.  Defendant respectfully refers the Court to the Shareholder's Agreement for

its full and complete contents.

   6.  Denies knowledge and information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 6 of the Complaint except denies that Barbara or

Frank owned any Boar's Head Shares in their individual capacities as of November 2020 and

denies that the intended structure of Boar's Head's ownership was as set forth in this Paragraph.

   7.  Admits that Eric owns 14.35% of Boar's Head Shares and denies

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

the remainder of Paragraph 7 of the Complaint, except denies that Robert S. Martin ("RSM") or

Robert P. Martin ("RPM") owned any Boar's Head Shares in their individual capacities and

further denies that RPM or any trusts for RPM's benefit are or could be a valid Group B Shareholder.

8.  Denies the allegations contained in Paragraph 8 of the Complaint except admits that Frank is the grandson of Frank Brunckhorst and is Barbara's nephew, that RSM is Alvina Martin's son and that RPM is Alvina Martin's grandson.

9.  Denies the allegations contained in Paragraph 9 of the Complaint, except admits that Herbert Bischoff is Eric's father and was Alvina Martin's brother, and that Eric is not an employee of Boar's Head or any of its affiliates at this time.

10.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13.  Admits that Barbara Brunckhorst died on November 18, 2020, and by the time of her death, had placed her Boar's Head stock (the "Shares") into the Barbara Brunckhorst 1994 Trust (the "1994 Trust") and Barbara Brunckhorst 2010 Trust (the "2010 Trust," together with the 1994 Trust, the "Barbara Brunckhorst Trusts").

14.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint, except admits that Susan Stravitz Kemp and Richard Stravitz Kemp are Barbara's children and avers that they may each be a trustee of the 1994 Trust and believes that Richard Stravitz Kemp may be a trustee of the 2010 Trust.

15.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint, except admits that Frank purported to provide notice in January 2021 of his intent to purchase the Shares and denies that Frank's purported notice was valid or consistent with the Shareholder's Agreement, and respectfully refers this Court to the Shareholder's Agreement for its full and complete contents.

16.     Denies the allegations contained in Paragraph 16 of the Complaint, except admits that Eric and Frank would sometimes speak about the Company or their families.

17.     Denies the allegations contained in Paragraph 17 of the Complaint, except admits that on January 6, 2021 the Bischoff 2012 Trust exercised its option to purchase the Shares pursuant to the terms of the Shareholder's Agreement.

18.     Denies the allegations contained in Paragraph 18 of the Complaint, except admits that Eric asserts that Frank is not entitled to acquire the Shares.

19.     Denies the allegations contained in Paragraph 19 of the Complaint.

20.     Paragraph 20 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, Eric admits that he maintains that Frank is not entitled to receive the Shares and that Eric has the exclusive right to purchase them pursuant to the terms of the Shareholder's Agreement.

21.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint, except admits on information and belief that Frank is a resident of Florida and a trustee and beneficiary of the Frank Brunckhorst III 2001 Trust.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint, except admits on information and

belief that Barbara Brunckhorst was the beneficiary of the 1994 Trust and of the 2010 Trust, and that, at the time of her death, Barbara was a citizen of Virginia, and that Susan Stravitz Kemp and Richard Todd Kemp were appointed as co-executors of the Estate of Barbara Brunckhorst (the "Estate") on January 19, 2021.

23.    Admits the allegations contained in Paragraph 23 of the Complaint.

24.    Admits the allegations contained in Paragraph 24 of the Complaint.

25.    Admits on information and belief the allegations contained in Paragraph 25 of the Complaint.

26.    Admits, on information and belief, that the parties are completely diverse and admits that the amount in controversy exceeds $75,000, excluding attorneys' fees, interests, and costs.

27.    Admits that Paragraph 27 of the Complaint quotes language from a portion of the Shareholder's Agreement and respectfully refers the Court to the Shareholder's Agreement for its full and complete contents.

28.    Admits that Paragraph 28 of the Complaint quotes language from a portion of the Shareholder's Agreement and respectfully refers the Court to the Shareholder's Agreement for its full and complete contents.

29.    Paragraph 29 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admits the allegations contained in Paragraph 29.

30.    Paragraph 30 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, admits that the Bischoff 2012 Trust has transacted business in the Southern District of New York and states that Defendant lacks

knowledge or information sufficient to form a belief as whether the J.P. Morgan Trust Company or the Trustees have transacted business in this District.

