UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK BRUNCKHORST III, individually and in his capacity as trustee of THE FRANK BRUNCKHORST III 2001 TRUST,<br><br>                Plaintiff,<br><br>        v.<br><br>ERIC BISCHOFF; J.P. MORGAN TRUST COMPANY OF DELAWARE as trustee of THE ERIC BISCHOFF 2012 TRUST; THE ERIC BISCHOFF 2012 TRUST; SUSAN STRAVITZ KEMP, in her capacity as co-trustee of  THE BARBARA BRUNCKHORST 1994 TRUST and executrix of THE ESTATE OF BARBARA BRUNCKHORST, AND RICHARD TODD STRAVITZ, in his capacity as co-trustee of THE BARBARA BRUNCKHORST 1994 TRUST, trustee of THE BARBARA BRUNCKHORST 2010 TRUST, and executor of THE ESTATE OF BARBARA BRUNCKHORST,<br><br>                Defendants. | FILED UNDER SEAL<br><br><br>No. ___ Civ. _____<br><br><br>COMPLAINT FOR DECLARATORY RELIEF<br><br><br><br>JURY TRIAL DEMANDED |

Plaintiff, Frank Brunckhorst III ("Frank"), individually and in his capacity as trustee of The Frank Brunckhorst III 2001 Trust, and by and through his attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, alleges as follows:

## INTRODUCTION AND BACKGROUND

**The Ownership of Boar's Head**

1.       Boar's Head Provisions Co., Inc. ("Boar's Head" or the "Company") was founded in 1905 by Frank Brunckhorst and became a successful business in its early years through the hard work of Frank Brunckhorst and his brother-in-law, Bruno Bischoff.

2.       Keeping Boar's Head as a family business to be controlled equally by the descendants of Frank Brunckhorst (the "Brunckhorst Family") and by the descendants of Bruno Bischoff (the "Martin-Bischoff Family"[1]) was important to the owners of Boar's Head and, to that end, the owners of Boar's Head entered into the 1991 Shareholder's [sic] Agreement and Irrevocable Trust ("Shareholder's Agreement"), which contains provisions specifically designed to facilitate keeping the ownership and control of Boar's Head split evenly (50-50) between the Brunckhorst Family and the Martin-Bischoff Family.

3.       The Shareholder's Agreement divides the ownership and control of Boar's Head between "Group A Shareholders" and "Group B Shareholders."  At the time the Shareholder's Agreement was executed, Barbara Brunckhorst[2] ("Barbara") owned fifty percent (50%) of the shares of Boar's Head and was the only Group A Shareholder.  The other fifty percent (50%) of the shares of Boar's Head was owned by members of the Martin-Bischoff Family (or their trusts) and these owners are designated as the Group B Shareholders in the Shareholder's Agreement.

4.       To facilitate keeping the ownership of Boar's Head split equally among the Brunckhorst Family as the Group A Shareholders and the Martin-Bischoff Family as the Group B Shareholders, Section 3 of the Shareholder's Agreement contains restrictions on the transfer of Shares, but specifically allows for the transfer at any time of the Shares held by a Group A Shareholder to any other Group A Shareholder or any other member of Barbara's immediate family (including nieces and nephews) who is an Active Employee.  Similarly, Section 3 of the Shareholder's Agreement specifically allows for the transfer at any time of the shares held by a

---

[1]   Alvina Bischoff, the daughter of Bruno Bischoff and Bertha (Brunckhorst) Bischoff, married and took Martin as her last name.

[2]   Barbara Brunckhorst was the daughter of Frank Brunckhorst, the founder of Boar's Head.

Group B Shareholder to any other Group B Shareholder or any other member of Alvina Martin's immediate family who is an Active Employee.

5.     To further facilitate keeping the ownership of Boar's Head split equally among the Brunckhorst Family as the Group A Shareholders and the Martin-Bischoff Family as the Group B Shareholders, Sections 4 and 5 of the Shareholder's Agreement contain provisions specifying in the event of the death of a Shareholder, the other members of the deceased Shareholder's Group have the first option to purchase the deceased Shareholder's Shares upon favorable terms.

6.     As of November 2020, the intended structure of Boar's Head's ownership remained intact, because Boar's Head continued to be held equally between the Brunckhorst Family as Group A Shareholders, and the Martin-Bischoff Family as Group B Shareholders.  Specifically, as of November 1, 2020, the Group A Shareholders were: (1) Barbara or trusts associated with Barbara, which owned collectively twenty-five percent (25%) of the Boar's Head Shares; and (2) Frank or trusts associated with Frank, which owned (and still own) collectively twenty-five percent (25%) of the Boar's Head Shares.

7.     As of November 1, 2020, the Group B Shareholders were:  (1) Robert S. Martin ("Bob") and his son Robert P. Martin ("Bobby") (together, the "Martins") or trusts associated with Bob and Bobby, which owned (and still own) collectively 35.65% of the Boar's Head Shares; and (2) Eric Bischoff or trusts associated with Eric Bischoff which owned (and still own) collectively 14.35% of the Boar's Head Shares.

8.     Frank is the grandson of Boar's Head's founder Frank Brunckhorst, and is Barbara's nephew.  Frank is also an Active Employee of Boar's Head, as that term is defined in the Shareholder's Agreement.  Bob is Alvina Martin's son and is also an Active Employee of Boar's Head.  Bobby is Alvina Martin's grandson and is also an Active Employee of Boar's Head.

Frank and the Martins have been responsible for directing the operations of Boar's Head for years and continue to direct the operations of Boar's Head.

