UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――――――――― X
                                              :
                                              :
FRANK BRUNCKHORST III, individually and in his :
capacity as trustee of THE FRANK BRUNCKHORST III :
2001 TRUST,                                   :
                                              :
                                              :    21 Civ. 4362 (JPC)
                          Plaintiff,          :
                                              :         ORDER
            -v-                               :
                                              :
ERIC BISCHOFF *et al.*,                       :
                                              :
                          Defendants.         :
                                              :
――――――――――――――――――――――――――――――― X
                                              :
ERIC BISCHOFF,                                :
                                              :
                                              :
                          Counterclaim-Plaintiff, :
                                              :
            -v-                               :
                                              :
FRANK BRUNCKHORST III, individually and in his :
capacity as trustee of THE FRANK BRUNCKHORST III :
2001 TRUST,                                   :
                                              :
                          Counterclaim-Defendant. :
                                              :
――――――――――――――――――――――――――――――― X
                                              :
ERIC BISCHOFF,                                :
                                              :
                          Crossclaim-Plaintiff, :
                                              :
            -v-                               :
                                              :
SUSAN STRAVITZ KEMP, in her capacity as co-trustee :
of THE BARBARA BRUNCKHORST 1994 TRUST and :
executrix of THE ESTATE OF BARBARA :
BRUNCKHORST *et al.*,                         :
                                              :
                          Crossclaim-Defendants. :
                                              :
――――――――――――――――――――――――――――――― X

JOHN P. CRONAN, United States District Judge:

Boar's Head Provision Co. is a family-owned business that sells meats, cheeses, and condiments. Frank Brunckhorst III ("Brunckhorst"), individually and as a Trustee of the Frank Brunckhorst III 2001 Trust, sued (among others) his second cousin, Eric Bischoff ("Bischoff"), over who had the right to buy Boar's Head shares from the Barbara Brunckhorst Trusts following Barbara Brunckhorst's passing in November 2020.[1] Bischoff subsequently brought counterclaims against Brunckhorst and crossclaims against his co-Defendants. With discovery now proceeding, Bischoff has moved to compel Brunckhorst to produce documents withheld based on privilege. For the first set of documents, Brunckhorst claims that he has a common interest with the Trustees for the Barbara Brunckhorst Trusts (the "Trustees") that protects the documents from production. Dkt. 153 ("Opposition") at 2-4. For the second set of documents, Brunckhorst claims that he has a common interest with Robert S. Martin and his son Robert P. Martin (the "Martins")[2] that protects the documents. *Id.* at 4-6. The Court agrees with Brunckhorst's grounds for withholding production and denies the motion to compel.

## I. Legal Standards

During discovery, a party may assert certain privileges to prevent having to disclose materials or information. One is the attorney-client privilege. That privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United*

---

[1] Bischoff appears to be Barbara Brunckhorst's first cousin once removed, and Frank Brunckhorst III appears to be Barbara Brunckhorst's nephew. *See, e.g.*, Dkt. 145 ("Motion") at 1, Exh. B.

[2] Robert S. Martin appears to be Barbara Brunckhorst's first cousin once removed, and Robert P. Martin appears to be Barbara Brunckhorst's first cousin twice removed. Motion at 1, Exh. B.

*States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  The common interest doctrine "has been described as an extension of the attorney[-]client privilege." *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989) (quotations omitted).  That doctrine "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* at 244.  Or said just a bit differently, "the common interest doctrine allows for the communication of privileged information to a third party without it constituting a waiver of privilege, so long as the third party and the client share a common legal interest and the parties cooperate in developing a common legal strategy." *GMA Accessories, Inc. v. HMY Jewelry, Inc.*, No. 20 Civ. 11126 (JPC), 2021 WL 1885260, at *1 (S.D.N.Y. May 11, 2021) (quotations omitted).  This rule applies even when litigation has not yet begun so long as the interests are of "sufficient legal character." *Schaeffler v. United States*, 806 F.3d 34, 40-41 (2d Cir. 2015).  "Although some courts in this circuit have articulated a requirement that the common interest be identical and not merely similar, other courts have questioned this, and have simply focused on whether the parties had interests in common without exploring whether they were identical." *GMA Accessories, Inc.*, 2021 WL 1885260, at *1 (quotations omitted).

"The burden of establishing the attorney-client privilege, in all its elements, always rests upon the person asserting it." *Schwimmer*, 892 F.2d at 244.  And because the common interest is merely an extension of the attorney-client privilege, "a claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id.*; *see United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) ("Ultimately, '[w]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer.'" (quoting *United States v.*

3

*Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.))).  The common interest doctrine also generally protects a related privilege—attorney work product—"unless the disclosure substantially increases the opportunity for potential adversaries to obtain the information."  *GMA Accessories, Inc.*, 2021 WL 1885260, at *1 (quotations omitted).

