UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
FRANK BRUNCKHORST III, individually and in his :
capacity as trustee of THE FRANK BRUNCKHORST III :
2001 TRUST, :
: 21 Civ. 4362 (JPC)
Plaintiff, :
:
-v- : ORDER
:
ERIC BISCHOFF *et al.*, :
:
Defendants. :
:
-----------------------------------------------------------------X
:
ERIC BISCHOFF, :
:
Counterclaim-Plaintiff, :
:
-v- :
:
FRANK BRUNCKHORST III, individually and in his :
capacity as trustee of THE FRANK BRUNCKHORST III :
2001 TRUST, :
:
Counterclaim-Defendant. :
:
-----------------------------------------------------------------X
:
ERIC BISCHOFF, :
:
Crossclaim-Plaintiff, :
:
-v- :
:
SUSAN STRAVITZ KEMP, in her capacity as co-trustee :
of THE BARBARA BRUNCKHORST 1994 TRUST and :
executrix of THE ESTATE OF BARBARA :
BRUNCKHORST *et al.*, :
:
Crossclaim-Defendants. :
:
-----------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On December 15, 2022, Plaintiff Frank Brunckhorst III ("Brunckhorst") moved to compel counsel for Defendant Eric Bischoff ("Bischoff"), Schulte Roth & Zabel LLP ("Schulte"), to respond to a November 2, 2022 subpoena.  Dkt. 205.  The Court ordered the parties to submit additional briefing on the issue in a December 28, 2022 Order.  Dkt. 212.  Brunckhorst filed his additional briefing on January 5 and 6, 2023, Dkts. 213, 214 ("Brunckhorst Motion"), Schulte responded on January 16, 2023, Dkt. 216 ("Schulte Opposition"), and Brunckhorst filed his reply on January 23, 2023, Dkt. 219 ("Brunckhorst Reply").

Separately, on January 30, 2023, Bischoff moved to compel Brunckhorst to produce emails pursuant to a November 14, 2022 request for production.  Dkt. 226.  Brunckhorst opposed the motion on February 2, 2023.  Dkt. 233.  The Court treats each motion in turn.

## I. Brunckhorst's Motion to Compel

The November 2, 2022 subpoena initially presented twenty document requests, Dkt. 213 at 1, though Brunckhorst agreed to drop seven of these requests and to limit the temporal scope of eleven others.  Brunckhorst Motion at 3-4.[1]  Brunckhorst argues that the remaining requests pertain

---

[1] The remaining requests are as follows:

Request 3:  "All Documents created prior to May 17, 2021 relating to any and all trusts, past or present, for the benefit of, settled by, or controlled by Defendant Bischoff that at any time have held Boar's Head shares, including, but not limited to, any trust agreement and amendment to such agreement(s)."

Request 5:  "From January 1, 1991 through the present, all Documents related to any transfer of Boar's Head shares by Defendant Bischoff, or any trusts owned by Defendant Bischoff or under his direction or control, but not limited to any transfer of Boar's Head shares by Defendant Bischoff referenced in the Third Amended Counterclaim Complaint."

Request 9:  "All Documents relating to [Brunckhorst]'s Active Employee status under the Shareholder's Agreement at the time of the 2020-Trust-to-[Brunckhorst] Transfer."

2

to the following topics: (1) interpretation of a Shareholders' Agreement at issue in this case

---

        Request 10: "From January 1, 1991 through May 17, 2021, all Documents relating to the Shareholder's Agreement, including but not limited to all Documents relating to or concerning the drafting or negotiation of the Shareholder's Agreement."

        Request 12: "From September 1, 2020 through May 17, 2021, all Documents to, from, discussing, relating to or concerning Plaintiff, Barbara Brunckhorst, Susan Stravitz Kemp or Richard Todd Stravitz."

        Request 13: "From to [sic] September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning the Barbara Brunckhorst Trusts."

        Request 14: "From to [sic] September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning the Last Will and Testament of Barbara Brunckhorst."

        Request 15: "From to [sic]  September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning the Barbara Brunckhorst Shares."

        Request 16: "From to [sic]  September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning the ownership, control and/or transfer of Boar's Head stock."

        Request 17: "From June 1, 2009 through May 17, 2021, all Documents discussing, relating to or concerning the Memorandum of Understanding between Frank and Barbara Brunckhorst regarding their intention that, upon death, their shares be sold for the benefit of charity."

        Request 18: "From September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning the following notices of intention to purchase the Barbara Brunckhorst Shares: (a) The January 6, 2021 notice of Eric Bischoff's 2012 Trust; (b) The January 22, 2021 notices of Frank Brunckhorst III, Robert P. Martin and Robert S. Martin (in their individual capacity and capacity as Trustee)."

        Request 19: "From September 1, 2020 through May 17, 2021, all Documents discussing, relating to or concerning Defendant Bischoff's April 9, 2021 letter and April 14, 2021 letter to the Trustee Defendants."

        Request 20: "From January 1, 1991 through May 17, 2021, all Documents relating to any notice provided by a Boar's Head shareholder, pursuant to the terms of the Shareholder's Agreement, including, but not limited to, any notices of acceptance of offers, including, but not limited to, deemed offers, to purchase shares."

Dkt. 213-2 at 2-5.

(requests 5, 9, 10, 16, 19, and 20), (2) the manner in which Bischoff has held his Boar's Head shares (requests 3 and 5), (3) Bischoff's knowledge that Barbara Brunckhorst intended to pass her shares to Brunckhorst upon her death (requests 12, 13, 14, 15, and 17), and (4) Bischoff's January 6, 2021 notice that sought to buy shares previously owned by Barbara Brunckhorst (request 18). *See* Brunckhorst Motion at 4. Brunckhorst claims that Schulte has served as Bischoff's trusts and estates counsel at various points, Brunckhorst Motion at 2, represented Bischoff in drafting an interim settlement agreement in 2019 between Bischoff and another shareholder involving what Bischoff alleged was an impermissible transfer of shares, *id.* at 3; Dkt. 68 ¶¶ 47-50, represented Bischoff in connection with a January 6, 2021 notice by which Bischoff sought to purchase shares from another party, Brunckhorst Motion at 3, and represents Bischoff in another litigation in Florida against other shareholders in which Bischoff has taken positions contradictory to his positions in this litigation, *id*. Due to those various representations, Brunckhorst expects that Schulte possesses documents relevant to the at issue requests.

Schulte responds that it was Bischoff's trusts and estates counsel only from 2001 to 2009, Schulte Opposition at 2; agrees that it drafted the interim settlement agreement and has agreed to produce non-privileged documents related to the negotiation of that agreement, *id.* at 2 & n.1; argues that, because litigation was expected by the parties when the January 6, 2021 notice was received, materials related to drafting that notice are privileged, *id.* at 5; and states that none of the document requests pertain to the Florida litigation and that any materials related to that litigation are privileged, *id.* at 6.

Schulte does not object to Brunckhorst's requests on the basis of relevancy, though as discussed *infra* it does argue there is no "specific need" for the at issue materials, and instead argues that its status as Bischoff's litigation counsel requires an analysis of the requests under the

4

factors set out by the Second Circuit in *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003) ("*Friedman*"), Schulte Opposition at 1-2, and that the subpoena is otherwise improper under Federal Rule of Civil Procedure 45 because it is unduly burdensome and not proportional to the needs of the case, *id.* Brunckhorst responds that the *Friedman* factors weigh in favor of his motion. Brunckhorst Motion at 2; Brunckhorst Reply at 1.

*Friedman* concerned a motion to compel the deposition of a lawyer—the eponymous Friedman—who had previously served as the defendants' counsel in connection with a merger. *Friedman*, 350 F.3d at 67. In the litigation at issue, the defendants presented affirmative defenses on the basis of the advice provided by Friedman. *Id.* Because Friedman had consented to the deposition by the time the Second Circuit's decision was rendered, the appeal became moot and the Second Circuit's opinion was *dicta* that the Circuit hoped would "serve the useful purpose of cautioning about the limits of [its] prior rulings on a frequently litigated issue and perhaps avoid some needless appeals." *Id.* at 72 n.4. Essentially, the Second Circuit's writing served to advise courts in this Circuit that it had never adopted the Eighth Circuit's rule in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which requires that a party seeking to depose opposing trial counsel "must show that: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case." *Friedman*, 350 F.3d at 70. The Second Circuit recognized that this rule "represents a departure from the otherwise permissive deposition-discovery regime under the Federal Rules of Civil Procedure," *id.* at 70, and stated that instead the "standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an

5

inappropriate burden or hardship," *id.* at 72.  This "inappropriate burden or hardship" language stems from the requirements of the then-applicable version of Federal Rule of Civil Procedure 26, which provided broad latitude to parties in taking depositions, but granted district courts broad discretion to manage discovery including by issuing "for good cause shown . . . any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c) (2003); *see also Friedman*, 350 F.3d at 69-70.  In short, the Second Circuit's writing in *Friedman* did not create a separate process by which the Court assesses opposing counsel discovery; rather, it clarified the factors a district judge should consider in engaging in its management of discovery involving requests to depose attorneys.  Those factors include (1) "the need to depose the lawyer," (2) "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," (3) "the risk of encountering privilege and work-product issues," and (4) "the extent of discovery already conducted."  *Friedman*, 350 F.3d at 72.

Courts in this District have applied the *Friedman* factors in non-deposition contexts, including in decisions resolving motions to compel lawyers to comply with document subpoenas. *See Chevron Corp. v. Donziger*, No. 11 Civ. 691 (LAK), 2013 WL 1087236, at *23 (S.D.N.Y. Mar. 15, 2013); *Varbero v. Belesis*, No. 20 Civ. 2538 (LJL), 2020 WL 7043503, at *2 (S.D.N.Y. Dec. 1, 2020).  However, in other instances where courts have applied the *Friedman* factors to analyze motions to compel or quash related to attorney deposition subpoenas, they did not apply the *Friedman* factors when they considered document subpoenas against those attorneys, including litigation counsel.  *See Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693 (PAE), 2015 WL 5148753, at *1-3 (S.D.N.Y. Aug. 26, 2015); *KOS Bldg. Grp., LLC v. R.S. Granoff Architects, P.C.*, No. 19 Civ. 2918 (PMH) (LMS), 2020 WL 1989487, at *4-6 (S.D.N.Y. Apr. 24, 2020).  Because

the parties generally seem to agree that the *Friedman* factors are relevant here, the Court will consider them in deciding Brunckhorst's motion to compel, mindful of the fact that these factors are a component of the Court's normal analysis, and not a substitute for it.

"Rule 45 permits a party to command a non-party to produce documents and provide deposition testimony." *City of Almaty v. Sater*, No. 19 Civ. 2645 (AJN) (KHP), 2022 WL 769213, at *2 (S.D.N.Y. Feb. 24, 2022). "The issuing party 'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *Id.* (quoting Fed. R. Civ. P. 45(d)(1)). Federal Rule of Civil Procedure 26(b)(1) provides that a party

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Further, "[a]lthough not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Blagman v. Apple, Inc.*, No. 12 Civ. 5453 (ALC) (JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 561 (S.D.N.Y. 2013)). Rule 37 allows a party seeking discovery to move for an order compelling that discovery, including the production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iv). If the court denies such a motion, it "may issue any protective order authorized under Rule 26(c)." Fed. R. Civ. P. 37(a)(5)(B). That rule allows the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(a). However, "the rules generally do not place any initial burden on parties to justify their deposition and discovery requests." *Friedman*, 350 F.3d at 69.

As stated, the parties do not appear to dispute that the sought-after documents are relevant. Instead, Schulte argues that the *Friedman* factors do not weigh in favor of granting the motion,

7

Schulte Opposition at 1-2, and that complying with Brunckhorst's subpoena would be unduly burdensome and not proportional to the needs of the case, *id.* at 10.

Beginning with the first factor, the need to obtain the discovery, the parties disagree about the degree of need that a party must demonstrate in order to seek discovery from another party's counsel. Schulte argues that Brunckhorst must show a "specific need," *id.* at 3 (quoting *Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578 (RWS), 2004 WL 1627170, at *6 (S.D.N.Y. July 21, 2004)). While the Court does consider Brunckhorst's need to obtain the at issue materials, since such an assessment weighs on whether the burden or expense of the discovery outweighs its likely benefit, the Court disagrees with Schulte that Brunckhorst must show a "specific need" for the materials. Such a requirement would essentially implement the *Shelton* rule, which was explicitly rejected by the Second Circuit in *Friedman*.

Brunckhorst argues that the first factor weighs in his favor because he has "limited his requests to those documents that have not been produced in this case." Brunckhorst Motion at 7 n.1. As such, he argues, there is a need for those documents because they necessarily have not been obtained from another source. In response, Schulte argues that identical or near identical requests for production were served on Bischoff previously and have been complied with. Schulte Opposition at 4. But any materials responsive to the subpoena, as limited, would not have been produced in response to those requests for production. The Court therefore determines that Brunckhorst has sufficiently shown that the materials he seeks, which exclude documents already produced, cannot be obtained from other sources and so that he has a need for them. This factor weighs in favor of granting the motion to compel.

As to the second factor, the Court balances Schulte's roles outside of this litigation against its current status as litigation counsel. That status does not render Schulte entirely immune to

document requests. *See Wenning*, 2015 WL 5148753, at *2 (directing the firm of the plaintiff's litigation counsel to produce documents); *KOS Bldg. Grp.*, 2020 WL 1989487, at *6 (directing one of the plaintiff's litigation attorneys to produce documents). At the same time "'[c]ourts have been particularly concerned about the burdens imposed on the adversary process when lawyers themselves are the subject of discovery requests,' lest a request to counsel apparently legitimate on its face reflects the intent or has the impact of interfering with or burdening a party's choice of counsel." *Varbero*, 2020 WL 7043503, at *2 (quoting *Patsy's Italian Rest., Inc. v. Banas*, Nos. 06 Civ. 729 (DLI), 06 Civ. 5857 (DLI), 2007 WL 174131, at *2 (E.D.N.Y. Jan. 19, 2007)). This factor ties into the third *Friedman* factor, the risk of encountering privilege and work product issues, because a significant risk of encountering privilege and work product issues including materials revealing litigation strategy, along with the concurrent burden on Schulte in resolving those issues, is both troublesome in its own right and would increase the extent to which responding to the subpoena would interfere with Bischoff's choice of counsel. In other words, time spent resolving privilege issues is of concern both because of the burden it places on Schulte directly and because of the distraction it causes from Schulte's representation of Bischoff.

It appears that by virtue of Schulte's previous representation of Bischoff, Schulte likely possesses documents related to the requests. At the same time, review of those documents will expend time and focus that otherwise could be directed towards this litigation. Responding to the requests further poses the risk of imposing burdens with respect to privilege and work product review in particular, as well as spawning privilege and work product disputes that will further pull Schulte away from its role as Bischoff's counsel in this litigation. On the other hand, parties should not be able to shield otherwise producible material from discovery merely by continuously hiring the same law firms in both their litigation and non-litigation matters, and putting too much weight

on the fact that Schulte is now litigation counsel runs the risk of creating a rule under which a third-party's status as litigation counsel becomes a "talisman" for the resolution of discovery disputes. *See Friedman*, 350 F.3d at 71 ("[W]e . . . have stated specifically that the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature.").

Ultimately, the Court's analysis of the specific document requests at issue shows that the majority of the requests, specifically requests 9, 12, 13, 14, 15, 17, 18, 19, and 20, broadly relate to parties, entities, and third parties tied up in this litigation or are likely to target documents in Schulte's possession which were generated *because of* Schulte's status as Bischoff's litigation counsel. For example, given that Schulte has advised Bischoff since early 2019 with respect to this litigation, Dkt. 217 ¶ 8 (Adams Declaration), request 12, which targets all documents discussing Brunckhorst or the Crossclaim Defendants, seems extremely likely to cover privileged discussions between Bischoff and Schulte regarding this litigation in particular. Similarly, to take another example, request 9 targets documents relating to Brunckhorst's "Active Employee status under the Shareholder's Agreement," Dkt. 213-2 at 2, but because Schulte is Bischoff's, not Brunckhorst's, counsel, it is most likely the case that Schulte would only have documents discussing this topic in the context of advising on this or other litigation concerning the matter of Brunckhorst's employee status. The significant risk that the requests, as currently drafted, would produce privilege and work product issues and disputes is further reflected by the parties' current disagreement as to length of time this litigation has been pending. *See* Brunckhorst Reply at 4. The second and third factors therefore weigh against granting the motion to compel with respect to requests 9, 12, 13, 14, 15, 17, 18, 19, and 20. *See Varbero*, 2020 WL 7043503 at *2 (determining that the *Friedman* factors weighed against enforcing a subpoena against the defendant's litigation

counsel where "the time period for the requested documents coincides with the period of the dispute between Plaintiff and Defendant and extends into the many months during which this litigation has been pending," because the subpoena "r[an] the risk of implicating privileged communications between attorney and client and/or privileged attorney work product").

For the remaining requests, numbers 3, 5, 10, and 16, Schulte's prior representation of Bischoff as trusts and estates counsel, combined with the more limited scope of the requests, both increases the chances that responsive non-privileged documents would be in Schulte's possession and reduces the burden on Schulte to review responsive documents for privilege. For these requests, the Court determines that the second and third factors weigh less against granting the motion to compel and are instead roughly neutral.

Finally, as to the fourth factor, discovery in this case has been voluminous and extended on multiple occasions. At the same time, Brunckhorst's requests exclude already produced material, and so previous discovery necessarily could not have turned over any materials that are the subject of the requests. Schulte argues that "there is no reason to think that the Subpoena will yield meaningful non-privileged responsive material beyond what Eric has already produced and what [Schulte] has already agreed to produce in response to the subpoena." Schulte Opposition at 10. But with neither party having reviewed these materials, the Court does not see how Schulte can support that argument. This fourth factor therefore weighs in favor of Brunckhorst.

Weighing these considerations together, the Court determines that complying with the subpoena would pose an inappropriate and undue burden on Schulte with respect to requests 9, 12, 13, 14, 15, 17, 18, 19, and 20. The scope of those requests will almost certainly lead to significant privilege and work product issues for Schulte in attempting to respond, which will both burden Schulte and distract it from its role in this litigation. The Court therefore denies Brunckhorst's

motion to compel with respect to them. The Court further determines that responding to requests 3, 5, 10, and 16, as narrowed by the parties' meet and confers, would not pose an inappropriate or undue burden on Schulte and so grants the motion to compel with respect to those requests. However, the Court modifies each of those four requests by adding the following clause to the end of the last sentence of each request: "except to the extent such Documents address these topics in the context of discussing this or any other litigation." Additionally, Schulte may produce either a privilege log or a metadata log with respect to these requests at its election.

## II. Bischoff's Motion to Compel

Bischoff seeks an order compelling Brunckhorst to "produce e-mails exchanged between [Brunckhorst] and any @boarshead.com or @farbestfoods.com e-mail address from the period January 1, 2020 to February 28, 2022." Dkt. 226 at 1. Bischoff argues that these materials are relevant to whether Brunckhorst is a "Full Time" employee who devotes "Substantially All" of his business time to Boar's Head.[2] Dkt. 226 at 2.

Brunckhorst objects to Bischoff's request on the bases that it is overly broad and seeks materials not relevant to the parties' claims or defenses in this action. Dkt. 233 at 1. Brunckhorst represents that the at issue emails have already been reviewed for responsiveness to all of Bischoff's discovery requests, and that all relevant materials have been produced. *Id.* In particular, Brunckhorst argues that any emails that "do not concern work" and therefore have not been produced "are not probative of the time Mr. Brunckhorst devotes to work." *Id.* at 2.

As stated, under Federal Rule of Civil Procedure 26(b)(1), a party

---

[2] Bischoff has contended that, at the time of the May 5, 2021 transfer of Boar's Head shares from a temporary trust to Brunckhorst personally, Brunckhorst was not an "Active Employee" within the meaning of the Shareholder's Agreement because he was not a "full time" employee who devoted "substantially all of his . . . business time to the affairs" of Boar's Head. *See, e.g.*, Dkt. 181 at 1 (internal quotation marks omitted).

12

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The Court agrees with Brunckhorst that the scope of this request is overly broad, as not all emails sent or received by Brunckhorst via his work email accounts would be relevant to the claims or defenses of the parties in this case. Brunckhorst has already agreed to produce any remaining emails "relating to Mr. Brunckhorst's work at Boar's Head or Farbest." Dkt. 233 at 1. Definitionally then, any emails other than those Brunckhorst has agreed to produce must *not* relate to Brunckhorst's work and are therefore not relevant. However, the Court cautions Brunckhorst, building on the example cited in his submission, *id.* at 2, that while an email arranging a social lunch would not be relevant to Brunckhorst's work status, one which indicated in any way the amount of time Brunckhorst communicates with a work colleague *as a work colleague* would be. The Court assumes that such emails would be covered by Brunckhorst's agreement to produce responsive documents.

### III. Conclusion

For the previously stated reasons, Brunckhorst's motion to compel is granted in part and denied in part. Bischoff's motion to compel is denied. Fact discovery in this case is re-opened to the extent required for Schulte to respond to document requests 3, 5, 10, and 16. Schulte and Brunckhorst shall file a joint status letter thirty days after the date of this Order updating the Court as to the progress of that discovery.

The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 205, 213, and 226.

SO ORDERED.

Dated: April 26, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge