Oa9FbruC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  FRANK BRUNCKHORST III, *et al.*

4              Plaintiffs,

5          v.                          21 Civ. 4362 (JPC)

6  ERIC BISCHOFF, *et al.*
                                       Conference
7

8              Defendants.

   ------------------------------x
9                                      New York, N.Y.
                                       October 9, 2024
10                                     3:00 p.m.

11

12 Before:

13                    HON. JOHN P. CRONAN,

14                                     District Judge

15

16                    APPEARANCES

17 QUINN EMMANUEL URQUHART & SULLIVAN
        Attorneys for Plaintiff
18 BY:  ANDREW H. SCHAPIRO
        KEVIN REED
19

20 McGUIREWOODS LLP
        Attorneys for Trustee Defendants
   BY:  PHILIP A. GOLDSTEIN
21      RYAN FREI
        MEGHAN HUBBARD
22

23 SCHULTE ROTH & ZABEL LLP
        Attorneys for Defendant Eric Bischoff
24 BY:  MICHAEL SWARTZ
        RANDALL ADAMS
        MARK GARIBYAN
25      VICTORIA PAVLOCK

Oa9FbruC

```
 1    SAVIANO P.C.
            Attorney for Defendant Eric Bischoff
 2    By:   EDWARD S. SAVIANO

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Oa9FbruC

```
 1              (Case called)
 2              MR. REED:  Good afternoon, your Honor.
 3              Kevin Reed of Quinn Emanuel Urquhart & Sullivan, here
 4      on behalf of plaintiff Frank Brunckhorst III.
 5              THE COURT:  Afternoon, Mr. Reed.
 6              MR. SCHAPIRO:  Good afternoon.
 7              I'm Andrew Schapiro, also from Quinn Emmanuel, also
 8      for Mr. Brunckhorst.
 9              THE COURT:  Good afternoon, Mr. Schapiro.
10              MS. HUBBARD:  Good afternoon.
11              I'm Meghan Hubbard of McGuireWoods, and I'm here on
12      behalf of Todd Stravitz and Susan Kemp, the trustees of the
13      Brunckhorst Trust.
14              THE COURT:  Good afternoon Ms. Hubbard.
15              MR. FREI:  Good afternoon, your Honor.
16              Ryan Frei from McGuireWoods, and I am also here on
17      behalf of the trustee defendants.
18              THE COURT:  Good afternoon, Mr. Frei.
19              MR. GOLDSTEIN:  Good afternoon, your Honor.
20              Phil Goldstein, also from McGuireWoods on behalf of
21      the trustee defendants.
22              THE COURT:  And good afternoon, Mr. Goldstein.
23              MR. SWARTZ:  Good afternoon, your Honor.
24              Michael Swartz from Schulte Roth & Zabel on behalf of
25      Eric Bischoff.
```

Oa9FbruC

| | |
|---|---|
| 1 | THE COURT:  Mr. Swartz. |
| 2 | MR. ADAMS:  Good afternoon, your Honor. |
| 3 | Randall Adams from Schulte Roth on behalf of Mr. |
| 4 | Bischoff. |
| 5 | THE COURT:  Mr. Adams. |
| 6 | MR. GARIBYAN:  Good afternoon, your Honor. |
| 7 | Mark Garibyan, also from Schulte Roth, on behalf of |
| 8 | Eric Bischoff. |
| 9 | THE COURT:  Okay.  Mr. Garibyan. |
| 10 | MS. PAVLOCK:  Good afternoon, your Honor. |
| 11 | Victoria Pavlock, also from Schulte Roth on behalf of |
| 12 | Eric. |
| 13 | THE COURT:  Good morning Ms. Pavlock as well. |
| 14 | MR. SAVIANO:  Good afternoon, your Honor. |
| 15 | Ed Saviano, Saviano P.C. on behalf of Eric Bischoff. |
| 16 | THE COURT:  Good afternoon, Mr. Saviano. |
| 17 | I think we've got everyone other than my interns in |
| 18 | the room, so we can get started. |
| 19 | We are here for a status conference.  I wanted to |
| 20 | first start with a few housekeeping matters, just to make sure |
| 21 | that I've checked off all of my boxes. |
| 22 | As the parties, of course, know, on August 29, I |
| 23 | issued an opinion and order on the cross-motion for a summary |
| 24 | judgment.  After that opinion, I issued a couple of other |
| 25 | orders.  One was on September 24, addressing outstanding |

Oa9FbruC

1    sealing requests, and the second was filed a couple days ago on

2    October 7 and it granted partial summary judgment to the

3    trustees under Rule 56(f) and also dealt with some follow-up

4    redactions requested in connection with my September 24 order.

5           I believe at this point all the pending requests and

6    outstanding issues as to the summary judgment motions have been

7    dealt with, but I did want to make sure, given the volume of

8    filings in this case, that there's nothing that any counsel

9    thinks is still outstanding on those issues.

10          Mr. Reed, anything?

11          MR. REED:  I'm not aware of anything outstanding, your

12   Honor.

13          THE COURT:  Okay.  Mr. Swartz.

14          MR. SWARTZ:  The same, your Honor.

15          THE COURT:  And Mr. Goldstein.

16          MR. GOLDSTEIN:  Nothing, your Honor.

17          THE COURT:  Okay.  I think there are two issues,

18   primarily, to discuss today in addition to, of course, anything

19   the parties wish to raise.  The first is the path forward on

20   the Barbara 2010 Trust shares and the second is the request

21   from the trustees to seek leave to amend their answer.

22          Maybe initially, with respect to the Barbara 2010

23   Trust shares, since I have not received a request from the

24   parties, I assume the answer is no, but I did note in my

25   summary judgment opinion that the parties, of course, brief

Oa9FbruC

1    request a referral to Judge Lehrburger or the mediation program

2    if they thought that would be productive.

3            Am I to assume that that would not be productive from

4    the parties' views?

5            MR. REED:  Your Honor, I think from Mr. Brunckhorst's

6    perspective, I think that's correct, your Honor.  We're open to

7    discussions with Mr. Bischoff, and we've had those in the past.

8    I don't think either side feels like the necessity of involving

9    a mediator is something that would be useful.

10           THE COURT:  Okay.

11           MR. SWARTZ:  Yes, your Honor.

12           We agree, and we talked about -- we also don't know

13   that we need to have a trial on this issue, and so we'll get to

14   that when you're ready for that.

15           THE COURT:  I'm ready.

16           MR. SWARTZ:  We think that your Honor focused on the

17   summary judgment decision that there hadn't been a lot of

18   attention paid to this particular issue as you framed it, and

19   that's right.  And we are proposing that both sides brief the

20   issue, simultaneous briefing in about 30 days, and then just

21   one reply each, and then submit it to a decision.

22           I do believe most of these are legal issues, and given

23   the Court's familiarity, frankly, we thought it would -- maybe

24   not for you, but -- we thought it would be the most efficient

25   path forward *vis-à-vis*, as compared to mediation or something

Oa9FbruC

```
1    else.
2              THE COURT:  And when you say a particular issue,
3    you're referring to the 2010 shares.
4              MR. SWARTZ:  The 2010 Trust and when it was attempted
5    to be disposed of, in particular.
6              THE COURT:  And I take it the parties feel that
7    currently, in the record you represent to me, it will be
8    sufficient to be able to resolve that issue?
9              MR. SWARTZ:  We believe so, your Honor.
10             THE COURT:  Mr. Brunckhorst have a view on that?
11             MR. REED:  Your Honor, I think we're sympathetic to
12   the concept that Mr. Swartz is raising.
13             THE COURT:  Yeah.
14             MR. REED:  As we think about what a trial would look
15   like on this issue, it's a bit hard to imagine it, because
16   there's really nobody who could come in and testify to what
17   this agreement meant, and I think it does boil down to, what of
18   the shares have, to this point have been attempted to be
19   disposed.
20             So I think briefing could work, but on the other hand,
21   if your Honor felt that there was some benefit to holding a
22   trial or a hearing of some sort, ultimately, you have to decide
23   it, so we would think whatever procedure you think is most
24   efficacious is one we'll support.
25             THE COURT:  And if there were a trial, it would be a
```

Oa9FbruC

1    jury trial; right?

2            MR. REED:  I believe so, yeah.

3            MR. SWARTZ:  I actually don't believe so.

4            With respect to that particular claim, we brought

5    breach of contract action.  We did not demand a jury trial, nor

6    did the trustees in their response.  I think Mr. Brunckhorst

7    brought claim for a declaratory judgment but not money damages,

8    so I don't actually think there's a right to a jury trial.

9            THE COURT:  With respect to the Barbara 2010 Trust, is

10   there going to be a factual dispute as to whether Barbara was a

11   beneficiary of that trust at the time of her death?

12           Mr. Swartz.

13           MR. SWARTZ:  There may be a dispute.

14           I don't -- the documents will be legally effected one

15   way or another.  I mean, we don't think there's -- well, I'll

16   leave it to Mr. Brunckhorst's counsel to say that, but she was

17   a lifetime beneficiary of the trust until her death, and the

18   shares did not move until the time of her death.  And in fact,

19   there's a memo that is in the summary judgment record where

20   counsel for Mr. Brunckhorst and for -- Frank Brunckhorst and

21   Barbara Brunckhorst both talked about the intention of the

22   transfers to be no-transfer during the lifetime, but the

23   transfer would be effectuated at the time of death and go into

24   the waterfall.  And it's Dkt. No. 277-39 in the record.

25           MR. REED:  I guess, your Honor, that exchange makes me

Oa9FbruC

 1    think there will be a factual dispute.  I think the documents

 2    are fairly clear that Ms. Brunckhorst gave up her beneficial

 3    interest in the trust virtually as soon as it was settled, so

 4    she was not a beneficiary in the trust at the time of her

 5    death.

 6           THE COURT:  And the proposal you're making,

 7    Mr. Swartz, would just deal with liability in terms of the

 8    briefing?

 9           MR. SWARTZ:  I believe so.

10           I'm a little confused by the question, because it's a

11    breach of contract action, and everything intended to the

12    shares being transferred would be associated with it, but yeah,

13    I think the issue would be the legal issue with effect of

14    transfer.

15           THE COURT:  Well, I guess I'm maybe thinking a little

16    bit ahead to the offset arguments that the trustees may be

17    making and whether or not we would be looking at a trial on

18    damages down the road in addition to a liability determination

19    on the remaining 2010 shares.

20           MR. SWARTZ:  Well, I don't know that the 2010 share

21    liability impacts the 1994 trust, the shares that you've

22    already determined will be transferred to Eric Bischoff.  I

23    mean, the liability is associated with particular shares, so I

24    think it is distinct in that way.

25           THE COURT:  Okay.

Oa9FbruC

1          MR. SWARTZ:  And I don't know -- when we get to the

2     leave to amend, I suppose we can talk about that, but I don't

3     know that there's going to be an issue about the numbers, *per*

4     *se*.  I think there's going to be an issue about the legal

5     liabilities, so again, I'm not sure that we're heading towards

6     a trial on anything.  We discussed this; we hope not.  But

7     there will be, certainly, some legal disputes.

8          THE COURT:  And you may have said this at the

9     beginning, but what was your idea on timing for the

10    simultaneous briefing?

11         MR. SWARTZ:  Our proposal would be 30 days for initial

12    briefs and 30 days for responses, and, I think, 25 pages per

13    opening and responsive.

14         THE COURT:  Thoughts from Mr. Brunckhorst?

15         MR. REED:  I think that's generally fine.

16         I might want to adjust it on the margins only because

17    of a vacation I have booked for the beginning of November, but

18    45 days, or something in that range.

19         THE COURT:  Let's adjust it for that.

20         I will say, coming in, I did expect there would

21    probably be a trial being set, but I do think there may be a

22    value in seeing if briefing can resolve this issue, especially

23    if it's teed up a little bit more.

24         So today is October 9.

25         When is your travel, Mr. Reed?

Oa9FbruC

                    MR. REED:  I'm out the 2nd through the 8th of

November.

                    THE COURT:  So 30 days from today would bring us to

November 8.  Why don't we do November 22 for lead briefs from

both parties.

                    Does that work for everyone?

                    MR. SWARTZ:  Yes.

                    MR. REED:  Yes, your Honor.  Thank you.

                    THE COURT:  And do the trustees think they'll be

filing a separate brief, or joining in with Mr. Brunckhorst?

                    MR. FREI:  Your Honor, probably joining, because I

think at the initial summary judgment phase, we largely relied

on their arguments and piggybacked, but I don't suspect it

would be different now, but if we think there's any reason to

do it, we will certainly let the Court know and discuss with

opposing counsel.

                    THE COURT:  Okay.  So November 22 for leave briefs.

                    How much time, then, for responsive briefs?  30 days

from then will bring us to December 23.  I don't know how that

impacts people's holiday plans, but as we extend beyond that,

it probably gets worse.

                    MS. HUBBARD:  I think it gets worse if we extend

beyond that, so that's fine with us, but obviously, if people

have plans, we don't want to interfere with those.

                    THE COURT:  Mr. Reed, would the 23rd work for

Oa9FbruC

1    responsive briefs?

2            MR. REED:  Yes.

3            That would be fine for us, your Honor.  Thank you.

4            THE COURT:  So November 22 for leave briefs.

5    December 23 for responsive briefs, 25-page limits, and we'll go

6    from there.

7            If it turns out that I think oral argument is needed

8    or if I think an evidentiary hearing is needed, I will let the

9    parties know, and we'll schedule where we need to schedule.

10            Maybe now we'll turn to the trustees' request to

11    further amend their answer to Eric's third amended

12    counterclaims and cross-claims.  And the request is for leave,

13    or to be able to move for leave to plead three affirmative

14    defenses that would, essentially, offset damages in connection

15    with the breach of contract claim.

16            So let me start with the trustees.  I read your letter

17    and the opposition, and I think I have an understanding of the

18    three affirmative defenses, but can you elaborate some more,

19    Mr. Frei, as to -- I see you gathering your stuff --

20            MR. FREI:  Yes.

21            THE COURT:  -- as to what these defenses will be?

22            MR. FREI:  I'd be happy to.

23            May I approach the podium?

24            THE COURT:  You may.

25            MR. FREI:  Thank you.

Oa9FbruC

1          Good afternoon, your Honor.

2          May it please the Court, and obviously it goes without

3     saying, if you'd like to guide me anywhere in particular, I'd

4     be happy to follow your lead.  I did have just some brief

5     introductory remarks I want to make to kind of set the table to

6     give the flavor for where we're coming from in making this

7     request at this juncture.

8          Judge, I was reading, on the plane, back through your

9     supplementary judgment opinion, and a sentence on page 2 really

10    struck me.  You stated, "Broadly speaking, the supplementary

11    judgment motions aim to identify, after several years of

12    uncertainty, the proper recipient of the Barbara Trust shares."

13    Your Honor, that is exactly right.  There was uncertainty, and

14    my clients as we've suggested earlier, were thrust into a very

15    difficult situation about three years ago, with both Frank and

16    Eric having pending claims for the same assets held in trust.

17    And it was all about who was the rightful purchaser of Barbara

18    shares, which your Honor acknowledged was uncertain for several

19    years.

20         You've got Frank who filed his complaint in May of

21    2021 for a DJ, and you've got Eric who filed his own DJ claim

22    on July 30.  Those dates predated the claimed date that Eric is

23    arguing for of entitlement to the shares.  So prior to the

24    presumptive nine-month period contemplated in the shareholder's

25    agreement, there were dueling claims, and the only reason our

Oa9FbruC

clients were in the case as nominal defendants was because they

administered the trust that held these shares that were

disputed.

Our clients are fiduciaries that are obligated to act

prudent at all times, and the only prudent thing to do under

those circumstances was not to sell the shares to either party.

Now, I suspect someone from Mr. Bischoff's side will stand up

and argue that we were not neutral stakeholders because we held

a view, and the view was that Mr. Brunckhorst was the rightful

recipient.  I submit to your Honor that believing that one

party may be the rightful recipient is different than taking

action in the face of dueling claims to prematurely sell the

shares to one of the parties before the Court has decided what

to do.  So I submit, we were and remain neutral stakeholders.

If my clients had acted hastily and they had taken steps to

prepare to sell the shares and the other party had caught wind

of that, I suspect we would have been here on a TRO.  If my

clients had taken steps to actually sell the shares, I suspect

there would have been an immediate claim seeking damages

against us, so we didn't do it.

And I know, your Honor, I'm rehashing what we've

already -- I just want to sort of set the table, because I do

think when we're talking about equitable claims, understanding

the fairness historically and where we're coming from and how

we, in fact, are neutral in this case with respect to the

Oa9FbruC

1    claims, our clients had nothing to gain in this litigation; our

2    clients were never going to keep the shares, I think, helps

3    contextualize it.

4            So we have consistently, dating back to

5    September 2021, represented to the Court and to the parties in

6    various pleadings, filings, and discovery that we would await

7    the Court's guidance and dispose of the shares in accordance

8    with the Court's guidance.  That was true then; it's true now,

9    and we'll remain willing to do that.

10           In terms of our request for leave to amend, I know the

11   Court has two three-page letters that kind of give some flavor.

12   I'm happy to give you a little bit more flavor now.  I'd like

13   to start with just, kind of, with the standards.  I know your

14   Honor is well aware of the 15(a) leave to amend standards.  I

15   don't want to get too into the weeds on that, but obviously,

16   under 15(a)(2), courts are to freely give leave to amend when

17   justice so requires, and I think fairness and justice required

18   here, Judge.

19           THE COURT:  And I'm sure it's not a surprise, but I'm

20   most interested in what you have to say about delay and

21   prejudice, particularly as to the first proposed amended

22   affirmative defense.

23           MR. FREI:  Sure, judge.

24           I think first, I'd like to note that under the case

25   law, prejudice and not delay really is the critical inquiry.

Oa9FbruC

1    The parties cited the *Block v. First Blood Associates* case, 988

2    F.2d 344.  That's Second Circuit, '93, and the court noted that

3    the rule in this circuit has been to allow a party to amend its

4    pleading in the absence of a showing by the non-movant of

5    prejudice or bad faith.  And mere delay, absent a showing of

6    bad faith or undue prejudice, does not provide a basis for a

7    district court to deny the trying to amend.

8         So your Honor, I understand -- I've seen the argument

9    that, well, in theory, this could have been asserted earlier

10   and it wasn't; that's undue delay.  Even if that were the case,

11   your Honor, it's not dispositive, because you look at the

12   prejudice.  And I submit that on that sort of guiding factor,

13   there really prejudice within the meaning of when courts deny

14   leave to amend.

15        The prejudice that courts cite to when they're denying

16   leave to amend or the lack of prejudice that courts embrace

17   when they grant leave to amend are really significant things

18   that happen late in the game like adding parties to the case on

19   the eve of trial, adding a dispositive defense that goes to

20   liability.  We hadn't found cases that deny leave to amend when

21   the requested amendments and defenses are really just going to

22   lowering some of the claimed damages.  I submit to your Honor,

23   that's just not the nature of prejudice on which it would be

24   fair and reasonable to deny a request for leave to amend.

25        THE COURT:  But nine percent *per annum* is a high

Oa9FbruC

1   number.  It's a New York figure, but it's a high number.  If

2   this defense were presented earlier, presumably, Eric's

3   attorneys would have done something to move the case along

4   faster.

5           MR. FREI:  Perhaps, Judge.

6           And I did see their argument about, they would have

7   tried to file, maybe, a motion for judgment on the pleadings,

8   but I was on the telephone call when they previewed that, and

9   your Honor very diplomatically but directly shot that idea

10  down, and I suspect that the result wouldn't have been any

11  different had there be an affirmative defense at the time.

12          And by the way, Judge, I think it's important to put

13  in context the scale of magnitude here.  Without getting into

14  precise numbers, the amount of distributions that the trustees

15  have already said they are willing to and they agreed early on

16  would pay to Eric in the event he were determined to be the

17  rightful recipient I believe is in the upper eight figures.

18          There is a misstatement, perhaps based on a

19  misapprehension or a misassumption in Eric's letter opposing

20  our request for leave.  I think he said, we would receive a

21  windfall in the eight figures.  I don't believe that's correct.

22  I don't believe it's quite that high, but obviously, the

23  precise calculations would be subject to the future proceedings

24  in this case, Judge, where you've got all the inputs and you do

25  the calculations.  So this is not something that would, you

1    know, wipe out or even come close to wiping out the

2    distributions that Mr. Bischoff would otherwise receive.

3            I did note, there was a case, the *Berros* (sp) *v.*

4    *Forest Labs* case that Mr. Bischoff cited, and the court there

5    talked about how there would be prejudice because there was new

6    discovery on a new claim that clearly would have been different

7    from and much more detailed than discovery on the previous

8    claims.

9            Asking for an offset that takes into account statutory

10   pre- and post-judgment interests to slightly offset the pre-

11   and post-judgment interests that the plaintiff is claiming is

12   hardly something that would require detailed discovery.  The

13   kind of factor that the Second Circuit has said would require

14   or justify denying leave to amend.

15           Here, Judge, the discovery, I think, really has been

16   substantially completed.  Even if we weren't making this

17   request, there still needs to be a true up- -- or an update to

18   the figures that would be necessary to come to any damages

19   calculations, so this is just adding on input as part of that

20   calculation.  I really don't think we're facing the kind of

21   prejudice that would warrant denying the request for leave,

22   Judge, and normally -- nor can I think they creditably claim

23   the litigation strategy would have been materially different.

24   I would direct your Honor to the *Nazario v. Deere* case, which

25   is, 295 F. Supp 2d 360 (S.D.N.Y. 2003).

Oa9FbruC

1          In there, the court said, you know, if you would be

2     forced to revise or abandon the litigation strategy for which

3     resources have already been expended due to the requested

4     amendment, that's the kind of prejudice that would warrant

5     denying it.  Here, anything that was already done was going to

6     need to be done anyway.  It wouldn't have changed that course,

7     Judge.

8          So unless there's any other questions on that

9     particular offset defense --

10          THE COURT:  Just one question.

11          Is your point that the potentially decreased amount of

12     damages that Eric would receive can never constitute prejudice

13     here, or is that, compared to the total amount of damages, it's

14     such a small amount that it doesn't constitute prejudice?

15          MR. FREI:  Our argument, Judge, is, in the case law

16     we've seen, a slight reduction or a reduction, period, in the

17     amount of damages the plaintiff is claiming is not the kind of

18     prejudice that has been cited in denying a request for leave to

19     amend.

20          Again, it goes to something that would dispose of a

21     claim in its entirety or add new parties; you fundamentally

22     change the course of litigation.  I just don't think we're

23     anywhere close to that significant alteration to the course of

24     the case.  I just don't think we're in the fact pattern that

25     would come anywhere close to denying a request for leave to

Oa9FbruC

1    amend.

2            THE COURT:  Regardless of the amount, the specific

3    number, we're looking at a situation where Eric would

4    potentially be receiving millions of dollars less in damages

5    than otherwise; correct?

6            MR. FREI:  I think that is an accurate statement your

7    Honor; yes.

8            THE COURT:  And that's not prejudice?

9            MR. FREI:  It's not the kind of prejudice -- and it

10    does have to be -- I think you have to view this question --

11    and I would suggest the Court view this question in the context

12    of Second Circuit case law where this issue has come up, and we

13    haven't seen any fact pattern where a Court has said a

14    reduction in the amount of damages, particularly if that

15    reduction wouldn't have been something that would have

16    necessarily triggered totally different discovery early on in

17    the case, there, your Honor, I think impacting the damages

18    claim perhaps could support a claim for prejudice, but we just

19    don't have that here.

20            THE COURT:  And I understand that the fact patterns

21    that have come up have been different than this.  Have you seen

22    any cases that have said a reduction in damages is not

23    prejudice?

24            MR. FREI:  I'm unaware of a case that stands for that

25    specific proposition, Judge, but I think it's telling when you

1    look at the fact patterns where there was prejudice, what kind

2    of circumstances existed, and we don't have those circumstances

3    here.

4         THE COURT:  Do you plan to touch on futility?  There

5    was an argument made in the responsive letter about futility,

6    and one of the points is the absence of authority for the

7    theory that a party who, the letter refers to the trustees as a

8    breaching party, that a party who is not in compliance with the

9    contract then is entitled to pre- and post-judgment interest,

10   essentially, on any damages that they could have to pay out.

11        MR. FREI:  Yes.  I saw that, Judge.

12        A couple quick responses.  I think the *In re 114 10th*

13   *Avenue Association Inc.* case is pretty on point here, and I

14   just want to speak to the logic of that case, which I think

15   applies here.

16        We cited that case.  I'm sure your Honor is familiar

17   with it.  And the court stated, and I quote, "New York

18   recognizes the longstanding equitable principle that a vendee

19   may not claim both profits related to the ownership of a

20   property, such as rents, and also have the use of purchase

21   money price."

22        And I would suggest that regardless of the reason the

23   same equitable principle applies here -- and I think, Judge,

24   it's also not quite -- I want to use the word fair, but -- not

25   quite accurate and on point to say, well -- you know, to

Oa9FbruC

1   demonize trustees -- not that your Honor was suggesting that --

2          THE COURT:  No.

3          MR. FREI:  -- but to demonize trustees as, you're a

4   breaching party.

5          Judge, I've said this before, and I'll say it again.

6   This should have been a declaratory judgment action because of

7   what we did.  Constructively, we interpleaded these shares into

8   the court.  Constructively, we did, and that was a fair,

9   reasonable, and prudent thing to do.  So I don't think we fit

10  the fact pattern of a nefarious breaching party that's trying

11  to harm a business parter and prevent them from getting money.

12  This was an innocent fiduciary who've got charitable endeavors

13  that they're supporting that are being drained of assets to

14  fund this litigation they were drawn into, and so to say we're

15  a breaching party, I understand in reading your Honor's

16  opinion, perhaps that's a consequence of the logic that the

17  declaratory judgment -- that the declaration is Eric was the

18  rightful purchaser, but I submit that we don't really fit into

19  the fact pattern that would fit us being deprived of an

20  equitable result here.

21         THE COURT:  Understood.

22         MR. FREI:  Okay.  Your Honor, on the -- just briefly

23  on the tax-related -- unless you have any other questions on

24  the other stuff.

25         THE COURT:  No.

Oa9FbruC

1          MR. FREI:  And Judge, I really think that this is --

2     to understand fully the bases for and how it would work, I

3     think full briefing would be he helpful if the Court would find

4     that helpful, and we would be happy to flush that out.

5          Judge, on the tax related offset defenses, the first

6     issue I would like to address is the suggestion of undue delay.

7     I submit, your Honor, that is inaccurate.  From the very first

8     answer that we filed in this case to Frank's complaint to the

9     operative answer we filed to Eric's third amended cross-claim,

10    we stated -- and I'm going to quote pages 2 and 3 of the

11    answers and also in the relief at the end.  We stated, "the

12    trustees state that they are neutral stakeholders in this

13    matter.  The trustees understand that the matter remains

14    pending resolution before this sort.  Therefore, the trustees

15    do not intend to sell the subject shares until the Court has

16    resolved the dispute between Mr. Brunckhorst and Eric Bischoff

17    and issued an order directing the sale of the subject shares.

18    The trustees stand ready and willing to accept direction from

19    the Court with how to proceed with the distribution of the

20    subject shares."

21         Here's the preview of the tax concern, Judge. "As

22    neutral stakeholders the trustees request that the Court's

23    final order include language directing that the Trustees are

24    not responsible for (1) any tax consequences associated with

25    any court-ordered distribution of the subject shares."

Oa9FbruC

1            Now, Judge, I acknowledge that that language was not

2    contained under the affirmative defense section, and I think

3    there's probably a fair discussion of weather the tax related

4    offsets we're trying to seek are truly in the nature of

5    affirmative defenses because, your Honor, I think they could

6    just as easily come into play later in this proceeding when the

7    Court is trying to fashion a remedy and craft an order

8    directing the transfer of the shares, because that order, at

9    some point, is going to have to determine what the effective

10   date for the transfer of the shares is, and I think these tax

11   implications largely go out of the window if the effective date

12   is what we think it should be, and that is, for all purposes

13   other than the distribution amounts we've already committed to

14   paying, that effective date should postdate the date of your

15   order.

16           And so I think, again, whether these are considered

17   later by the Court in connection with how to fairly and

18   properly craft the order or adding them now as a

19   belt-and-suspenders move as affirmative defenses, they're

20   certainly not surprised, because they've been in the case for

21   years.  We have flagged these tax consequences.  And we didn't

22   want to be accused of waiving this argument to request

23   protection later which why we proactively sought leave to

24   amend.

25           Judge, you might be wondering -- you mention effective

Oa9FbruC

date; you know, what do you mean by that?  I want to be clear.
We have, as I said, committed to the paying Mr. Bischoff
distributions dating back to September 30, 2021.  That was a
representation and an agreement we made to Mr. Bischoff years
ago, and we stand by it.  That will happen.

        And your Honor, I think if the Court wants to view
that just as us following through on our word or the damages
that flow from what you've now adjudicated to be a breach of
contract, either way, perhaps that's sensible, but that is very
distinct and an entirely different matter from backdating,
backdating a Delaware corporation's books and records to an
effective date of several years ago rather than the actual date
of transfer of the share, which would impact the books and
records of a Delaware corporation.

        I want to just bring to your Honor's attention, just
as an example of one of the layers of complexity, one of the
nuances in the problematic implications that would come from
having an effective date of the transfer earlier, Delaware
Corporation Code Law, this is Title 8 § 201 and that deals with
transfers of stock, generally -- and that refers to Article 8
Subtitle 1 of Title 6 -- when you then look at § 8301 of Title
6, that talks about when the delivery of a certificated
security occurs.

        In this case, there would have been stock
certificates, so we would be dealing with certificated security

Oa9FbruC

1    to effectuate the transfer of shares.  That section says that

2    the transfer occurs when the purchaser acquires possession of

3    the security certificate.  Again, that's § 8301, Title 6 of the

4    Delaware code.  That cannot occur, obviously, until after there

5    has been a court-ordered transfer requiring the certificates to

6    change hands.

7            That's the Delaware code, Judge.  This is just one

8    aspect that I think really demonstrates why we need -- and I

9    think the Court would ultimately benefit from -- detailed

10   briefing where the parties are carefully considering and

11   briefing these issues about what needs to happen from here on

12   out to get to the goal line on the '94 Trust shares.

13           Judge, one other consideration that we noticed, again,

14   when we were going back and reading through your opinion -- and

15   this is just, I think, one more example of the tricky nuance of

16   everything we're talking about here and why I don't think we

17   could resolve this today, I would submit -- in terms of later

18   crafting an order that would direct the transfer of shares to

19   Mr. Bischoff, you really have to consider not only the facts

20   and circumstances, but the provisions of the shareholders

21   agreement.

22           If you look at paragraph 7(a)(i), which is page 21 of

23   the shareholders agreement, it's the section dealing with

24   payment of purchase price.  And I'm going to read it, your

25   Honor.  It says, "with respect to the sale of shares, pursuant

Oa9FbruC

to paragraph 5 of this agreement" -- that's what we're dealing

with here, respectfully -- "the tax amount as here and after

defined shall be paid in cash or by certified or bank cashiers

check against the delivery of the certificate or certificates

representing the shares on the date which shall be agreed to by

the parties."  That has not yet happened, and that's referred

to as the sale date.  "But in no event more than nine months

after the date of the death of a shareholder."  It does not go

on to say, or the beneficiary of a trust that is the

shareholder thereto, in contrast with other provisions that

your Honor talked about in your opinion.

        So your Honor has determined that, with respect to the

'94 Trust, the trust itself is a shareholder.  That's pages 11

through 12 and 36 of your opinion, which includes your Honor's

definition and, of course, definition of shareholder

beneficiary.  So under that holding and under that finding, the

triggering date, arguably, is the death of a shareholder here a

trust, this trust remains in existence, okay, and it is

continuing to be administered.

        And all I'm pointing out in making this observation,

Judge, is, I think it is not straightforward and is highly

nuanced as to whether a 9 percent statutory interest rate needs

to be applied to equitably offset the harm to trustees, you

know, when there's, arguably, some ambiguity in this provision.

        I unders- -- I'm not trying to revisit the Court's

Oa9FbruC

1    order, but I'm reacting to an aspect of it in the context of

2    looking ahead for the remainder of the case and where we go

3    from here.

4          Judge, if the Court were inclined to order an

5    effective date earlier, and I submit, all of this, I think,

6    really should be briefed fully, and we can talk about where we

7    go from here procedurally for the remainder of the '94 Trust

8    shares, if you'd like, I can get in at a high level to how some

9    of these tax offset defenses or these considerations, what

10    they're based on.

11          Would you like me to walk through that?

12          THE COURT:  Maybe at a very high level, but I do think

13    briefing is where we're going here.

14          MR. FREI:  Fair, Judge.

15          I'll be at the higher level in my thought, and I also

16    just to explain why this is high level.  I'm not a tax lawyer.

17    I don't think anyone in this room is a tax lawyer.  There have

18    been some discussions where the parties have talked about how

19    it may be beneficial to get representative tax lawyers talking

20    about some of these issues.

21          The first defense, your Honor, or the first offset

22    really talks about the period prior to May 1, 2024, and that

23    is, only if the Court were to order a retroactive effective

24    date -- and again, if it's not, if it's after the date of the

25    order, I think these issues largely go by the wayside -- if

1    that happened, it has the potential to create a tax problem for

2    the trust, warranting the offset.

3           And your Honor, it has to do -- again, high level --

4    with the fact that during the litigation, the company issued

5    K1s, and those K1s were issued to the trust.  And because of

6    that, the trustees had to file tax returns reporting the

7    allocation of the company's income, and because they were

8    charitable trusts, the charitable deduction applies.

9           So I'll just say, I'll stop there unless you have any

10   other thoughts, but that reality really is kind of the bedrock

11   for the concerns, and I think these concerns are addressed more

12   accurately and better in briefing.  So unless you have any

13   specific questions about that, I'll stop there.  I can continue

14   to give you an overview because I have them, but --

15          THE COURT:  I'll certainly ask Mr. Swartz this as

16   well, but in terms of the timing of the briefing, do you have a

17   view as to whether it would make sense to have that briefing

18   after the status of the 2010 Barbara shares is resolved?

19          MR. FREI:  I have to think about that, Judge.

20          Can I confer with my colleague?

21          THE COURT:  Of course.

22          MR. FREI:  Thanks.  One moment.

23          (Counsel conferred)

24          MR. FREI:  Judge, we do.

25          Given, I think what needs to happen to have informed

Oa9FbruC

1    discussions about this, having more time, I think, would be

2    beneficial to the parties.

3            THE COURT:  I'm sorry, go ahead.

4            MR. FREI:  Judge, I think it was -- that's about it,

5    unless there's any other specific questions you have.

6            THE COURT:  No.  Maybe I'll come back to you after

7    hearing from Mr. Swartz, but let me hear from Mr. Swartz.

8            MR. FREI:  Thank you, your Honor.

9            MR. SWARTZ:  Your Honor, I'm going to start where you

10   just left off.

11           And just to explain what's going on, because I

12   actually don't think it's in their best interest to wait.  And

13   this ties into the prejudice on the -- this is the second point

14   as to their request for leave to amend, and let me just get it

15   so I have it handy.

16           So just to set the table, as set forth in Second

17   Circuit precedent that, first of all, they've not shown any

18   reason for the delay.  They have not articulated good cause.

19   They haven't stated good cause, and the Second Circuit

20   authority is clear that the longer the delay, the less

21   prejudice we need to show.

22           With respect to the second issue, that has to do with

23   the audit of the estate, and nobody's -- we're not asking for

24   retroactive transfer of the shares, so whatever complications

25   are involved in that, I don't know, but I am here to talk about

Oa9FbruC

1   the transfer of shares at the time of judgment.

2          In terms of prejudice, Mr. Bischoff was not given

3   notice of the audit that was going to close the estate.  That

4   happened, apparently, May 1, 2024.  Why the estate, why the

5   trustees allowed the proceeding to close before this particular

6   liability was wound up is not clear to us, so I'll just leave

7   it at that.

8          If we had known about it, we would have made

9   arguments.  We could have intervened.  We would have taken

10  discovery.  But now we're in a situation where, as of May 1,

11  2024, they have tax liability every single day that income is

12  earned at Boar's Head, and at the end of this proceeding, they

13  want to hand us the bill.

14         Now, if they transferred the shares to us promptly and

15  we were the owner, the tax liability would be ours and we're

16  fine with that.  But to have a situation on the May 1 issue on

17  the second request for leave to amend where they generate a

18  substantial tax liability and ask for us to pay for it, that's

19  not mitigation.  It doesn't make any sense.  It's not fair, and

20  it's prejudicial.

21         I don't think leave should be granted because it's

22  prejudicial for us to have to pay a bill for something that we

23  have no discovery on.  We might have prevented -- we certainly

24  would have suggested that they keep open the estate and not

25  close it, pending the resolution to this whole thing.

Oa9FbruC

1          I've talked to my tax counsel.  We're not -- and we

2     can be brief this, I suppose, but we're not -- it's not clear

3     to us why that was closed, given that it was -- at some point

4     in time, these shares were going to be transferred to somebody

5     and that this issue was inevitably going to arise.

6          Likewakes, with respect to Boar's Head, there's a

7     leave to amend with respect to hypothetical issue with respect

8     to taxes.  We don't know what this is.  If we had learned about

9     it before, we would have taken discovery.  I'm not even sure

10    there is an issue, and it's not articulated.

11         So two things, we don't -- we think that we would be

12    severely prejudiced with respect to amending to allow these

13    last two claims in particular -- I'll get to the first one,

14    which your Honor started with -- but I really do want to

15    emphasize on the record that damages are accruing daily that

16    they're going to try to give us the bill for, and so I think

17    that it should be incumbent upon them to get this resolved as

18    quickly as possible in some manner or another so that we don't

19    have an IRS issue.

20         I think they can try to seek a refund or private

21    letter ruling.  There might be remedies for them, but to wait

22    until after the 2010 Trust issue is resolved and then start the

23    briefing and then hand us the bill, I submit that is not

24    appropriate, and I would them to reconsider that.

25         With respect to the first issue that your Honor

Oa9FbruC

1    raised, the 9 percent issue on the purchase price they raised

2    on the eve of the summary judgment decision, we absolutely were

3    prejudiced.  You didn't shoot us down when we raised in a

4    conference call, when we raised our request.  We filed a letter

5    seeking motion for judgment on the pleadings.  You said, the

6    Court's busy.  If it's not going to be inefficient for you, I'd

7    appreciate if you wait for summary judgment.  We obliged.

8          9 percent on about a $90 million purchase price is

9    about $8 million a year.  There's no reason we should be paying

10   that, so we submit there is prejudice for that.  We can brief

11   that issue, but we, particularly given the long delay, the time

12   that they raised it, and the prejudice, we think leave to amend

13   should be denied.

14         THE COURT:  Is this even an affirmative defense

15   though?

16         MR. SWARTZ:  I don't -- I don't know what it -- well,

17   I don't know what it is, exactly.

18         With respect to the tax liability in particular, I

19   don't know that there's a claim.  I don't know what the claim

20   is.  I have no idea, and they haven't asserted -- I think they

21   would have to assert an affirmative defense with respect to

22   charging us interest or something.  I don't know.  I don't know

23   what it is, frankly, your Honor.

24         It wasn't clear to me, but it's something that wasn't

25   raised that, if we had known about it, we would have pressed

Oa9FbruC

| | |
|---|---|
| 1 | harder and quicker, and I think you might have heard us more |
| 2 | quickly based on judgment on the pleadings.  And yes, it was in |
| 3 | dispute for years, but it was also in that the contract was |
| 4 | unambiguous on its face. |
| 5 | THE COURT:  Aside from the time that has gone by, was |
| 6 | there specific discovery you would have taken? |
| 7 | MR. SWARTZ:  On the amendment issue? |
| 8 | THE COURT:  On any of these affirmative defenses. |
| 9 | MR. SWARTZ:  Absolutely on the amendment issue. |
| 10 | We would -- we would have -- first of all, there's -- |
| 11 | some of the cases talk to changes in strategy with respect to |
| 12 | the 9 percent interest on the purchase price, the strategy |
| 13 | would have been that action or just to go a lot quicker.  With |
| 14 | respect to the tax issue, we would have suggested that they do |
| 15 | things differently.  I don't know if they could have put the |
| 16 | shares in the registry of the Court, but they could have done |
| 17 | other sorts of things to mitigate. |
| 18 | We were deprived of any input, and now the |
| 19 | proceeding's closed, and we're told, the bill is yours.  And so |
| 20 | there is a strategic component to it that we might have |
| 21 | influenced, and there's also discovery in terms of what |
| 22 | happened and why did this happen.  It's going to open up a |
| 23 | wheel can of worms in terms of things that we need to look |
| 24 | into. |
| 25 | But I submit that if they act to transfer the shares |

Oa9FbruC

1   promptly, at least it will cut off the damage.  We can work out

2   some of the logistics.  But I just don't want to be in a

3   situation where in six months, they say, yell, this much income

4   was owed; you essentially have to pay double tax.

5            Thank you your Honor.

6            THE COURT:  Mr. Reed, trying to have any view on this

7   issue?

8            MR. REED:  There were a lot of issues.

9            THE COURT:  I'm sorry.  Just more specifically, maybe

10   more generally, the leave to amend.

11            MR. REED:  No, your Honor.

12            We don't have a position on that.

13            THE COURT:  Okay.  Mr. Frei, is it still your request

14   that briefing be after resolution of the outstanding Barbara

15   shares?

16            MR. FREI:  Your Honor, if the Court believes there

17   would be a logical reason or a fairer process to do it

18   simultaneously on a parallel path, we certainly can.

19            I do think our preference would be do it later,

20   because there are discussions that need to be had, not just

21   between trustees and Eric, but likely some discussions,

22   potentially, with the company what all parties would

23   participate in, because the company's future actions may impact

24   what we're talking about here.  So it would be our preference

25   to do it then, but if that gives the Court any concern, we

Oa9FbruC

1   could do it on a parallel path or two weeks after the briefing

2   is completed, for example, on -- not too far out on the first

3   set of briefing for the 2010 issues.

4           THE COURT:  Mr. Swartz.

5           MR. GOLDSTEIN:  I just wanted to at least note,

6   because I know my client would want me to note that in addition

7   to the mitigation issue I've raised, there's also governance

8   issues associated with having more of an interest in the

9   company that's being delayed substantially if this is put off

10  too long, so that is another factor we think that requires --

11  that should militate going more quickly on this.

12          THE COURT:  Mr. Frei, why don't I give you some time

13  to have those discussions and get a status letter back to me as

14  to what your proposal is and what Mr. Swartz's proposal is as

15  to the timing of the briefing.

16          How long before you could get back to me on that?

17          MR. FREI:  I think, your Honor, in terms of a status

18  report, as to the time of briefing after some initial

19  discussions, I think that could be done in the relative near

20  term.  I'm be happy to confer with Mr. Swartz.  Perhaps two

21  weeks from now.

22          THE COURT:  Okay.  Why don't we do that.  Why don't

23  you send me a status letter in two weeks.  That will bring us

24  to the 23rd of October.

25          If there's agreement, great.  If not, let me know what

Oa9FbruC

1    your views are, because I want to mull it over bit myself as to

2    what makes sense.

3            MR. FREI:  And your Honor, just to -- I'm sorry to

4    interrupt.

5            Just to be clear, our views as to the timing of

6    briefing on our request for leave to amend to add these -- to

7    address these issues.

8            THE COURT:  I do think briefing would be beneficial on

9    your request, and it's mainly the timing, whether we should go

10   forwards with the briefing now or if it makes sense to hold off

11   because there seem to be reasons to go in both directions.

12           MR. FREI:  Understood.  Thank you.

13           THE COURT:  Is there anything else we should take up

14   then this afternoon?

15           Mr. Reed, anything from your client?

16           MR. REED:  No.  Thank you, your Honor.

17           THE COURT:  Mr. Swartz.

18           MR. SWARTZ:  I did want to inquire with your Honor

19   about whether you wanted to address the jury trial issue.  I

20   don't know that it's urgent, but I know it was something that

21   came up and --

22           THE COURT:  Do you have a view as to whether it be a

23   jury trial then?  Your view is, it would not be?

24           MR. SWARTZ:  Our view is that it would not be.

25           We can confer with Mr. Reed further, or we can brief

Oa9FbruC

1   the issue, or we can wait, or we can do it immediately.

2          THE COURT:  I don't think we need to do it

3   immediately, but I was assuming there was going to be a jury

4   trial, but you pointed out there may not have been a jury

5   demand, and I've not doublechecked that myself.

6          Mr. Reed, do you have a view?

7          MR. REED:  Your Honor, let me confer with Mr. Swartz

8   on it, and we'll report back if and when it's necessary.

9          THE COURT:  Sounds good.

10         MR. FREI:  Your Honor, if I may, just to the extent

11  there's a question about what the process and procedure should

12  be, including whether it would be a bench trial or a jury trial

13  or a trial at all as to the resolution of any issues remaining

14  s to the '94 Trust, trustees did not request a jury, and so, to

15  the extent -- separate from the 2010 issues, to the extent your

16  Honor is wondering whether to set a trial on those issues --

17  and perhaps that's a determination to be made for another

18  day -- I think it is our position -- and we had an initial

19  conversation with opposing counsel and they expressed some

20  openness to this, that since it would be a bench trial, it

21  could effectively be a hearing following full briefing.

22  Obviously, six in one hand, half dozen in another, but,

23  obviously, up to the --

24         THE COURT:  Great.  Thank you.

25         Okay.  Well, thank you all.

Oa9FbruC

1          I look forward to getting the additional briefing in

2     about 45 days or so, and I hope everyone stays well.

3          Thank you.

4          MR. FREI:   Thank you, your Honor.

5          (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25