31.    Paragraph 31 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admits the allegations contained in Paragraph 31, except states that Defendant lacks knowledge or information sufficient to form a belief as whether the J.P. Morgan Trust Company or the other Trustees have transacted business in this District.

32.    Admits the allegations contained in Paragraph 32 of the Complaint.

33.    Admits the allegations contained in the first and second sentences of Paragraph 33 of the Complaint and denies the allegations contained in the third sentence of Paragraph 33, denies the footnote contained in Paragraph 33 as an incomplete recital of the Interim Settlement Agreement and respectfully refers the Court to the Interim Settlement Agreement for its full and complete contents.

34.    Denies that Frank is entitled to receive the Shares "at any time," admits that Paragraph 34 of the Complaint contains a selective quotation of language contained in the Shareholder's Agreement and respectfully refers the Court to the Shareholder's Agreement for its full and complete contents.

35.    Admits that the allegations contained in the first and second sentences of Paragraph 35 of the Complaint contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and denies the allegations contained in the third sentence of Paragraph 35.

36.    Paragraph 36 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 36, and respectfully refers the Court to the Shareholder's Agreement for its full and complete contents.

37.    Paragraph 37 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, admits that Paragraph 37 contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents and otherwise denies the allegations contained in Paragraph 37.

38.    Admits that Paragraph 38 of the Complaint contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and otherwise denies the allegations.

39.    Admits that Paragraph 39 of the Complaint contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and otherwise denies the allegations contained in Paragraph 39.

40.    Paragraph 40 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, admits that Paragraph 40 contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and otherwise denies the allegations.

41.    Paragraph 41 of the Complaint states a legal conclusion to which no response is required.  To the extent a response is required, admits that Paragraph 41 contains

selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and otherwise denies the allegations.

42.    Paragraph 42 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, admits that Frank purported to send written notice of his intent to purchase the Shares on January 22, 2021, admits that Eric purports to have sent valid notice to purchase the Shares, admits that Paragraph 42 contains selective quotations of language contained in the Shareholder's Agreement, respectfully refers the Court to the Shareholder's Agreement for its full and complete contents, and otherwise denies the allegations.

43.    Paragraph 43 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required Admits that Paragraph 43 contains quotations of language contained in the Shareholder's Agreement and respectfully refers the Court to the Shareholder's Agreement for its full and complete contents.

44.    Paragraph 44 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, denies the allegations contained in Paragraph 44.

45.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Complaint.  To the extent a response is required, Defendant denies the allegations.

46.    Defendants lacks the knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 of the Complaint.  To the extent a response is required, Defendant denies the allegations.

47.     Denies the allegations contained in the first sentence of Paragraph 47 of the Complaint, admits the remaining allegations contained in Paragraph 47 and respectfully refers the Court to the arbitration cited for a complete and accurate description of its contents.

48.     Admits the allegations contained in Paragraph 48 of the Complaint and respectfully refers the Court to the action cited for a complete and accurate recital of contents.

49.     Paragraph 49 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, admits the allegations contained in first and second sentences of Paragraph 49, admits that the third sentence of Paragraph 49 contains a selective quotation of language contained in the February 27, 2020 Interim Settlement Agreement (the "Interim Settlement Agreement") and respectfully refers the Court to the Interim Settlement Agreement for its full and complete contents.

50.     Paragraph 50 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, admits that Paragraph 50 contains selective quotations of language contained in the Interim Settlement Agreement and respectfully refer the Court to the Interim Settlement Agreement for its full and complete contents.

51.     Paragraph 51 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Barbara's and the Trustee's conduct and otherwise denies the allegations contained in Paragraph 51.

52.     Paragraph 52 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, denies the allegations contained in Paragraph 52, except admits that Frank purported to notice his intent to purchase the Shares on

January 22, 2021 and admits on information and belief that Susan Stravitz Kemp and Richard Todd Stravitz were appointed co-executors of the Barbara Brunckhorst Estate.

53.    Admits that Paragraph 53 of the Complaint contains quotations of language contained in in Frank's purported January 22, 2021 notice and respectfully refers the Court to the notice for its full and complete contents.

54.    Defendant lacks knowledge and information sufficient to form a belief to the truth of the allegations contained in Paragraph 54.

55.    Paragraph 55 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, denies the allegations contained in Paragraph 55, except admits that, as Group B Shareholders, Eric and Eric's Trust exercised on January 6, 2021 their option to purchase the Shares and that they are not Group A Shareholders.

56.    Denies the allegations contained in Paragraph 56 of the Complaint.

57.    Paragraph 57 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, admits that the first three sentences of Paragraph 57 quotes language from a portion of Eric's April 9, 2021 letter to Susan Stravitz Kemp and Richard Todd Stravitz, respectfully refers the Court to that letter for its full and complete contents, and otherwise denies the allegations.

58.    Paragraph 58 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, admits that Eric's counsel sent a letter to the Trustees on April 14, 2021 which referenced Eric's April 9, 2021 letter, respectfully refers the Court to the April 14 letter for its full and complete contents, and otherwise denies the allegations.

59.     Admits that Paragraph 59 of the Complaint quotes language from a portion of the April 14 letter, respectfully refers the Court to that letter for its full and complete contents and otherwise denies the allegations.

60.     Paragraph 60 of the Complaint incorporates by reference the allegations from Paragraphs 1 through 59.  Defendant hereby incorporates all of his responses to Paragraphs 1 through 59 as if fully set forth herein.

61.     Paragraph 61 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admits the allegations contained in Paragraph 61.

62.     Paragraph 62 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admits the allegations contained in Paragraph 62.

63.     Paragraph 63 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admits that the Shareholder's Agreement is a valid and enforceable contract, denies that Frank is a party to the Shareholder's Agreement, and admits that Eric is a party to the Shareholder's Agreement.

64.     Paragraph 64 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 64, except admits that is Frank's contention.

65.     Paragraph 65 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 65, except admits that is Frank's contention.

66.     Paragraph 66 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 66, except admits that is Frank's contention.

67.     Paragraph 67 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 67, except admits that is Frank's contention.

68.     Paragraph 68 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 68, except admits that is Frank's contention.

69.     Paragraph 69 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, denies the allegations contained in Paragraph 69, except admits that is Frank's contention.

70.     Paragraph 70 of the Complaint states a legal conclusion to which no response is required. To the extent a response is required, admit the allegations contained in Paragraph 70.

71.     Paragraph 71 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, denies that Plaintiff is entitled to any relief, including the relief sought on Pages 24-25 of the Complaint, Paragraphs (A), (B), (C), (D), (E), (F), (G), (H), (I), and (J).

## **AFFIRMATIVE AND OTHER DEFENSES**

### **First Defense**

### **Failure to State a Claim**

72.     Defendants incorporate Paragraphs 1 through 71 above, as if fully set forth herein.

73.     Plaintiff fails to state a claim upon which relief may be granted.

### **Second Defense**

### **Eric Bischoff Has a Superior Right to the Shares**

74.     Defendants incorporates Paragraphs 1 through 71 above, as if fully set forth herein.

75.     Plaintiff's action is without merit because Eric Bischoff, as outlined fully in his Counterclaim, Crossclaim and Third-Party Claims below, has a superior right to the Shares.

\* \* \* \* \*

## COUNTERCLAIMS AND CROSSCLAIMS

Defendant, Counterclaim and Crossclaim Plaintiff Eric Bischoff ("Eric"), by and through his undersigned counsel, brings this (a) Counterclaim against Plaintiff and Counterclaim-Defendant Frank Brunckhorst III, in his individual capacity ("Frank"), and as trustee of the Frank Brunckhorst III 2001 Trust ("Frank's 2001 Trust"); and (b) Crossclaim against Susan Stravitz Kemp, as co-trustee of the Barbara Brunckhorst 1994 Trust, and Richard Todd Stravitz, as co-trustee of the Barbara Brunckhorst 1994 Trust and as trustee of the Barbara Brunckhorst 2010 Trust (together, the "Trustees"), and asserts as follows[2]:

## INTRODUCTION

1.    Boar's Head Provisions Co., Inc. ("Boar's Head" or the "Company") is a family-owned, nationally famous, premier manufacturer of delicatessen products that has its roots in Brooklyn, New York.  For the past 30 years, the Boar's Head Shareholder's Agreement and Irrevocable Trust, dated 1991 (the "Shareholder's Agreement" or the "Agreement") has been the exclusive agreement governing the ownership and transfer of all Boar's Head stock.  Pursuant to the clear, unambiguous and carefully thought out terms of that Agreement, Eric has the sole and exclusive right to purchase all shares of Boar's Head stock owned by the Barbara Brunckhorst 1994 Trust and the Barbara Brunckhorst 2010 Trust (collectively, the "Barbara Brunckhorst Trusts") that were deemed offered for sale upon the death of Barbara Brunckhorst ("Barbara") in November 2020 (the "Shares").  This action arises from the fact that Frank, having failed to validly exercise his potential right to acquire the Shares, now improperly lays claim to them.

---

[2]    Certain individuals are referenced in this pleading by their first name or initials only for ease of reference, as various family members relevant to issues involved in this matter bear the same surname.

2.      The Shareholder's Agreement ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████

3.      On November 18, 2020, Eric's cousin Barbara passed away.  Barbara was a beneficiary of the Barbara Brunckhorst Trusts, which held approximately 25% of the Company's stock at the time of her death.  Thus, as set forth in the Shareholder's Agreement, ████████████ ████████████████████████████████████████████.

4.      ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████ ████████████████████████████████████████

██████████████████████████████████████████.

5.      ████████████████████████████████████████

███████████████████████████████████████.

6.      ██████████████████████████████████████

██████████████████████████████.  On January 6, 2021, Eric accepted the deemed offer.  No other Group B Shareholder accepted the deemed offer ██████████████.  Thus, Eric

████████████████████████████████████████████████████████

is the *only* Shareholder who exercised his option to purchase the Shares pursuant to the mandated procedure set forth in the Agreement.



7.    Having missed his window for accepting the offer to purchase the Shares, Frank scrambled in an attempt to lay claim to the Shares.  First, he sent a belated notice of acceptance on January 22, 2021 on behalf of himself purporting to exercise the right to purchase the shares.

█████████████████████████████████████████████████████████████████

███████████████████████████████    It is plainly untimely.

8.    Next, Frank launched a campaign against Eric, claiming that Eric's exercise of his contract rights under the Shareholder's Agreement demonstrates "breathtaking greed."  Frank claims that he and Barbara had mutually understood that if either of them died, the other would inherit their shares and donate a portion of the economic value of the deceased's interest in Boar's Head to charitable organizations.  This purported understanding was allegedly captured in a non-binding and non-enforceable 2010 Memorandum of Understanding ("MOU") entered into by Frank and Barbara.  However, even assuming, for purposes of argument, that Frank and Barbara shared such an "understanding" or that Barbara intended that Frank would purchase the

Shares upon her death, any such understanding or intention does not create legal rights where there are none.

9.      Indeed, in the MOU itself, Frank acknowledged that neither he nor his trusts would acquire the Shares if they did not follow the letter of the Shareholder's Agreement.  The MOU states that "[t]he Shareholders' Agreement ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ but acknowledges that "[t]he Company and/or **other shareholders of the Company would succeed to the purchase right of the survivor of Barbara and Frank if he or she failed to exercise it**." (MOU, at 1 (emphasis added).)  That is precisely what happened here.

10.     Frank or Frank's 2001 Trust had two clear paths under the terms of the Shareholder's Agreement to obtain ownership of the Shares.  *First*, Barbara's trust instruments could have expressly provided that any Boar's Head shares she owned would pass to Frank or his trust.  *Second*, Frank's 2001 Trust could have purchased the Shares ████████████████ ████████.  Neither of those things happened. ████████████████████████████ ████████████████████████████████████████

11.     With his rights now challenged by Frank, Eric brings this Counterclaim and Crossclaim seeking a judicial determination that: (i) pursuant to the express terms of the Shareholders Agreement, Eric timely and properly exercised his option to purchase the Shares; (ii) Eric has the exclusive right to purchase the Shares, consistent with the terms of the Agreement, and (iii) the Trustees are required to transfer the Shares to Eric no later than August 18, 2021 ████████████████████████████████.

12.    To enforce his exclusive right to purchase the Shares, Eric brings this Crossclaim seeking an injunction prohibiting the Barbara Brunckhorst Trusts from transferring the Shares to Frank, the Frank 2001 Trust, or any other actual or purported Shareholder other than Eric, as well as an order compelling the Barbara Brunckhorst Trusts to sell the Shares to Eric ███████ ████████████████████████████████████████████████.

## PARTIES

13.    Counterclaim and Crossclaim Plaintiff Eric Bischoff (*i.e.*, Eric) is an individual residing at 40 Forest Road, North Haven, New York 11963. Eric is a party to the Shareholder's Agreement and an owner of Boar's Head shares.

14.    Counterclaim-Defendant Frank Brunckhorst III, is an individual residing in Florida. Frank is a trustee and beneficiary of The Frank Brunckhorst III 2001 Trust (*i.e.*, Frank's 2001 Trust).

15.    On information and belief, Crossclaim Defendants Susan Stravitz Kemp and Richard Todd Stravitz (*i.e.*, the "Trustees") are citizens and residents of Virginia, co-executors of the Estate of Barbara Brunckhorst, and co-trustees of the Barbara Brunckhorst 1994 Trust. In addition, Richard Todd Stravitz is a trustee of the Barbara Brunckhorst 2010 Trust.

## RELEVANT NON-PARTIES

16.    Non-party Barbara Brunckhorst (*i.e.,* Barbara) was, at the time of her death, a beneficiary of the Barbara Brunckhorst Trusts and an individual residing in Virginia.

17.    Non-party Boar's Head Provisions Co., Inc. (*i.e.*, Boar's Head) is an S Corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 1819 Main Street, Suite 800, Sarasota, Florida 34236.

## JURISDICTION, VENUE, AND GOVERNING LAW

18.     The Court has subject matter jurisdiction over this Counterclaim and Crossclaim,

pursuant to 28 U.S.C. §1332 because Counterclaim and Crossclaim Plaintiff Eric Bischoff is a

domiciliary of New York, Counterclaim-Defendant is a domiciliary of Florida, Crossclaim

Defendants are domiciliaries of Virginia, and the amount in controversy exceeds $75,000,

excluding attorneys' fees and costs.

19.     The Court also has supplemental jurisdiction over this Counterclaim and

Crossclaim pursuant to 28 U.S.C. §1367(a) because the Court has original jurisdiction over the

action filed by Counterclaim-Defendant, and because Counterclaim-Defendants' Complaint and

this Counterclaim and Crossclaim are so related that they form part of the same case or

controversy under Article III of the U.S. Constitution.

20.     Venue is proper pursuant to 28 U.S.C. §1391 because Counterclaim-Defendants

filed the Complaint in this district.

21.     The Shareholder's Agreement ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

## STATEMENT OF FACTS

**A.    The Boar's Head Business and Relevant Family Lines.**

22.     In 1905, Frank Brunckhorst founded the Frank Brunckhorst Company ("FB Co."),

to distribute delicatessen products from his horse-drawn wagon in Brooklyn, New York. The

meats that FB Co. distributed were then manufactured by others.

23.     Two years after Frank Brunckhorst's death in 1931, Board's Head was founded

by Bruno Bischoff ("Bruno"), who was Frank Brunckhorst's son-in-law, Frank Brunckhorst Jr.

("Frank, Jr.") and Theodore Weiler, the Company's financial backer, to manufacture deli meats

for distribution by FB Co. The founding members shared an understanding that Mr. Weiler's Boar's Head shares would revert back to the Brunckhorst and Bischoff families upon his death. As intended, when Mr. Weiler died in 1987, his Boar's Head equity interests reverted to the families.

24.    Bruno and Frank Jr. each became patriarchs of two family lines, the Bischoffs and the Brunckhorsts. The founders intended that both family lines have equal rights and access to ownership of the Company.

25.    A diagram depicting the lineal descendants of the two family lines is depicted below.



26.    Although the ownership of the Company was initially divided equally between the two family lines, the shares historically have been transferred in ways that result in unequal ownership between the two. Thus, while the Brunckhorst and Bischoff family lines have desired equal ownership between the two lineages, that outcome was never guaranteed or required.

27.    By way of example, in the Bischoff family line, Herbert Bischoff (Eric's father) owned 25% of Boar's Head equity. When Herbert died in 1973, Barbara purchased all of

Herbert's Boar's Head shares, increasing the Brunckhorst family shareholding to more than 50%, and resulting in an unequal distribution of shares among the two family lines.

28.     Following his father's death and upon graduating from college, Eric began working as a full-time employee of Boar's Head with the promise and expectation that he would receive the Boar's Head shares his father once owned.  While some of those shares were later transferred back to Eric, most went to the Martin side of the Bischoff family line.  Forty-eight years later and after working full-time for Boar's Head for over three decades, including moving to Virginia and supervising the building, start up and successful operation of the Company's first manufacturing plant outside of Brooklyn, the family has not made good on its promise to restore to Eric the shares previously owned by his father.

**B.     In 1991, All Then-Existing Shareholders Enter Into the Shareholder's Agreement**

29.     In 1991, the then-existing Boar's Head Shareholders entered into the Shareholder's Agreement,

30.     At the time the Shareholder's Agreement was executed,

31.

upon receiving Boar's Head stock, the Barbara Brunckhorst Trusts and Frank's 2001 Trust became Shareholders fully bound by the terms of the Shareholder's Agreement.

23

32.     Throughout the years, the Shareholders have sought to adhere to the terms of the Shareholder's Agreement with regard to the transfer and sale of Boar's Head stock.

**C.     The Shareholder's Agreement** ████████████████████████████████
████████████████████████████

33.     The Shareholder's Agreement ██████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

34.     ██████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

35.     ████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████████████████
███████████████████████████

36.     On information and belief, the trust instruments for the Barbara Brunckhorst Trusts did not provide for the transfer of the Shares ████████████████████████
██████████  ███████████████████████████████████

37.    ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████

38.    Thus, on the date of Barbara's death (*i.e.*, November 18, 2020), the Trustees of
the Barbara Brunckhorst Trusts were deemed to have offered all the Shares for sale █
███████████████████████████████████████.

39.    ███████████████████████████████████
██████
        █      ███████████████████████████████
        ███████████████████████████████████
        ███████████████████████████████████
        ███████████████████████████████
        ███████████████████████████████████
        ██████
        █      ███████████████████████████████
        ███████████████████████████████
        ███████████████████████████████
        ███████████
        █      █████████████████████████████
        ███████████████████████████████████
        ███████████████████

40. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████

41. █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**D.    Barbara Passes Away on November 18, 2020** ███████████████████
████████████

42.     Barbara, the Shareholder-Beneficiary of the Barbara Brunckhorst Trusts, died on November 18, 2020.  The Shares (defined above) held by the Barbara Brunckhorst Trusts constituted approximately 25% of the Company.  Pursuant to the plain terms of the Agreement, ███████████████████████████████████████████

43.     Thus, as the Barbara Brunckhorst Trusts are Group A Shareholders, ██████████ ███████████████████████████████████████████ ███████████████████████████.  On information and belief, the only other Group A Shareholder at that time was Frank's 2001 Trust.  No Group A Shareholder exercised its option to purchase the Shares ██████████████████████████.

44.     ███████████████████████████████████████████ ████████████████████████.  Likewise, the Company did not exercise its option to purchase the Shares ██████████████████████████.

26

45. █████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

**E.**    ████████████████████████████████████    **Eric Timely and Properly Exercises His Right to Purchase the Shares** ████████████████████

46.    On January 6, 2021, Eric, a Group B Shareholder, exercised his option to purchase the Shares ████████████████████████████████████████████

███████████████████████████████████████████.

47.    In strict compliance with Paragraph 19, ████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████. Eric has since

confirmed that his exercise notice was properly addressed to at least one of the Trustees, Susan

Stravitz Kemp, at her home address, and that both of the Trustees received the notice.

48.    Eric's notice constituted a valid and legally-binding acceptance of the deemed

offer to purchase the Shares because the notice was timely and strictly complied with the terms

and conditions of the Agreement.

49.    As of January 6, 2021, both Eric and a trust for which he is a beneficiary, the Eric

Bischoff 2012 Trust, were Group B Shareholders.  Accordingly, the Eric Bischoff 2012 Trust

also sent a notice to exercise its right to purchase the Shares.  However, the Eric Bischoff 2012

Trust is no longer a Shareholder and is no longer seeking to purchase the Shares.[4]  Eric,

---

[4]    Pursuant to an agreement entered into by Frank's 2001 Trust, Eric and others, ███████████████████████

████████████████████████████. As required by that same agreement, ███████████████.

individually, remains a Group B Shareholder, and he accepted all of the Shares deemed offered in his individual capacity.

50.    ████████████████████████████████████████



████████████████████████████████████████████████████ On information and belief, no other Group B Shareholder sent written notice of an intent to acquire the Shares ████████████████████████████████.

51.    Eric is the only Shareholder who timely and properly accepted the deemed offer to purchase the Shares pursuant to the terms of the Shareholder's Agreement.  As such, Eric has the sole and exclusive right to acquire the Shares.

**F.    Only After Eric Exercises His Right ████████████ Does Frank Purport to Exercise His Own Right to Purchase the Shares on January 22, 2021**

52.    Eric's notice of his acceptance of the deemed offer to sell the Shares apparently triggered Frank to assert an expired and invalid right to purchase the Shares.

53.    On January 22, 2021, Frank (purportedly in his capacity as a Group A Shareholder) sent a letter to the Barbara Brunckhorst Trusts purporting to give notice that he was accepting an offer to purchase the Shares.  However, Frank's letter was untimely, improper and ineffective.

54.    First, ████████████████████████████████████████ ████████████████████████████████.  It was therefore untimely and ineffective under New York law, which strictly construes contractual time limitations on option agreements.

55.    In an effort to justify his delay, Frank has offered a tortured reading of the Shareholder's Agreement which improperly mixes and matches inapplicable provisions.  Frank alleges ████████████████████████████████████████████████

28

███████████████████████████████████████████████████████

████████████████████████████████████████████ his January 22, 2021

notice timely.  (Complaint, ¶¶39-42.)  But this argument applies the wrong clock from the

Shareholder's Agreement.

     56.   ████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

████████

     57.   ██████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

     58.   The non-binding MOU that Frank signed acknowledges that "[t]he Shareholders'

Agreement █████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ " (MOU, at 1 (emphasis added).) ████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

     59.   ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

29

60. ██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ Between 1991 and her death in 2020,

Barbara transferred all her shares to her trusts. ████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

61.    Further, pursuant to the Shareholder's Agreement, ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

62.    Accordingly, even assuming, for purposes of argument, that the January 22, 2021

letter by Frank purporting to accept a deemed offer to purchase the Shares was timely (it was

not), it still would have no effect under the Agreement because Frank had no individual right to

purchase the Shares.

63. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

64.    Subsequent to a February 27, 2020 Interim Settlement Agreement (the "Interim

Settlement Agreement") entered into by all the then-Shareholders, ████████████████████

██████████████████████████████████████████████████

████████████████████████████. Thus, in January 2021, Frank's 2020 Trust was a

Shareholder, but Frank's 2001 Trust was not.

     65.     As described, a Shareholder ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

     66.     On information and belief, subsequent to Frank's January 22, 2021 notice letter,

Frank's 2020 Trust transferred all of its shares back to Frank's 2001 Trust.  Thus, Frank's 2020

Trust is no longer a Shareholder ████████████████████████████████

████████████████████.

     67.     ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████

## G.    Eric's Attempt To Consummate The Purchase of Shares

     68.     ██████████████████████████████████████

██████████████████████████

     69.     On April 14, 2021, counsel for Eric sent a letter to the attention of Susan Stravitz

Kemp, one of the Trustees, confirming Eric's intent to consummate the purchase of the Shares

████████████████████████████████.

70.    ████████████████████████████████████ the Trustees have not yet committed to sell the Shares to Eric.

## H.    Frank Initiates this Action, Claiming That He Had An Understanding with Barbara that the Shares Would Pass to Him

71.    In addition to sending a late and otherwise deficient notice, when Frank realized that he had failed to accept the deemed offer of the Shares and that he forfeited any ability to acquire them, he initiated this action against his cousin Eric.  Rather than accept the plain terms of the Shareholder's Agreement to which he is bound, Frank has made a series of extra-contractual arguments that seek to supplant the terms of the binding and enforceable contract that has governed the Shareholders' ownership and transfer of shares for the past 30 years.

72.    Frank alleges that Barbara intended that the Shares be transferred to him, and that her intent is the MOU.  (Complaint, ¶ 45.)  Frank claims that the MOU reflects Frank and Barbara's agreement that if one of them died, the other would acquire the deceased's shares and that the value of those shares in excess of the purchase price would be donated to a charitable organization of the deceased's choice.  That is not correct.

73.    The MOU merely sets forth a nonbinding expression of intent by the parties to make charitable gifts to the predeceased party's favored charities in the event the surviving party realizes an economic benefit from a favorable purchase of the predeceased party's shares pursuant to the terms of the Shareholder's Agreement.  Nothing in the MOU requires that Barbara or her trusts give or transfer any shares to Frank or Frank's 2001 Trust.

74.    Significantly, as Frank admits in his Complaint, the MOU is *non-binding* and, in any event, Frank and Barbara "have no power to amend the Shareholder's Agreement without the consent of the Company and its other shareholders" (*Id*., ¶ 45.)  Thus, Barbara's purported intentions—as described by Frank—have no bearing on the determination required in this action

32

regarding the dispute about the parties' respective rights and obligations under the Shareholder's Agreement.

75.    Moreover, the existence of the MOU supports Eric's interpretation of the Agreement.  The MOU was purportedly entered into *after* the Shareholder's Agreement, so Barbara and Frank were well aware of the terms and processes mandated by it.  Barbara could have carried out what Frank purports was her intention had she followed the mandated procedure set forth in the binding Shareholder's Agreement, yet she failed to do so.

76.    To create the impression that the transfer of the Shares from Barbara's trusts to Frank was treated as an inevitability, Frank claims that before Barbara died he began obtaining appraisals and telling third parties that he planned to purchase the Shares.  But even if Frank took those steps, they are irrelevant under the Agreement.  ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████ Frank and his trust plainly did not comply with those requirements.

77.    Fundamentally, had Barbara truly wished to bequeath the Shares to Frank or to a trust for Frank's benefit upon her death, she could have done so through the operative trust instruments.  ███████████████ She chose not to do so.  Accordingly, she left Frank — and all other Shareholders — to seek to purchase the Shares pursuant to the strict and unambiguous terms of the Shareholder's Agreement.  Eric did just that.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

78.    Eric incorporates by reference and re-alleges the allegations set forth above in Paragraphs 1 through 77 as if fully set forth herein.

79.    Pursuant to 28 USC § 2201, the Court has the authority to declare the rights and other legal relations of any interested party seeking such declaration.

80.    An actual controversy has arisen and now exists between Eric and the Counterclaim and Crossclaim Defendants that is within the jurisdiction of the Court concerning the parties' rights and obligations under the Shareholder's Agreement, which controversy may be determined by a declaratory judgment of the Court.

81.    The Shareholder's Agreement is a valid, enforceable contract, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

82.    Eric has materially complied with the relevant terms and conditions of the Shareholder's Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮, and the Shares should be transferred to Eric.

83.    Eric's January 6, 2021, written exercise notice of his acceptance of the deemed offer to purchase the Shares constituted valid and timely notice under all relevant provisions of the Shareholder's Agreement.  Eric's Trust does not claim any right to the Shares at this time.

84.    Eric states that Frank did not provide any notice of intent on behalf of Frank's 2001 Trust to purchase the Shares pursuant to the Shareholder's Agreement.  Frank's January 22, 2021 purported exercise notice sent in his individual capacity was both improper and untimely. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Therefore, neither Frank nor his 2001 Trust had a right to purchase the Shares.

85.    The Trustees of the Barbara Brunckhorst Trusts have not yet agreed to sell the Shares to Eric, as required by the Shareholder's Agreement.

86.    A judicial determination is necessary and appropriate at this time and under these circumstances for the parties to ascertain their rights and obligations to one another.

87.    The Court should declare that: (i) pursuant to the express terms of the Agreement, Eric timely and properly exercised his option to purchase the Shares; (ii) Eric has the exclusive right to purchase the Shares, ███████████████████████████████████ ████████ and (iii) the Trustees are required to transfer the Shares to Eric no later than August 18, 2021 ██████████████████████████.

88.    To enforce his exclusive right to purchase the Shares, Eric Bischoff seeks an injunction prohibiting the Trustees from transferring the Shares to Frank Brunckhorst III or to the Frank Brunckhorst III 2001 Trust, and an order compelling Trustees to sell the Shares to Eric per the terms and conditions of the Agreement.

## RELIEF REQUESTED

Wherefore, Counterclaim and Crossclaim Plaintiff Eric Bischoff prays for relief as follows:

A.    Enter a declaratory judgment that Eric Bischoff timely and properly exercised his option to purchase the Shares;

B.    Enter a declaratory judgment that Eric Bischoff has the exclusive right to purchase the Shares;

C.    Enter an injunction prohibiting the Barbara Brunckhorst Trusts from transferring the Shares to anyone other than Eric;

D.    Enter an injunction compelling the Trustees to cause the Barbara Brunckhorst Trusts to sell the Shares to Eric Bischoff on the terms and conditions provided under the Agreement;

35

E.     Award damages for any distributions made to or on account of the Shares after

August 18, 2021 not paid to Eric Bischoff and;

F.     Grant Eric Bischoff any such other and further relief as the Court deems just and

proper.


Dated: July 30, 2021
        New York, NY

By: /s/ *Michael E. Swartz*
        SCHULTE ROTH & ZABEL LLP

        Michael E. Swartz
        Taleah E. Jennings
        Randall T. Adams

        919 Third Avenue
        New York, New York  10022
        (p) 212-756-2000
        (f) 212-593-5955

        *Attorneys for Defendant,*
        *Counterclaim-Plaintiff and*
        *Crossclaim Plaintiff Eric Bischoff*