9.     Eric Bischoff's ("Eric") father, Herbert Bischoff, was a brother of Alvina Martin. Eric has not been involved in the day-to-day operations of Boar's Head since 2008 and is not an employee of Boar's Head or any of its affiliates.

**Barbara Dies and Eric Improperly Tries To Block Frank from Receiving Barbara's Shares**

10.     Frank and Barbara, both prominent philanthropists, have always had the desire to give back, and each intended to donate, following his/her death, a substantial portion of his/her estate—including the economic value of his/her interest in Boar's Head—to charitable organizations.  To ensure that their plans were realized, Frank and Barbara agreed over a decade ago, in an executed Memorandum of Understanding, that if one of them died, the other would acquire the deceased's shares in the Company at the favorable price specified in the Shareholder's Agreement, and that following the acquisition, the surviving shareholder would gift the net cash flow of those shares to a designated charitable organization over a period of years, in annual installments, until the purchase price of the shares plus the donations to the charitable  organization equaled the fair market value of the shares.  The Memorandum of Understanding reflects Barbara's and Frank's intentions that the surviving shareholder acquire the deceased's shares in the Company, although it is non-binding as to how the acquisition of shares would occur.  Notwithstanding its non-binding language, Frank will abide by the terms of the Memorandum of Understanding.

11.     Barbara's generosity extended to her family members as well as charities.  As evidence of the deep bond between Frank and Barbara, when Frank's mother passed away in 1985 when Frank was 22, Barbara offered to adopt him and care for him as her own child.  Barbara's commitment to charitable giving also was evidenced through her contributions to her charitable

foundations and, in turn, the support provided from those foundations to a variety of charitable organizations and causes.

12.    The Brunckhorst Foundation, based in New York, was established in 1969. Frank is one of the chairs of the Brunckhorst Foundation, which focuses on the environment and conservation, as well as medical research. On information and belief, its assets are around $160 million. Between the years 2018 and 2020, the Brunckhorst Foundation made over $20 million in grants and donations to dozens of charitable organizations. In each year between 2018 and 2020, the Brunckhorst Foundation donated at least $780,000 to the Sierra Club Foundation, $475,000 to the Southern Environmental Law Center, $400,000 to the Nature Conservancy, $325,000 to the Environmental Defense Fund, and $225,000 to the Natural Resources Defense Council.[3] The Brunckhorst Foundation is the beneficiary of The Barbara Brunckhorst 2010 Trust, as amended (the "2010 Trust"), and has been the assignee of Barbara's net income from the 2010 Trust. The separate Barbara Brunckhorst Foundation was established pursuant to the terms of The Barbara Brunckhorst 1994 Trust, as amended and restated in October 2020 (the "1994 Trust"). The 1994 Trust sets forth, among other things, that the Barbara Brunckhorst Foundation, which has approximately $350 million in assets, "shall exist and shall be administered and operated exclusively for charitable, scientific and educational purposes within the meanings of those terms as used in § 501(c)(3) of the Code" and that the trustees of the Barbara Brunckhorst Foundation "follow the pattern of charitable giving BARBARA observed during her life" when making distributions to qualified charities.

---

[3]    *See, e.g.*, IRS Form 990-PF, Return of Private Foundation, The Brunckhorst Foundation, for tax year beginning January 1, 2018, and ended December 31, 2018), at Part XV Line 3, *available at*: https://projects.propublica.org/nonprofits/display_990/237000850/01_2020_prefixes_22-23%2F237000850_201812_990PF_2020011417025364.

13.     On November 18, 2020, Barbara died.  By the time of Barbara's death, Barbara had placed her Boar's Head shares (the "Barbara Brunckhorst Shares" or the "Shares") in the 1994 Trust and the 2010 Trust.

14.     Barbara's children, Susan Stravitz Kemp and Richard Todd Stravitz, are both trustees of the 1994 Trust, and Richard Todd Stravitz is the Trustee of the 2010 Trust.  Susan Stravitz Kemp and Richard Todd Stravitz may be referred to collectively hereunder as the "Trustees."

15.     In the months before her death, both before and after she was diagnosed with an aggressive form of brain cancer, Barbara reiterated to close friends and family her intention that Frank receive her shares.  In light of Barbara's clear intent, before her passing, Frank (along with the Trustees) began the process of transferring Barbara's shares to Frank, consistent with Barbara's intentions and the provisions of the Shareholder's Agreement.  These efforts continued following Barbara's death.  In addition to this course of conduct, and also consistent with the Shareholder's Agreement, following the appointment of an executor and executrix of the Estate of Barbara Brunckhorst (the "Estate"), Frank provided written notice in January 2021 of his intent to acquire the Barbara Brunckhorst Shares.

16.     All individuals relevant to this litigation were aware of Barbara's intention that her shares be transferred to Frank following her death.  Frank and Eric had frequent conversations—sometimes more than once a month—regarding the Company (including conversations while Barbara's health was declining), and during some of those conversations Frank discussed with Eric the good that would be achieved with the value of the Barbara Brunckhorst Shares, including the specific scientific research that would benefit.

17.     Notwithstanding Eric's knowledge that Barbara and Frank intended Frank to acquire Barbara's Shares upon her death, and that such a transfer would be consistent with the intent of the Shareholder's Agreement to maintain ownership of Boar's Head equally between the Brunckhorst Family and the Martin-Bischoff Family, on January 6, 2021 the Eric Bischoff 2012 Trust purported to notice its intention to purchase the Barbara Brunckhorst Shares.

18.     Eric has made clear that he seeks to thwart Barbara's intention that Frank receive her shares after her death and that Frank gift income from those shares to charity. Eric, apparently motivated by breathtaking greed, asserts and threatens to pursue claims that Frank is not entitled to acquire the Barbara Brunckhorst Shares under the Shareholder's Agreement. As detailed herein, Eric's position is baseless, disregarding (among other things) that the Shareholder's Agreement provides that Barbara's shares may be transferred to Frank "at any time."

19.     All the relevant parties knew, and know, that Barbara intended Frank to obtain Barbara's Shares after her death. Frank's purchase of the Barbara Brunckhorst Shares will benefit Barbara's charitable intent, since Frank will purchase the Shares at the favorable price specified in the Shareholder's Agreement but then gift additional amounts to Barbara's charitable foundations consistent with the Memorandum of Understanding between Frank and Barbara. Eric's assertions ignore the well-established intentions of Barbara and Frank, the parties' course of conduct before and after Barbara's death, and various provisions of the Agreement that support Frank, not Eric, as the rightful recipient of the Barbara Brunckhorst Shares.

**Frank Is Entitled to Declaratory Judgment**

20.     Nevertheless, Eric maintains that Frank is not entitled to receive Barbara's shares, and has threatened to bring suit unless the Barbara Brunckhorst Shares are transferred to him. Frank therefore seeks a declaratory judgment declaring that: (i) Frank is the appropriate recipient

of the Barbara Brunckhorst Shares, consistent with Barbara and Frank's intentions; (ii) pursuant to Paragraph 3(b) of the Shareholder's Agreement, Frank is entitled to receive the Barbara Brunckhorst Shares "at any time"; (iii) consistent with Paragraphs 4(a) and 5(b) of the Shareholder's Agreement, Frank provided timely notice of his intent to purchase the Barbara Brunckhorst Shares; (iv) pursuant to Paragraphs 5(b) and 19 of the Shareholder's Agreement, Frank timely and properly exercised his rights to purchase the Barbara Brunckhorst Shares; (v) as a result of Frank's various forms of notice, and his timely acceptance, there was no deemed offer to Eric and/or the Bischoff Trust (defined below) to purchase the Barbara Brunckhorst Shares under the Shareholder's Agreement; (vi) therefore, Eric and the Bischoff Trust have no rights under the Shareholder's Agreement to purchase the Barbara Brunckhorst Shares; and (vii) the Bischoff Trust is not an authorized recipient of the Barbara Brunckhorst Shares. Frank further seeks an injunction prohibiting the Trustees from transferring the Barbara Brunckhorst Shares to Eric or the Bischoff Trust, and compelling the Trustees to transfer the Shares to Frank.

## THE PARTIES AND RELEVANT INDIVIDUALS

21.     Plaintiff Frank Brunckhorst III is a citizen and resident of Florida. Frank is the trustee and the beneficiary of the Frank Brunckhorst III 2001 Trust, which owns 25% of the Boar's Head shares. Frank is also one of the chairs of the Brunckhorst Foundation, as well as a trustee of the NY Foundling Hospital, which provides support to children throughout New York City and its boroughs, and Carnegie Mellon University.

22.     Non-party Barbara Brunckhorst (deceased) is a beneficiary of the 1994 Trust and the 2010 Trust (together the "Trusts"). At the time of her death, Barbara Brunckhorst was a citizen and resident of Virginia. The Trustees, Susan Stravitz Kemp and Richard Todd Stravitz, were

appointed as co-executors of the Estate on January 19, 2021, by a duly qualified deputy clerk of the Coochland County Circuit Court in the Commonwealth of Virginia.

23.    Defendant Eric Bischoff is a citizen and resident of New York.  Eric owns 14.35% of the shares of Boar's Head.  Eric is the grantor and special advisor of the Eric Bischoff 2012 Trust (the "Bischoff Trust" or the "Eric Bischoff 2012 Trust"), which, upon information and belief, previously owned 7.0% of the shares of Boar's Head but transferred those shares to Eric on April 30, 2021.

24.    Defendant J.P. Morgan Trust Company of Delaware is the trustee of the Bischoff Trust.  J.P. Morgan Trust Company of Delaware is incorporated in the state of Delaware, and its principal place of business is in Delaware.  Defendant Bischoff Trust is governed by Delaware law, and its original situs was Delaware.

25.    Defendants Susan Stravitz Kemp and Richard Todd Stravitz are citizens and residents of Virginia and are co-executors of the Estate of Barbara Brunckhorst, and the co-trustees of the 1994 Trust.  Richard Todd Stravitz is trustee of the 2010 Trust.

## JURISDICTION AND VENUE

26.    The Court has subject matter jurisdiction over this matter because the parties are completely diverse and the amount in controversy, namely the value associated with the Boar's Head shares owned by the Trusts, exceeds $75,000.

27.    Paragraph 18 of the Shareholder's Agreement provides that "[t]his Agreement has been made in, and shall be governed by, construed and enforced in accordance with the laws of the State of New York without giving effect to conflict of law principles."

28.     Paragraph 7(a)(ii) of the Shareholder's Agreement provides that "[u]nless otherwise agreed, the closing of any sale and purchase of Shares hereunder shall take place in New York City at a place and time to be designated by the seller[.]"

29.     This Court has personal jurisdiction over Eric because he is a resident of New York.

30.     This Court has personal jurisdiction over Defendant J.P. Morgan Trust Company of Delaware, the Bischoff Trust, and the Trustees because they have transacted business and maintained substantial business in this District, and because the Shareholder's Agreement at issue provides that the sale of shares occurs in New York City, and applies New York law.

31.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the Southern District of New York, because Defendants transact business in this District, because at the time the Shareholder's Agreement was executed the Company was located in this District, and because the Shareholder's Agreement provides that any sale or purchase of shares occur in this District.

## ADDITIONAL FACTUAL BACKGROUND

### A. **The Relevant Agreements**

#### 1. **The Shareholder's Agreement**

32.     Boar's Head is a closely-held company which is a supplier of delicatessen meats, cheeses, and condiments. At the time the Shareholder's Agreement was executed, Boar's Head was based in Brooklyn, New York. Since 2001, Boar's Head has been based in Florida.

33.     In 1991, certain of the Boar's Head's shareholders entered into the Shareholder's Agreement. The Shareholder's Agreement remains operative and in effect today and has never

been amended.[4]  The provisions of the Shareholder's Agreement make clear that Frank is entitled

to acquire the Barbara Brunckhorst Shares, and that Eric is not.

34.    Paragraph 3 of the Shareholder's Agreement provides that Frank may receive the

Barbara Brunckhorst Shares "at any time."  That paragraph, entitled "Restrictions on Sale or Other

Disposition of Shares by Shareholders," states, in pertinent part, that a Group A Shareholder (like

Barbara) may, at any time, sell or otherwise transfer his or her shares to any other Group A

Shareholder (like Frank) or any other member Barbara's immediate family (including nephews,

like Frank) who is an "Active Employee."  Paragraph 3(b) provides:

> Notwithstanding the foregoing, (i) a Group A Shareholder may at
> any time sell or otherwise transfer any or all of his Shares to any
> other Group A Shareholder, any other member of Barbara
> Brunckhorst's immediate family (including nieces and nephews but
> excluding Richard Stravitz) who is an Active Employee (as defined
> below) or a trust for the benefit of such Group A Shareholder or such
> permitted transferee[.]

35.    Paragraph 3(c) of the Shareholder's Agreement defines "Active Employee" as "a

person who is a full time employee of either of the Corporations or Frank Brunckhorst Co.,

devoting substantially all of his or her business time to the affairs of one of such companies.  Any

determination required to be made as to whether a person is an Active Employee shall be made by

the Board of Directors of Boar's Head."  Frank is an Active Employee.

36.    Thus, under Paragraph 3(b) of the Agreement, the Barbara Brunckhorst Shares may

be transferred to Frank "at any time," both by virtue of his status as a Group A Shareholder and as

an immediate family member of Barbara who is an Active Employee.  The inclusion of this

---

[4]    While the Shareholder's Agreement has never been formally amended, the February 2020
Interim Settlement Agreement between Defendant Bischoff, non-party Robert S. Martin, and other
entities, and the related consents to that agreement, allowed Defendant Bischoff's shares to be held
in a permitted trust for a finite period of time.

language helped ensure that the ownership of Boar's Head would remain split equally between the Brunckhorst Family as the Group A Shareholders and the Martin-Bischoff Family as the Group B Shareholders, and helped ensure Barbara's long-held intention—that her nephew Frank purchase her shares and then gift amounts to charity—would be realized.

37.     Paragraph 4 of the Shareholder's Agreement gives Group A Shareholders, such as Frank, priority in purchasing any Group A shares, like Barbara's, that are offered for purchase. Paragraph 4(a) provides that when Group A shares are offered for sale, the shares must be offered first exclusively to other Group A Shareholders.  Those Group A Shareholders have a period of twenty (20) days within which to accept the offer.  The Shareholder's Agreement states: "[a] Shareholder desiring to dispose of any or all of his shares (other than as permitted in Section 3 hereof) shall first offer to sell all of the Shares owned by such Shareholder to the other members of his Group" and that "[e]ach such Shareholder shall have a period of twenty (20) days within which to accept such offer, which acceptance must be for all and not part of the Shares so offered." It is only if a Group A Shareholder does not elect to purchase all of the Group A shares offered for sale that Paragraph 4(b) is implicated.  Paragraph 4(b) provides that if one or more of the Group A Shareholders initially notices an intention to purchase less than the full amount of Group A shares that have been offered, then "a succeeding offer or offers of such unaccepted Shares shall thereafter be made to the offeree Shareholders who elected to purchase all of the Shares so offered to them, in their proportionate shares, until such time as one or more of the offeree Shareholders elects to purchase all of the Shares offered[.]"

38.     Paragraph 4(c) of the Shareholder's Agreement provides, in turn, that if the Group A "Shares offered for sale pursuant to subparagraphs (a) and (b) above are not accepted for purchase" by the other Group A shareholders and "the offering Shareholder still desires to dispose

of such Shares, he shall offer to sell all of such unaccepted Shares to the issuing Corporation of

such Shares[.]"  If the Corporation fails to accept the offer within twenty days, then "immediately

upon the expiration of such twenty (20) day period, the offering Shareholder, if he still desires to

dispose of any or all of his Shares, shall offer to sell such unaccepted Shares, at the price and upon

the terms and conditions hereinafter set forth, to the other Shareholders" that are not Group A

Shareholders, such as Eric.  Those other shareholders then "shall have a period of ten (10) days

within which to accept [the] offer, which acceptance must be for all and not part of the Shares so

offered" pursuant to Paragraph 4(d).

39.     Paragraph 5 of the Shareholder's Agreement provides that in the event a Group A

Shareholder, such as Barbara, dies, that deceased shareholder's shares shall be offered for sale.

Specifically, Paragraph 5 of the Shareholder's Agreement, entitled "Death of a Shareholder,"

provides, in pertinent part:

> (b) In the event of the death of a Shareholder or the beneficiary of a
> trust which is a shareholder hereunder, if such deceased Shareholder
> has not transferred his Shares in accordance with subparagraph (a)
> hereof, his executor or administrator or the trustee of such trust, as
> the case may be, shall, on the tenth (10th) day after appointment of
> such executor or administrator by a court on competent jurisdiction,
> or, in the event of the death of a beneficiary, on the date of death, be
> deemed to have offered for sale all of the Shares owned by such
> Shareholder at the time of death, in accordance with the provisions
> of Paragraph 4 hereof[.]

40.     Thus, when a "Shareholder" dies, then the shareholder's shares are offered for sale

after the executor or executrix of the deceased's estate is appointed.  If the "beneficiary of a trust

which is a Shareholder hereunder" dies, then the shares are offered for sale as of the date of death

of that beneficiary.  Here, Barbara was a "Shareholder" of the Agreement, not a "beneficiary of a

trust which is a Shareholder hereunder."  The preamble to the Shareholder's Agreement makes

this clear, stating expressly that the agreement is:

> by and among **Barbara Brunckhorst (sometimes referred to hereinafter as a "Group A Shareholder")**, the Alvina Martin 1988 Trust, S. Martin and Eric Bischoff (sometimes referred to hereinafter individually as a "Group B Shareholder" and collectively as the "Shareholders"), Specsal Realty Corp., a New York corporation ("Specsal"), and Boar's Head Provisions Co., Inc., a New York corporation ("Boar's Head")[.]

(emphasis added).

41.     The preamble further provides that Barbara shall "sometimes [be] referred to hereinafter individually as a 'Shareholder' and collectively [with the Group B Shareholders] as the 'Shareholders.'"  By contrast, the only trust specifically identified as a "Shareholder" under the Agreement is the Alvina Martin 1988 Trust.

42.     Because Barbara is defined as a "Shareholder" under the Agreement, upon her death her shares were "deemed to have [been] offered for sale" after the appointment of the executor (and executrix) of the Estate, which occurred on January 19, 2021.  Thus, pursuant to Paragraph 4 of the Agreement, the other Group A Shareholders, including Frank, would need to send notice of an intent to purchase the Shares following the appointment of the executor or executrix of the Estate—that is, after January 19, 2021.  Frank sent written notice of his intent to purchase the Barbara Brunckhorst Shares on January 22, 2021.  As detailed below, Eric purports to have sent a valid notice to purchase the Barbara Brunckhorst Shares, but his notice was sent two weeks prior to the appointment of the executor and executrix of the Estate—at a time when the Shares, pursuant to Paragraph 5 of the Shareholder's Agreement, were not yet even offered for sale—let alone, under Paragraph 4, to a shareholder such as Eric who is not a Group A Shareholder.

43.     Paragraph 19, entitled "notices," governs the form written notices given under the Agreement must take.  It provides that:

> All notices, offers, acceptances and other communications to be made, served or given under or pursuant to the terms hereof shall be in writing and shall be personally delivered or sent by registered or

14

> certified mail, return receipt requested, postage prepaid, addressed
> to the parties . . .

44.    Paragraph 19 then delineates the various individuals or entities that must receive notice under the Agreement.

## 2.  **The Memorandum of Understanding Between Frank and Barbara**

45.    In 2010, Frank and Barbara agreed that, if one of them died, then the other would acquire the deceased person's shares, and the economic value of those shares in excess of the purchase price paid for the deceased person's shares would be directed to a charitable organization of the deceased's choice.  This expectation was memorialized in an executed Memorandum of Understanding, which stated, in relevant part:

> Barbara and Frank each intend to give a substantial portion of his or her estate at his or her death to charitable organizations and would like to arrange that charitable organizations selected by the first of them to die rather than the survivor of them benefit from the economic advantage the Shareholders' Agreement gives to the survivor of them.  However, they have no power to amend the Shareholders' Agreement without the consent of the Company and its other shareholders, which consent cannot be obtained.
>
> In order to facilitate the implementation of the present intention of the Parties that a charitable organization selected by the first of them to die should benefit from the economic advantage the Shareholders' Agreement gives to the survivor of them, the Parties have executed this memorandum of understanding that describes the steps that should be taken by the survivor of the Parties. Neither Party intends that either of them should be legally bound by this memorandum of understanding.
>
> 1.  If the survivor of the Parties and/or his or her Trust is a Group A Shareholder or a permitted transferee within the meaning of the Shareholders' Agreement (the "Survivor"), the Survivor shall transfer by gift an amount equal to the Contribution Amount to a Qualified Charitable Organization designated by the first of the Parties to die (the "Decedent").
>
> 2.  The Survivor shall pay the Contribution Amount to such Qualified Charitable Organization (the "Designated Charity") in annual installments, commencing on the first anniversary of the

death of the Decedent and continuing on each subsequent anniversary until the earlier to occur of the date of the death of the Survivor or the earliest date on which the Contribution Amount has been paid in full.    The amount of each year's installment shall be the Net Cash Flow as defined herein.  . . .

3.   For the purposes of this Agreement, the Contribution Amount shall be an amount equal to the excess of the fair market value of the Decedent's and/or the Decedent's Trust's Interest in the Company (the "Decedent's Interest") on the date of the Decedent's death over the purchase price of such interest as determined in accordance with section 6 of the Shareholders' Agreement[.]

46.    The Memorandum of Understanding reflects Barbara's and Frank's intentions that the surviving shareholder acquire the deceased's shares in the Company, although it is non-binding as to how the acquisition of shares would occur.  Notwithstanding its non-binding language, Frank will abide by the terms of the Memorandum of Understanding.

3.   **Eric's Interim Settlement Agreement**

47.    Eric is litigious, and historically has sought ways to increase his stake in the Company through various suits against family members.  In 2019, Eric commenced an arbitration proceeding, before the International Institute for Conflict Prevention and Resolution, against Bob as a trustee of the RSM 2008-A Investment Trust, the RSM 2013-A Investment Trust, and the RPM 2005 Investment Trust (the "Martin Arbitration").   In the Martin Arbitration, Eric asserted a claim for an alleged breach of the Shareholder's Agreement, based on Bob's transfer of 15.05% of the shares of Boar's Head's stock to his son Bobby and/or to trusts of which Bobby was the beneficiary, whom Eric alleged was an "unauthorized recipient" because, as the grandson of Alvina Martin, Bobby purportedly was not an "immediate family member" of Alvina Martin.

48.    Bob, as trustee, then brought an action for declaratory judgment against Eric in the United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-

02671 (the "Martin Action").  Bob requested a declaratory judgment determining, *inter alia*, that

the transfer of shares to his son, Bobby, was permissible.

49.    On February 27, 2020, Bob and Eric entered into an Interim Settlement Agreement,

setting forth an interim compromise and settlement of the Martin Arbitration and the Martin Action.

Pursuant to the terms of that Interim Settlement Agreement, Eric was permitted to transfer shares

of Boar's Head to a trust for a limited period of time.  Specifically, Section 3(a) of the Interim

Settlement Agreement provides, in pertinent part:

> During the Tolling Time Period . . . the Parties agree that Bischoff
> shall be permitted to engage in estate and other tax planning
> transactions prior to a potential Change in Control Transaction, of
> settling a grantor retained annuity trust or other irrevocable grantor
> trust (a "Permitted Trust") for the benefit of Bischoff and/or any one
> or more of Bischoff's issue and transferring shares in the Companies
> to any such Permitted Trust, and that the Permitted Trust shall be
> exempt from any employment or working member requirement for
> holding shares in the Companies and shall be considered a non-
> working and non-voting member.

50.    The Interim Settlement Agreement includes a "Standstill Period" which "[i]n no

event shall . . . extend beyond April 30, 2021."  Interim Settlement Agreement § 4(d).   Within

five business days after the expiration of the Standstill Period, any Boar's Head shares that were

transferred to the Bischoff Trust must be transferred back to Defendant Bischoff.  Specifically,

Section 3(h) provides, in relevant part:

> The transfer of the applicable shares back to the shareholder or
> member who created the Permitted Trust shall be entered on the
> Companies' records effective on or about five (5) business days after
> the expiration of the Standstill Period or the date of the termination
> of the Change in Control Transaction, whichever is later, provided
> payment in full for such shares may be delayed by the applicable
> member until on or before December 31, 2024 through an
> appropriate promissory note or other means designed to ensure that
> such payment is for full market value at the time of the applicable
> share transfer.

B. **Frank is the Proper Recipient of the Barbara Brunckhorst Shares**

51.    On November 18, 2020, Barbara died.  The expectation that Frank would receive the Barbara Brunckhorst Shares, if she was the first to pass, was apparent to all parties, even apart from the Memorandum of Understanding.  Both prior to Barbara's glioblastoma brain cancer diagnosis (when her health was beginning to fail) and following her diagnosis, Barbara repeated her intention, to close friends and family, that Frank receive her shares.  In keeping with Barbara's intention, as Barbara's health was declining and immediately following her death, all relevant individuals were put on notice of Frank's intent to purchase all of the Barbara Brunckhorst Shares, well within the twenty-day window set forth in Paragraph 4(a).  This is because, consistent with Paragraph 3(b)'s mandate that the Shares may be transferred to Frank "at any time," the Trustees, Frank, and counsel for the same began taking steps—both before and after Barbara's death—to ensure the smooth transference of the Barbara Brunckhorst Shares to Frank.  Counsel for these parties began ordering appraisals and preparing the necessary legal paperwork.  Frank also had calls with Eric—sometimes more than once a month—to update him on the state of the Company. During some of these calls, which occurred both before and after Barbara died, Frank discussed how the value of the Barbara Brunckhorst Shares would benefit neuroscience research with which Frank was involved at Carnegie Mellon University.  This research, Frank explained to Eric, was a particularly fitting use of the value of the Shares, given that Barbara was sick with (and passed away from) glioblastoma.

52.    In addition, after Susan Stravitz Kemp and Richard Todd Stravitz were appointed executrix and executor of the Estate on January 19, 2021, the Barbara Brunckhorst Shares were deemed offered for sale to Group A Shareholders pursuant to Paragraph 5(b) of the Agreement. Consistent with Paragraph 4(a) of the Shareholder's Agreement, Frank provided written notice on

January 22, 2021, to the Trusts and the Estate of his acceptance of the deemed offer to sell the

Barbara Brunckhorst Shares.

53.     In the January 22 notice, Frank states:

> I am writing to you at this time to confirm **my timely notice to you as the co-executors of the Estate, co-trustee of the 1994 Trust, trustee of the 2010 Trust, and the trustee or co-trustees of any other Barbara Brunckhorst Trust** (collectively, the "Barbara Brunckhorst Shareholders") of my **acceptance of the Barbara Brunckhorst Shareholders' deemed offer to sell all of the shares ("Shares") held by the Barbara Brunckhorst Shareholders in Boar's Head, and my agreement to purchase all the Shares offered in the deemed offer to sell**.  In an abundance of caution, I am also providing notice of my acceptance and election by copy of this notice to the other Boar's Head shareholders.
>
> As you know, pursuant to Paragraph 5(b) of the Boar's Head Shareholder's Agreement (the "Shareholder's Agreement"), upon the death of any shareholder, on the tenth day following appointment of an executor, the executor shall be deemed to offer for sale all of the shares owned by the deceased shareholder at the time of death in accordance with the provisions of Paragraph 4 of the Shareholder's Agreement.
>
> Accordingly, **please take notice that I have (i) accepted the Barbara Brunckhorst Shareholders' deemed offer to sell all Shares of the Barbara Brunckhorst Shareholders at the time of Barbara Brunckhorst's death, together with any additional shares determined to have been owned by the Barbara Brunckhorst Shareholders at the time of Barbara Brunckhorst's death, and (ii) exercised my right to purchase all of such Shares, pursuant to Paragraph 4 and Paragraph 5(b) of the Shareholder's Agreement**, at the "book value" purchase price pursuant to Paragraph 6 of the Shareholder's Agreement, and pursuant to the terms set forth in Paragraph 7 of the Shareholder's Agreement, including my right to purchase all of the shares if no other shareholders or the Company timely and properly exercise their rights to buy Shares.
>
> (emphasis added).

54.      The Notice contains the signatures of the Trustees, acknowledging receipt of the

Notice.

19

C. **The Eric Bischoff 2012 Trust's Notice, Purporting to Exercise Its Rights to Purchase the Barbara Brunckhorst Shares, was Premature and Invalid and Untimely**

55.     On January 6, 2021—two weeks prior to the appointment of Ms. Kemp and Mr. Stravitz as executrix and executor of the Estate—the Eric Bischoff 2012 Trust purported to notice its intention to purchase the Barbara Brunckhorst Shares.  But the Eric Bischoff 2012 Trust, like Eric, is not a Group A Shareholder, and thus, pursuant to the Paragraph 4 of the Shareholder's Agreement, the Barbara Brunckhorst Shares had not been offered to Eric or the Eric Bischoff 2012 Trust for purchase at the time of this purported notice.  And given that Frank gave notice of his intention as a Group A Shareholder to acquire the Barbara Brunckhorst Shares, under Paragraph 4 of the Shareholder's Agreement, the Barbara Brunckhorst Shares have never been offered to Group B Shareholders such as Eric.  And under the Shareholder's Agreement, the Eric Bischoff 2012 Trust is not identified as a shareholder at all.

56.     The purported notice from the Eric Bischoff 2012 Trust ignored Barbara's well-established desire that Frank receive the Barbara Brunckhorst Shares and that their value be gifted to charity.  The notice ignored the actions Frank had taken before and immediately following Barbara's death to arrange for transfer of the Barbara Brunckhorst Shares to Frank at the appropriate time, as well as Eric's own conversations with Frank, during which Frank described the scientific research that would benefit from the Barbara Brunckhorst Shares' value.  Eric appeared prepared to line his own pockets at the expense of the charities that were so important to Barbara to support.

57.     On April 9, 2021, Eric sent a separate letter to the Trustee Defendants purporting to "confirm that my trust and I are ready to consummate the purchase of the Shares," and claiming that "my trust and I are the only Company shareholders who validly accepted the deemed offer from the Barbara Brunckhorst Trusts and/or the Estate to sell the Shares."  Eric  also claimed that

Frank's written notice on January 22, 2021, purportedly was "of no legal effect," because Frank's right to purchase the Barbara Brunckhorst Shares purportedly "had expired." Eric also claimed that Frank's Notice was "defective because it was not sent by the owner of the relevant shares." These false assertions ignored that (i) Frank's January 22 notice in fact was timely and valid pursuant to Paragraphs 4, 5, and 19 of the Shareholder's Agreement, and it was the notice from the Bischoff Trust that was wholly defective; (ii) Paragraph 3(b) of the Shareholder's Agreement provides that the Barbara Brunckhorst Shares can be transferred to Frank at any time; and (iii) Frank took action to prepare for the transfer before and immediately following Barbara's death.

58. On April 14, 2021, Eric's counsel sent another letter to the Trustees reiterating the positions set forth in Eric's April 9 letter and misrepresenting the applicable timelines for notice set forth in Paragraphs 4 and 5 of the Agreement. Based on this misrepresentation, Eric asserted incorrectly that "no Group A Shareholder exercised its purchase option" pursuant to the Agreement and that Frank's January 22 notice came "more than a month after the allotted 20 day period for a Group A Shareholder to exercise its option to purchase the Shares had expired." Again, as set forth and explained above, Frank's January 22 notice was both timely and valid under the Agreement.

59. The April 14 letter concluded by threatening litigation, stating: "If we do not receive a response from you by April 23, 2021, Eric will pursue all remedies, including, but not limited to, commencing an action pursuant to Paragraph 11 of the Shareholders Agreement for specific performance of the Offering Shareholders' obligations."

## CLAIMS FOR RELIEF

### COUNT 1: DECLARATORY RELIEF

60.    Frank incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 59 as if fully set forth herein.

61.    Pursuant to 28 U.S.C. § 2201, this Court has the authority to declare the rights and other legal relations of any interested party seeking such declaration.

62.    An actual controversy has arisen and now exists between Frank and the Defendants that is within the jurisdiction of this Court concerning the parties' rights and obligations under the Shareholder's Agreement, which controversy may be determined by a declaratory judgment of this Court.

63.    The Shareholder's Agreement is a valid, enforceable contract, to which Frank and Eric are parties.

64.    Frank contends that he has materially complied with the relevant provisions of the Shareholder's Agreement, including but not limited to Paragraphs 3, 4, 5, and 19, and that the Barbara Brunckhorst Shares should be transferred to Frank.

65.    Frank contends that, pursuant to Paragraph 3(b) of the Shareholder's Agreement, the Trustees may transfer the Barbara Brunckhorst Shares to Frank "at any time."

66.    Frank contends that, by virtue of his course of conduct (and others' course of conduct) before and immediately following Barbara's death, Frank provided notice of his intent to purchase the Barbara Brunckhorst Shares within the twenty day window set forth in Paragraph 4(a) of the Shareholder's Agreement.

67.    Frank contends that his January 22, 2021 written notice of his intent to purchase the Barbara Brunckhorst Shares constituted timely and valid notice of his acceptance of the deemed

offer to sell the Barbara Brunckhorst Shares pursuant to Paragraph 4(a), Paragraph 5(b), and Paragraph 19 of the Shareholder's Agreement.

68.     Frank contends that pursuant to the terms of the Shareholder's Agreement, including without limitation Paragraphs 4 and 5, there was no deemed offer to Eric and/or the Eric Bischoff 2012 Trust to purchase the Barbara Brunckhorst Shares, and therefore Eric and the Bischoff Trust have had no right to purchase the Barbara Brunckhorst Shares.

69.     Frank contends that the Eric Bischoff 2012 Trust is unauthorized to receive the Barbara Brunckhorst Shares, because, in addition to the reasons set forth in the immediately preceding paragraph, pursuant to the Interim Settlement Agreement and the Shareholder's Agreement, the Bischoff Trust cannot receive any shares of Boar's Head after April 30, 2021.

70.     A judicial determination is necessary and appropriate at this time and under these circumstances for the parties to ascertain their rights and obligations to one another.

71.     Based on the aforementioned rights, this Court should declare that: (i) Frank is the appropriate recipient of the Barbara Brunckhorst Shares, consistent with Barbara and Frank's intentions; (ii) pursuant to Paragraph 3(b) of the Shareholder's Agreement, Frank is entitled to receive the Barbara Brunckhorst Shares "at any time"; (iii) consistent with Paragraphs 4(a) and 5(b) of the Shareholder's Agreement, Frank provided notice of his intent to purchase the Barbara Brunckhorst Shares both by virtue of the course of conduct described above and through his January 22, 2021 written notice; (iv) pursuant to Paragraphs 5(b) and 19 of the Shareholder's Agreement, Frank timely and properly exercised his rights to purchase the Barbara Brunckhorst Shares; (v) as a result of Frank's various forms of notice, and his timely acceptance, there was no deemed offer to Frank and/or the Bischoff Trust to purchase the Barbara Brunckhorst Shares under the Shareholder's Agreement; (vi) therefore, Frank and the Bischoff Trust have no rights under the

Shareholder's Agreement to purchase the Barbara Brunckhorst Shares; and (vii) the Bischoff Trust is not an authorized recipient of the Barbara Brunckhorst Shares.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff Frank Brunckhorst III, prays for relief as follows:

A.     Enter a declaratory judgment that Frank is the proper recipient of the Barbara Brunckhorst Shares;

B.     Enter a declaratory judgment that, pursuant to Paragraph 3(b) of the Shareholder's Agreement, Frank is entitled to receive the Barbara Brunckhorst Shares "at any time";

C.     Enter a declaratory judgment that Frank provided notice of his intent to purchase the Barbara Brunckhorst Shares both by virtue of the course of conduct described above and through his January 22, 2021 written notice, consistent with Paragraphs 4(a) and 5(b) of the Shareholder's Agreement;

D.     Enter a declaratory judgment that, pursuant to Paragraphs 5(b) and 19 of the Shareholder's Agreement, Frank timely and properly exercised his rights to purchase the Barbara Brunckhorst Shares;

E.     Enter a declaratory judgment that there was no deemed offer to Eric and/or the Eric Bischoff 2012 Trust to purchase the Barbara Brunckhorst Shares under the Shareholder's Agreement;

F.     Enter a declaratory judgment that, because there was no deemed offer to Eric and/or the Bischoff Trust, Eric and the Eric Bischoff 2012 Trust have no rights under the Shareholder's Agreement to purchase the Barbara Brunckhorst Shares;

G.     Enter a declaratory judgment that the Eric Bischoff 2012 Trust is not an authorized recipient of the Barbara Brunckhorst Shares;

H.    Enter an injunction prohibiting the Trusts and Estate from transferring the Barbara

Brunckhorst Shares to Eric or the Bischoff Trust;

I.    Enter an injunction compelling the Trusts and Estate to transfer the shares to Frank;

and

J.    Grant Frank any such other and further relief as the Court deems just and proper.


Dated:    New York, New York            QUINN EMANUEL URQUHART
          May 14, 2021                  & SULLIVAN, LLP


                                        Stephen R. Neuwirth
                                        Marlo A. Pecora
                                        51 Madison Avenue, 22nd Floor
                                        New York, New York 10010
                                        Telephone: (212) 849-7000
                                        Facsimile: (212) 849-7100
                                        stephenneuwirth@quinnemanuel.com
                                        marlopecora@quinnemanuel.com

                                        *Attorneys for Plaintiff Frank Brunckhorst III*

25