## II.  Discussion

**A.     Communications Between Brunckhorst and the Trustees**

The first set of challenged documents involves communications between Brunckhorst and the Trustees.  Brunckhorst claims that, between January 2021 and April 2021, he had "[a]n oral common interest" with the Trustees "to pursue a common legal strategy in anticipation of litigation by [Bischoff]."  Dkt. 154 ("Brunckhorst Decl.") ¶ 5.  According to Brunckhorst, the common interest period began when Bischoff's Trust "sent its notice of its intention to purchase" the challenged shares.  Opposition at 2.  And it ended when Brunckhorst learned "that the Trustees would be conducting an independent investigation into the appropriate recipient of the Shares."  *Id.*  Besides pursuing a common legal strategy, Brunckhorst argues that he and the Trustees had a common interest to ensure that the Shareholder's Agreement and Irrevocable Trust ("Shareholder's Agreement") was enforced and Barbara [Brunckhorst]'s intentions (through a Memorandum of Understanding between Frank and Barbara Brunckhorst) were upheld.  *Id.*

Bischoff does not contest that these documents are privileged.  He instead contends that Brunckhorst did not have a common interest with the Trustees.  The Court disagrees.  Brunckhorst and the Trustees have provided ample evidence that they had a common legal interest in forming a shared legal strategy to contest Bischoff's purchase of the shares and to ensure that the Shareholder Agreement was properly enforced.  *See* Brunckhorst Decl. ¶¶ 5-8; Dkt. 157 ("Trustees Decl.") ¶¶ 5-9.  As one of the Trustees has said, they "shared a common legal interest in contesting

4

[Bischoff]'s claimed right to purchase Barbara [Brunckhorst]'s shares under the Shareholder's Agreement and in effectuating the signatories' intent that ownership of the Company remain evenly divided between the two founding families." Trustees Decl. ¶ 7. The Trustees were concerned that "[Bischoff] would sue them in attempting to acquire" the shares because Bischoff had a long "history of litigation between [Bischoff] and the Company," including "pending litigation in Florida between [Bischoff] and other Company shareholders related to the terms of the Shareholders' Agreement." *Id.* ¶ 5. So after Bischoff gave his notice to try to buy the shares in January 2021, "[Brunckhorst] and the Trustees initially agreed to pursue a shared legal strategy to address Bischoff's claimed right to purchase Barbara [Brunckhorst]'s shares." *Id.*

The common interest doctrine covers situations like the one here: parties "who reasonably anticipate that they will become colitigants." *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 9367 (JMF) (SN), 2018 WL 3584020, at *3 (S.D.N.Y. July 23, 2018); *see Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003) ("Obviously then, the real prospect of litigation may be a sufficient basis to form a joint defense agreement almost at any stage where litigation is feared."). And courts often find a common interest that is "grounded in contract," such as upholding a shareholder agreement, because "by definition" it "involve[s] the pursuit of legal rights and remedies." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 73 (S.D.N.Y. 2009) (quotations omitted). So even though Brunckhorst and the Trustees did not have identical interests for every issue—Brunckhorst wanted to buy the shares, while the Trustees had to be neutral on that question—it does not mean that Brunckhorst waived the attorney-client privilege. *See Glob. Gaming Phil., LLC v. Razon*, No. 21 Civ. 2655 (LGS) (SN), 2021 WL 4243395, at *3 (S.D.N.Y. Sept. 17, 2021) ("Courts have not required the parties to have identical legal interests in order for the rule to apply; rather, they need a limited common purpose,

which necessitates disclosures to certain parties which would otherwise serve to waive the attorney-client privilege.").

Bischoff resists finding a common interest with four arguments. *First*, Bischoff argues that no common interest can exist because "[Brunckhorst] is the plaintiff in this action, while the Trustees are defendants." Motion at 3. That argument confuses the parties' current relationship with their relationship when the subject communications occurred. That they no longer share a common interest "does not alter the fact that [they] shared a common interest at the time the communications were made." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *8 (S.D.N.Y. Oct. 2, 2008); *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 313 (D.D.C. 1994) ("[T]he common interest rule is concerned with the relationship between the transferor and the transferee at the time that the confidential information is disclosed."). As one of the Trustees has explained, their "legal interests remained aligned with [Brunckhorst]'s through late April 2021, when the Trustees decided to conduct an independent review and analysis of [Bischoff]'s and [Brunckhorst]'s competing claims of priority to acquire Barbara [Brunckhorst]'s shares." Trustees Decl. ¶ 9.

*Second*, Bischoff claims that the Trustees twice "denied that they shared a common legal interest with [Brunckhorst]." Motion at 4. This argument suffers from the same flaws as the first. These two disclaimers happened *after* the common interest period ended: on June 9, 2021 and September 30, 2021. *See id.* Again, the Trustees have maintained that they shared a common legal interest with Brunckhorst during the relevant time, which ended in April 2021. Trustees Decl. ¶ 7. And the Trustees' denial of a common interest with Brunckhorst in June and September 2021 is not inconsistent with their claim that they shared a common interest with him through April 2021.

*Third*, Bischoff argues that "[Brunckhorst] has provided no evidence that an agreement was actually entered into beyond assertions of counsel, which is insufficient." Motion at 4. But in opposing the motion to compel, Brunckhorst has provided declarations from himself and one of the Trustees verifying that they shared a common interest. *See* Trustees Decl.; Brunckhorst Decl. Indeed, that Trustee expressly confirms Brunckhorst's theory for why a common interest existed: "From January 2021 through April 2021, the Trustees shared a common legal interest with [Brunckhorst] in seeing the Shareholder's Agreement enforced and the signatories' intent upheld." Trustees Decl. ¶ 7.

*Fourth*, Bischoff challenges some communications between Brunckhorst and the Trustees in which no lawyer was present as falling outside the common interest. Motion at 4. That criticism does not track the common interest doctrine: "If information that is otherwise privileged is shared between parties that have a common legal interest, the privilege is not forfeited even though no attorney either creates or receives that communication." *Gucci Am., Inc. v. Gucci*, No. 07 Civ. 6820 (RMB) (JCF), 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008). That said, Bischoff cites several cases in which courts found no common interest over communications involving non-legal issues. *See Obeid v. Mack*, No. 14 Civ. 6498 (LTS) (HBP), 2016 WL 7176653, at *8 (S.D.N.Y. Dec. 9, 2016) (finding communications not covered when the communications involved non-legal issues such as seeking the opinion of someone because the person was "an investor with an interest in seeing that the case [was] successful"); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 19 (E.D.N.Y. 1996) (rejecting attempt to assert the common interest doctrine over communications related to a "business, not a legal, enterprise"). These cases are all distinguishable because here the challenged communications involve legal issues, and therefore fall squarely within the common interest doctrine. *See, e.g.*, Motion, Exh. C ("Privilege Log"), Entry No. 338

("Confidential text message from Frank Brunckhorst to [Trustee] regarding dispute and call with Plaintiff's counsel."); *Id.*, Entry No. 321 ("Confidential communication between Plaintiff and [Trustee] in anticipation of this litigation and reflecting legal advice and impressions.").

**B.   Communications Between Brunckhorst and the Martins**

The second set of challenged documents involves communications between Brunckhorst and the Martins. Brunckhorst claims to have entered into a common interest agreement with the Martins in March 2019. Opposition at 4. They did so because Bischoff had sued, or threatened to sue, the Martins and Brunckhorst over Boar's Head Shares on several occasions. *Id.* Brunckhorst thus claims that he "and the Martins reasonably anticipated they would become co-litigants adverse to [Bischoff] and entered into a common interest agreement—first orally, then in writing—in early 2019." *Id.*

The Court agrees. With one caveat discussed below, Bischoff does not contest that the documents are privileged. And the Court finds that the Brunckhorst and the Martins have provided sufficient evidence that they shared an interest in forming a legal strategy to protect against Bischoff suing to increase his shares and to uphold the Shareholder's Agreement. *See* Brunckhorst Decl. ¶¶ 9-11; Dkt. 156 ("Martin Decl.") ¶¶ 5-12; Dkt. 155 ("Koche Decl.") ¶¶ 9-15. As Robert S. Martin said, "a common legal interest existed between the Martins and [Brunckhorst] in ascertaining, avoiding and/or defeating Bischoff's legal challenges to our respective Boar's Head share ownership beginning at least as of March 2019, when [the Martins] became aware that Bischoff was demanding copies of the Martins' (and others') trust agreements and other information to potentially aid in filing another lawsuit against other Boar's Head owners and/or directors." Martins Decl. ¶ 5. The Martins and Brunckhorst formalized this March 2019 agreement on June 18, 2021 by signing a "Common Interest/Joint Defense Agreement" that said

8

that the parties intended and understood "that *past*, present, and future communications among them and their respective counsel relating to [this action and the action in Florida] have been, are, and shall continue to remain, confidential and protected by all available rights, privileges, immunities and protections from disclosure to any third party." *Id.* ¶ 12 (emphasis added). Given all these facts, Brunckhorst and the Martins have shown that they have a common interest. As discussed, working together to defeat a reasonably anticipated lawsuit gives rise to a common legal interest. *See BlackRock Balanced Cap. Portfolio (FI)*, 2018 WL 3584020, at *3.

Bischoff makes three arguments resisting this conclusion. None are persuasive. *First*, Bischoff claims that Brunckhorst lacks any evidence that there was a common interest before June 18, 2021 (the date when the Martins and Brunckhorst signed a common interest agreement). Motion at 4. But here too, Brunckhorst and the Martins have provided declarations affirming that the oral agreement began in March 2019. *See* Brunckhorst Decl. ¶¶ 9-11; Martin Decl. ¶¶ 10-12. And "[a] formal written common interest agreement is not necessary." *United States v. Zhu*, 77 F. Supp. 3d 327, 330 (S.D.N.Y. 2014). When Brunckhorst and the Martins entered into a written agreement in June 2021, that agreement explicitly covered "past" communication, further bolstering Brunckhorst's claim that an earlier agreement existed. Brunckhorst Decl. ¶ 11; Martin Decl. ¶ 12.

*Second*, Bischoff claims that Brunckhorst and the Martins cannot have a common legal interest because they both filed notices of their "purported right to purchase the . . . Shares." Motion at 5. The Martins explained, however, that they only filed the notice to buy the shares "out of an abundance of caution and to ensure that [Bischoff] not receive [the] shares in contravention of the Shareholder's Agreement." Martins Decl. ¶ 13. Indeed, the Martins agree that Brunckhorst has the "legal right to [the] shares under the terms of the Shareholder's Agreement." *Id.* Yet even

9

if the Martins had wanted to buy the shares, it would not necessarily mean that they lacked a shared legal interest with Brunckhorst. In that case, they would both still want to prevent Bischoff from buying the shares. *See Razon*, 2021 WL 4243395, at *3 ("Courts have not required the parties to have identical legal interests in order for the rule to apply; rather, they need a limited common purpose, which necessitates disclosures to certain parties which would otherwise serve to waive the attorney-client privilege.").

*Third*, Bischoff claims that the communications in January 2021—when the Martins sent their notices to buy the shares—are not covered. Motion at 5. They argue that the Martins' lawyer, David Koche, was acting as the trustee for the Martins' Trusts, not their lawyer, because he signed the notices "in his capacity as trustee." Motion at 5 (emphasis omitted). In effect, Bischoff argues that any communications relating to the January 2021 notice do not fall under the attorney-client privilege or attorney work product privilege because Koche signed the January 2021 notice in his trustee capacity.

"[W]here a lawyer has been engaged to provide both legal and business advice, the court must ascertain which hat the attorney was wearing during the allegedly privileged communication." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18 Civ. 4437 (JGK) (BCM), 2020 WL 757840, at *4 (S.D.N.Y. Feb. 14, 2020). Here, Koche only wore his legal hat for the challenged communications. The challenged entries from Brunckhorst's January 2021 privilege log are communications involving Brunckhorst, Koche, and the Martins. *See* Privilege Log Entry Nos. 315, 318, 326. David Koche has served as an "attorney for *both* [Brunckhorst] and the Martins." Motion at 5 (emphasis added); Koche Decl. ¶¶ 1, 10-11. And Koche has attested that, in January 2021, he "participated" in these "communications solely in [his] capacity as legal counsel to Brunckhorst and/or the Martins, and solely for the purpose of providing legal advice to

Brunckhorst and/or the Martins in furtherance of their common legal interests—not in [his] capacity as trustee of any of the Martin family trusts." Koche Decl. ¶ 14.  While Koche also served as a trustee, he has averred that all the challenged communications were "exclusively tied to legal analysis, legal planning, legal advice, and communications in furtherance of" those objectives.  *Id.* ¶ 5; *see id.* ¶¶ 14-15.  That a lawyer would provide legal advice to his client and someone he has represented as a client in other matters in the run-up to giving notice of the purported right to buy a business's stock does not seem out of the ordinary.  And the privilege log entries for the challenged documents support a conclusion that the communications involved Koche serving in his legal capacity.  *See* Privilege Log Entry No. 315 ("Confidential communication in anticipation of litigation reflecting *legal advice* regarding the Shareholder's Agreement and Boar's Head share ownership." (emphasis added)), No. 318 ("Confidential communications between Plaintiff, Plaintiff's counsel and R. and B. Martin in anticipation of this litigation reflecting *legal advice* regarding strategy related to the dispute." (emphasis added)), No. 326 ("Confidential communication requesting documents and information to facilitate *legal advice* regarding Barbara Brunckhorst estate and interests." (emphasis added)).

The Court therefore denies Bischoff's motion to compel.  The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 145.

SO ORDERED.

Dated: July 15, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge