UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                              :

FRANK BRUNCKHORST III, individually and in his : 
capacity as trustee of THE FRANK BRUNCKHORST III : 
2001 TRUST,                             :
                              :

                  Plaintiff,             :
                              :

                -v-                 :         21 Civ. 4362 (JPC)
                              :

ERIC BISCHOFF *et al.*,                 :         OPINION AND
                              :            ORDER

                  Defendants.         :
                              :
---------------------------------------------------------------X
                              :

ERIC BISCHOFF,                       :
                              :

                Counterclaim-Plaintiff,    :
                              :

                -v-                 :
                              :

FRANK BRUNCKHORST III, individually and in his : 
capacity as trustee of THE FRANK BRUNCKHORST III : 
2001 TRUST,                             :
                              :

                Counterclaim-Defendant.   :
                              :
---------------------------------------------------------------X
                              :

ERIC BISCHOFF,                       :
                Crossclaim-Plaintiff,      :

                -v-                 :
                              :

SUSAN STRAVITZ KEMP, in her capacity as co-trustee : 
of THE BARBARA BRUNCKHORST 1994 TRUST and : 
executrix of THE ESTATE OF BARBARA : 
BRUNCKHORST, *et al.*,                  :
                              :

                Crossclaim-Defendants.   :
                              :
---------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendants and Crossclaim-Defendants Susan Stravitz Kemp—in her capacities as co-trustee of the Barbara Brunckhorst 1994 Trust ("Barbara 1994 Trust") and as executrix of the estate of the late Barbara Brunckhorst ("Barbara")—and Richard Todd Stravitz—in his capacities as co-trustee of the Barbara 1994 Trust, executor of Barbara's estate, and trustee of the Barbara Brunckhorst 2010 Trust ("Barbara 2010 Trust") (collectively with Kemp, the "Trustees")—move to amend their operative answer to Defendant, Counterclaim-Plaintiff, and Crossclaim-Plaintiff Eric Bischoff's ("Eric") Third Amended Counterclaims and Crossclaims, Dkt. 150 ("TACC"). Dkt. 509. The Trustees seek to add three affirmative defenses to their pleading. For the reasons that follow, the Court grants the Trustees' motion in part and denies it in part. The Court will allow the Trustees to plead as their fifth affirmative defense an equitable offset defense premised on a specific performance theory, but concludes that its two proposed tax offset affirmative defenses are futile.

## I. Background

As the Court explained in its Opinion and Order of August 29, 2024, this action primarily "aim[s] to identify—after several years of uncertainty—the proper recipient of" shares held by Barbara's trusts prior to her death (the "Barbara Trust Shares"). Dkt. 467 ("Opinion") at 2; *see Brunckhorst v. Bischoff*, No. 21 Civ. 4362 (JPC), 2024 WL 4277788, at *1 (S.D.N.Y. Sept. 24, 2024). Plaintiff and Counterclaim-Defendant Frank Brunckhorst III ("Frank") filed his Complaint on May 14, 2021, asserting a single claim against Eric and the Trustees for a declaratory judgment that Frank is the appropriate recipient of the contested shares. Dkt. 1. The Trustees filed their Answer to the Complaint on October 29, 2021. Dkt. 84. Eric filed his original Answer to the

Complaint on July 30, 2021, and appended a counterclaim against Frank and a crossclaim against the Trustees.  Dkt. 49.

After several amendments, Eric filed his operative Third Amended Counterclaims and Crossclaims on May 23, 2022, alleging, *inter alia*, that the Trustees breached the Boar's Head Shareholder's Agreement by not selling the Barbara Trust Shares to him.  *See* TACC ¶ 164; Opinion at 5; *see generally* Dkt. 277-1 ("Shareholder's Agreement").  The Trustees filed their Answer to that pleading on June 6, 2022.  Dkt. 161.  Fact discovery closed on January 30, 2023, *see* Dkt. 212, and expert discovery closed on June 16, 2023, *see* Dkt. 248.

On July 19, 2024, the Trustees filed a pre-motion letter previewing their anticipated motion for leave to amend their Answer to Eric's Third Amended Counterclaims and Crossclaims.  *See* Dkt. 453.  The Court issued a decision on the parties' cross-motions for summary judgment on August 29, 2024, holding, *inter alia*, that Eric was the proper recipient of the shares held by the Barbara 1994 Trust.  Opinion at 41.[1]  The Court's Opinion and Order allowed Frank and the Trustees to make a limited amendment to their Answers to Eric's operative pleading, *see id.* at 54, and the Trustees filed their Amended Answer on September 5, 2024, *see* Dkt. 473.

The Court held a conference following its summary judgment decision, *see* Dkt. 499, after which it approved the Trustees' and Eric's jointly proposed briefing schedule for the Trustees' motion to further amend their Amended Answer, Dkt. 504; *see* Dkt. 503.  The Trustees filed their motion on November 13, 2024, Dkts. 509, 510 ("Goldstein Decl."), 512 ("Motion"), Eric opposed the motion on December 4, 2024, Dkt. 532, 533 ("Opposition"), and the Trustees replied on

---

[1] The Court's decision concluded that no party was entitled to summary judgment as to a smaller number of shares held by the Barbara 2010 Trust.  Opinion at 41.  Frank and Todd, on the one hand, and Eric, on the other, have since moved for summary judgment seeking a ruling on the disposition of the Barbara 2010 Trust shares.  Dkts. 516, 518.  Those motions were resolved in a separate Opinion and Order also issued today.

December 11, 2024, Dkt. 540 ("Reply").  The Court held oral argument on the Trustees' motion

on September 8, 2025.  *See* Dkt. 573 ("9/8/25 Oral Arg. Tr.").  On September 11, 2025, the Court

ordered supplemental briefing to address how N.Y. C.P.L.R. Section 5001 should be applied to

the first of the Trustees' three proposed affirmative defenses.  Dkt. 569.  The parties submitted

their supplemental briefs on September 18, 2025.  *See* Dkts. 570 ("Trustees Suppl. Br."), 571

("Eric Suppl. Br.").

## II.  Legal Standard

The parties agree that Federal Rule of Civil Procedure 15 governs the instant motion.  *See*

Motion at 10-11; Opposition at 3.  "Under Rule 15(a)(1), a party may amend its pleading without

leave of court 'within (A) 21 days of serving it, or (B) if the pleading is one to which a responsive

pleading is required, 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier.'"  *Wells Fargo Bank, N.A. v. U.S. Life*

*Ins. Co. in City of New York*, No. 22 Civ. 8606 (JPC), 2023 WL 3091676, at *2 (S.D.N.Y. Apr.

26, 2023) (quoting Fed. R. Civ. P. 15(a)(1)).  Amendment after these deadlines requires either the

opposing party's written consent or leave of court, and a district court must "freely give leave

when justice so requires."  Fed. R. Civ. P. 15(a)(2).

"Under this liberal standard, a motion to amend is generally denied only if the moving

party has unduly delayed or acted in bad faith or with a dilatory motive, the opposing party will be

unfairly prejudiced if leave is granted, the proposed amendment is futile, or . . . prior amendments

have repeatedly failed to cure pleading deficiencies."  *GGC Int'l Ltd. v. Ver*, No. 24 Civ. 1533

(JPC), 2025 WL 81319, at *2 (S.D.N.Y. Jan. 13, 2025) (citing *Burch v. Pioneer Credit Recovery,*

*Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).  "An affirmative defense is considered futile where it is

either clearly meritless based on the well-pleaded factual allegations contained within the

pleadings or would have no impact on the outcome of the action itself." *Jimenez v. Rutgers Cas. Ins. Co.*, 775 F. Supp. 3d 695, 699 (E.D.N.Y. 2025) (citation modified); *see also Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 793 (PAC) (JLC), 2022 WL 782751, at \*3 (S.D.N.Y. Mar. 15, 2022) (explaining that an affirmative defense is futile when it "lacks a sound basis in law" (internal quotation marks omitted)).

### III.  Discussion

The Trustees seek to add three affirmative defenses to their Amended Answer.  *See* Goldstein Decl., Exh. 6 (redline of proposed second amended answer) ("Proposed Second Am. Answer") at 50-52.  The Trustees explain that these proposed affirmative defenses seek offsets flowing from the sale of the Barbara Trust Shares to Eric.  Motion at 13; *see Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009) ("[I]rrespective of whether a setoff claim is properly characterized as an affirmative defense, or a compulsory or permissive counterclaim, it must be set forth in the pleadings to provide a basis for relief[.]" (citation modified)); *see also id.* at 42 n.8 (observing that "New York's procedural law appears to be similar" (collecting cases)).  Their first proposed defense, which would be their fifth affirmative defense, essentially seeks an equitable offset (the "Equitable Offset Defense"), while the other two, which would be their sixth and seventh affirmative defenses, seek a tax offset (the "Tax Offset Defenses").  The Court addresses each in turn and concludes that the Trustees may add the Equitable Offset Defense as premised on a specific performance theory, but not the Tax Offset Defenses, which are futile.

### A.    Equitable Offset Defense

In their proposed fifth defense, the Trustees ask the Court to apply an equitable offset to prevent Eric from receiving a windfall when the Trustees sell him shares from the Barbara 1994 Trust and, if applicable, the Barbara 2010 Trust.  *See supra* at 3 & n.1.  The contours of the Equitable Offset Defense are admittedly somewhat challenging to identify, but the Court reads the

proposed language and accompanying briefs as relying on two offset theories.  *See* Proposed Second Am. Answer at 50; Trustees Suppl. Br. at 1.  The first theory seeks an offset of the damages and statutory interest that Eric demands based on the Boar's Head distributions made on account of the Barbara Trust Shares since August 18, 2021.  *See* TACC ¶ 167; Proposed Second Am. Answer at 50 ("If [Eric] is awarded damages, Trustees are entitled to a reduction of those damages under the doctrine of equitable offset.").  The second theory seeks an offset in the scenario that the Court orders specific performance of the Shareholder's Agreement by directing the Trustees to sell Eric the Barbara Trust Shares in exchange for the purchase price as provided in the Shareholder's Agreement.  *See* TACC ¶ 166; Proposed Second Am. Answer at 50 ("Trustees should receive an equitable offset to account for the benefit [Eric] gained by not paying Trustees the portion of the purchase price for any or all of the Subject Shares . . . .").

### 1.  The Equitable Offset Defense Is Not Futile.

After untangling the Trustees' two offset theories, their proposed amendment is not futile to the extent it seeks to have the Court consider an offset based on the time value of money in the event it orders specific performance of the Shareholder's Agreement—the second offset theory.

### i.  The Damages Theory

The Trustees' theory that is predicated on Eric's damages award quickly runs into a dead end.  Under New York law, Eric would recover statutory prejudgment interest on top of his damages award.[2]  *See* Opposition at 19; Motion at 15; *see also* Proposed Second Am. Answer at 50; N.Y. C.P.L.R. §§ 5001-5004.  In the Trustees' view, if Eric gets statutory interest on the damages, they should "receive the same nine percent (9%) statutory interest on the payments they

---

[2] New York law governs the Shareholder's Agreement.  Shareholder's Agreement ¶ 18; Opinion at 8.  Accordingly, both parties apply New York law when analyzing whether an award of prejudgment interest is proper.  *See, e.g.*, Motion at 14-15; Opposition at 16, 19.

would have received from [Eric] during this period." Proposed Second Am. Answer at 50; *see* Motion at 15. New York contract law, however, does not allow breaching parties to offset the mandatory statutory prejudgment interest that they owe.

Section 5001 of New York's Civil Practice Law and Rules ("C.P.L.R.") mandates prejudgment interest "upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property," except that in actions "of an equitable nature," "interest and the rate and date from which it shall be computed shall be in the court's discretion." N.Y. C.P.L.R. § 5001(a). Prejudgment interest, therefore, is mandatory in damages actions based on breach of contract and interference with property. *See Mfr.'s & Traders Tr. Co. v. Reliance Ins. Co.*, 870 N.E.2d 124, 127 (N.Y. 2007); *see also Bank of N.Y. Tr. Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 282 (2d Cir. 2013). For damages claims, then, "CPLR 5001(a) authorizes interest 'upon a sum awarded'—implying that the interest must be paid by the party *against whom* the sum was awarded." *Mfr.'s & Traders Tr. Co.*, 870 N.E.2d at 127 (concluding that an award of prejudgment interest was improper in an interpleader action, because without a "sum awarded" against any party there was "no predicate for an award of interest").[3] This is because prejudgment interest "'indemnif[ies] successful plaintiffs for the nonpayment of what is due to them.'" *Id.* (citation modified) (quoting *Love v. State of New York*, 583 N.E.2d 1296, 1298 (N.Y. 1991)).

Courts do not have authority to deny prejudgment interest on an award of damages, *see Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000), so this Court cannot modify the application of C.P.L.R. Section 5001(a) to Eric's damages. Neither are the Trustees entitled

---

[3] The Trustees seem to acknowledge this point when arguing that Eric has not established a damages claim. *See* Motion at 7 ("Without any cognizable damages, New York's nine percent (9%) statutory interest cannot be imposed.").

to any damages, or "sum awarded," of their own for which they can get statutory prejudgment interest. Though the Trustees will receive cash in the form of the purchase price Eric will pay for the shares, those funds are a consequence of the injunctive relief Eric will receive for the Trustees' breach. Without a sum awarded against Eric, the Trustees have no grounds to claim statutory prejudgment interest. *See Mfr.'s & Traders Tr. Co.*, 870 N.E.2d at 127; Eric Suppl. Br. at 3. This aspect of the Trustees' Equitable Offset Defense, then, is futile.

### ii.    The Specific Performance Theory

The specific performance remedy is the proper vehicle for the Trustees' Equitable Offset Defense. This defense would ensure that the Trustees are responsible only for Eric's net loss. *See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 727 F. Supp. 2d 256, 289, 291 (S.D.N.Y. 2010) ("[I]f a victim derives a benefit from the breaching party's breach of contract, the breaching party only is responsible for the victim's net loss."). Eric seeks an order from this Court directing the Trustees to sell him the Barbara Trust Shares, pursuant to the terms of the Shareholder's Agreement. TACC ¶ 166. Under the Shareholder's Agreement, Eric would "pay the principal of the purchase price in 'ten (10) equal annual installments,'" plus "a payment of interest on the unpaid balance" on the principal. Opposition at 8 (quoting Shareholder's Agreement ¶ 7(a)(ii)). The first installment under those terms would have been due, according to Eric, in 2022, one year after the contractual deadline to sell the shares (the "Sale Date").[4] *Id.* at 8-9. The Trustees now

---

[4] The parties dispute the effective Sale Date. *See* Motion at 11; Opposition at 18-19. Eric argues the Sale Date was either on September 30, 2021, Opposition at 22, or March 8, 2021, Opposition at 21 n.18. The Trustees—who appear to have changed their position for purposes of this Motion, *compare* Motion at 11, *with* Dkt. 161 ¶ 89 (Answer to TACC), Dkt. 415 ¶ 129 (Counterstatement to Eric's Local Rule 56.1 Statement), *and* TACC ¶ 89—contend that the Sale Date is in the future, whenever "the actual stock certificates are delivered to Eric and he delivers a promissory note to Trustees as set forth in Paragraph 7 of the Shareholder's Agreement." Motion at 11. They seek the equitable offset for the scenario in which the Court establishes the Sale Date

seek the equitable offset "to account for the benefit [Eric] gained by not paying Trustees the portion of the purchase price for any or all of the Subject Shares that would be past-due pursuant to the retroactive sale date." Proposed Second Am. Answer at 50. Their proposed affirmative defense would allow them to recover the real value of the purchase price—accounting for the time value of money—as it would have been paid to them beginning one year after the Sale Date, had the Shareholder's Agreement been fully performed.

Barring such an equitable offset risks producing a windfall for Eric that clashes with established contract-law principles. Under New York contract law, "[a]n 'injured party should not recover more from the breach than he would have gained had the contract been fully performed.'" *Aristocrat Leisure*, 727 F. Supp. 2d at 286-87 (quoting *Freund v. Wash. Square Press, Inc.*, 314 N.E.2d 419, 421 (N.Y. 1974)); *see id.* at 290 (referring to this as a "bedrock principle"). Moreover, in the area of general contract damages, "[f]ederal courts in this Circuit and New York state courts consistently have held that damages otherwise recoverable for breach of contract must be reduced by any cost savings realized by an injured party as a result of another party's breach." *Id.* at 287 (collecting cases). Put differently, this principle "is consistent with the fundamental view that 'damages are meant to put a plaintiff in the same economic position he would otherwise be in but for a defendant's breach of contract.'" *Id.* (quoting *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 392 (2d Cir. 2006)). Thus, "[i]n a typical breach of contract case, a non-breaching party is entitled to the payment it is due under the terms of the contract, less the payment it has already

at a point in the past. *Id.* at 13 ("If the Court orders a retroactive Sale Date—backdating the sale to September 30, 2021, or some other date before the actual transfer of the Subject Shares— Trustees are entitled to equitable offsets flowing from the sale.") As the parties recognize, identifying the Sale Date will be an element of the Court's final judgment. *See id.* at 11 n.8; Opposition at 18. Accordingly, the Court will not pass on this issue now since it is impertinent to the disposition of the pending motion. For purposes of this Opinion and Order, the Court assumes without deciding that the Sale Date has passed.

received and the cost to it to perform the remainder of the contract." *Arch Ins. Co.*, 584 F.3d at 40-41.

While these principles derive from contract actions seeking damages, the Court is unaware of any reason why they should not apply when courts fashion an equitable remedy such as specific performance. Indeed, the Trustees' position is consistent with the underlying equitable maxims relied on by the New York Court of Appeals in its 1868 decision in *Worrall v. Munn*, 38 N.Y. 137 (1868), and that case's progeny. Though cases about real property transactions, they are premised on the "general" principle that "the court of equity will, so far as possible, place the parties in the same situation as they would have been if the contract had been performed according to its terms." *Id.* at 142. The Court further explains below why Eric's real-property distinction, *see* Opposition at 16-17, fails to persuade.

In support of the legal viability of their proffered defense, the Trustees appeal to *In re 114 Tenth Avenue Association, Inc.* ("*114 Tenth Avenue*"), 427 B.R. 283, 299-300 (Bankr. S.D.N.Y. 2010). *See* Motion at 15. *114 Tenth Avenue* concerned claims objections filed by a Chapter 11 debtor, 114 Tenth Avenue Associates, whose sole asset was land and a mixed-use building located in New York City. *114 Tenth Avenue*, 427 B.R. at 286. This asset was purchased by Carlton Capital Corp. ("Carlton") for $2 million at an auction sale following a tax lien foreclosure. *Id.* at 287-88. 114 Tenth Avenue Associates secured a stay of the foreclosure sale pending appeal. *Id.* at 288-89. When those appeals were rejected, the foreclosure sale closed and Carlton received title to the property and paid the balance of the purchase price over a downpayment. *Id.* at 289. 114 Tenth Avenue Associates commenced an action to recover the surplus sale funds, at which time Carlton filed a proof of claim against it seeking damages for 114 Tenth Avenue Associates' possession of the property during the stay period. *Id.*

The bankruptcy court in *114 Tenth Avenue* concluded that Carlton was entitled to damages under New York law, measured as "the rent that [114 Tenth Avenue Associates] should have collected in accordance with the existing commercial and residential leases, less the costs of maintaining the [p]roperty, subject to any claim that [114 Tenth Avenue Associates'] management constituted waste or negligent mismanagement." *Id.* at 296. But the court also recognized that "there must be an offset for the benefit Carlton gained by not paying the full purchase price" while the foreclosure sale was stayed. *Id.* at 299. Relying on a "longstanding equitable principle that a vendee may not claim both the profits related to the ownership of property (such as rents) and also have the use of the purchase money price," the court observed that "[d]uring the stay, Carlton enjoyed use of the $2.0 million purchase price, less a $210,000 down payment. Any recovery for its losses sustained during that time should be offset by interest on the purchase price." *Id.* at 299-300 (citing, *inter alia*, *Worrall*, 38 N.Y. 137). The court, using the nine percent interest rate set forth in Section 5004 of the New York C.P.L.R., charged Carlton approximately $613,500 in this offset. *Id.* at 300.

Eric raises two challenges to the Trustees' reliance on *114 Tenth Avenue* as the basis for an offset defense. First, Eric argues that the court in *114 Tenth Avenue* relied on a line of New York cases which imposed an offset where the purchase price for a conveyance of real property had not been paid in a timely fashion. Opposition at 16. Namely, *114 Tenth Avenue* cited *Worrall*, where, as previewed above, the New York Court of Appeals held—in an order directing specific performance of a contract calling for the conveyance of real property—that the "general rule" is that

> the court of equity will, so far as possible, place the parties in the same situation as they would have been if the contract had been performed according to its terms; and, to that end, the vendor will be regarded as trustee of the land for the benefit of the purchaser, and liable to account to him for the rents and profits; and the

purchaser will be treated as trustee of the purchase-money, if not paid, and will be charged with interest thereon.

38 N.Y. at 142.  New York courts have applied this general principle in several cases concerning the transfer of real property.  *See, e.g.*, *Bostwick v. Beach*, 12 N.E. 32, 33-34 (N.Y. 1887); *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 601 N.Y.S.2d 334, 338 (2d Dep't 1993) ("[T]he seller, as trustee of the real property for the benefit of the purchaser, is liable for rents and profits derived from the property during the delay, and the purchaser, as trustee of the purchase money, if not paid, for the benefit of the seller, is liable for interest accruing on the purchase money.").

Yet, Eric argues, this rule "has never been applied outside of the real property context," and "of the many decisions ordering one party to transfer shares of stock to another party, Eric has not been able to find a single decision in which the court even discussed applying statutory interest to the purchase price."  Opposition at 16 (emphases omitted).  Pointing to a purported "reluctance of New York courts to extend real property principles to disputes involving personal property," Eric asks the Court not to extend the offset doctrine here.  Opposition at 16 & n.13 (citing *523-527 W. 143rd St. Hous. Dev. Fund Corp. v. U.S. Bank N.A.*, No. 155763/2014, 2015 WL 1549054 (N.Y. Sup. Ct. Apr. 7, 2015); *In re State Tax Comm'n v. Shor*, 371 N.E.2d 523, 526 (N.Y. 1977)).

This argument has merit, but it ultimately does not persuade.  True, the Court is not aware of a case ordering an offset as part of specific performance of a buy-sell provision in a shareholder agreement.  Rather, cases tend to direct that the sale simply be made under the terms of the pertinent contract.  *See, e.g.*, *Johnsen v. ACP Distrib., Inc.*, 814 N.Y.S.2d 142, 147 (1st Dep't 2006) (directing the sale of shares "in accordance with the applicable terms of, and at the price provided in, the stockholders agreement"); *Doniger v. Rye Psychiatric Hosp. Ctr., Inc.*, 505 N.Y.S.2d 920, 924 (2d Dep't 1986) (affirming specific performance of a share transfer with a payment price made pursuant to calculations set forth in the shareholders' agreement); *Neville,*

*Rodie & Shaw, Inc. v. LeGard*, No. 3:23 Civ. 266 (VAB), 2024 WL 656517, at *8 (D. Conn. Feb. 16, 2024) (ordering, pursuant to the terms of an agreement governed by New York law, specific performance of a sale of a decedent's shares at book value); *Est. of Collins v. Tabs Motors of Valley Stream Corp.*, 156 N.Y.S.3d 711 (Table) (N.Y. Sup. Ct. Nov. 23, 2021) (ordering specific performance of a shareholder's agreement's buy-sell provision). However, Eric does not suggest that a purchase-price offset argument was made in those cases, nor is there anything in them (or any other case of which the Court is aware) indicating that a purchase-price offset is disfavored. And the "longstanding equitable principle" underlying *114 Tenth Avenue* supports the Trustees' proposed amendment. 427 B.R. at 299. The bankruptcy court reasoned that it would be inequitable for the court to allow Carlton to enjoy both the rent profits—recovered as damages—and the use of the purchase money. *Id.* The same principle guides this Court to allow a defense that would prevent Eric from enjoying the full use of the purchase-price funds since the Sale Date and also recovering damages for the value of the distributions.

Eric's second point is that the seller of the property at issue in *114 Tenth Avenue* was not at fault for the delay. Thus, Eric argues, "*114 Tenth Avenue* stands for the narrow proposition that a nonbreaching seller of real property may recover statutory interest on the purchase price." Opposition at 15. It "does not stand for the proposition that a *breaching party* is generally entitled to statutory interest." *Id.* But the bankruptcy court in *114 Tenth Avenue* did not rule that option out. Eric overlooks that, in concluding that Carlton would need to pay interest on the purchase price, the court affirmatively cited *Cobble Hill Nursing Home* for the proposition that "*even where a seller caused the delay in the sale*, a purchaser, as trustee holding the purchase money, was liable for interest accruing on the purchase price." *114 Tenth Avenue*, 427 B.R. at 300 (emphasis added).

If anything, the bankruptcy court's understanding of New York's "longstanding equitable principle" supports the viability of the Trustees' equitable offset defense.

Eric additionally contends that "interest awards in New York are purely a creature of statute," and neither C.P.L.R. Section 5001 nor any other statute authorizes adding interest to the purchase price. Eric Suppl. Br. at 1 (quoting *Mfr.'s & Traders Tr. Co.*, 870 N.E.2d at 126). The Court agrees that "[t]he right to interest is purely statutory and in derogation of the common law." *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 851 (2d Cir. 1992) (citation omitted); *see Bello v. Roswell Park Cancer Inst.*, 833 N.E.2d 252, 253 (N.Y. 2005) (describing statutes' replacement of common-law prejudgment interest). But that is immaterial to the equitable offset the Trustees seek. The offset is not prejudgment interest on a "sum awarded" that needs statutory authorization. It is a calculation that considers time value of money in pursuit of the "bedrock principle" that "an injured party should not recover more from the breach than he would have gained had the contract been fully performed." *Aristocrat Leisure*, 727 F. Supp. 2d at 286, 290 (citation modified); *see also Cobble Hill Nursing Home*, 601 N.Y.S.2d at 338 (applying the *Worrall* rule to award "an offset for interest" in an action for "specific performance" even after the enactment of Section 5001).

The Trustees' Equitable Offset Defense, to the extent it rests on a specific performance theory, thus has a "sound basis in law," *Fezzani*, 2022 WL 782751, at *3. The Court is mindful that it appears no court applying New York law has authorized an equitable offset in this precise context before. But this defense is consistent with the equitable maxims which have justified its application in other contexts, as well as general principles of contract-law remedies. *See Worrall*, 38 N.Y. at 142; *Aristocrat Leisure*, 727 F. Supp. 2d at 286-87. As the Trustees stand on firm principles of equity and contract law in seeking to add it, the amendment is not futile.

14

### 2. The Equitable Offset Defense Does Not Unfairly Prejudice Eric.

Eric does not assert that the Trustees acted in bad faith, *see generally* Opposition, so the Court turns to prejudice and undue delay. To establish prejudice, the party opposing amendment must show that the new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Delay, on its own, does not provide a basis to deny the right to amend, though "the longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (internal quotation marks omitted). "[C]omplaints of 'the time, effort and money . . . expended in litigating [the] matter,' without more," cannot "constitute prejudice sufficient to warrant denial of leave to amend." *Pasternak v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quoting *Block*, 988 F.2d at 351).

Eric contends that he would be unfairly prejudiced by the Equitable Offset Defense because he would have changed his litigation strategy had he known that he might need to pay a higher purchase price. Opposition at 6-12. In making this argument, Eric relies on a single and clearly distinguishable Second Circuit case, *Schipani v. McLeod*, 541 F.3d 158 (2d Cir. 2008). In *Schipani*, the district court granted summary judgment in favor of the plaintiff and referred the case to a magistrate judge to determine damages. The magistrate judge then gave leave to amend to a defendant who sought to allege facts that would apportion liability among several defendants. *Id.* at 160-61. The Second Circuit reversed, stating that the plaintiffs were prejudiced by the amendment because, first, apportionment was a liability issue, not a damages one, *id.* at 163, and second, had plaintiffs known "that a magistrate judge would ultimately apportion damages at an inquest, they may have pursued an entirely different litigation strategy," such as opposing referral to a magistrate judge or requesting that the jury apportion liability at trial. *Id.* at 164. "[T]he

15

unfairness to the [plaintiffs was] readily apparent" given that the plaintiffs had accepted referral to a magistrate judge for a damages inquest and, as a result of the amendment, were then subject to an "ambush[]" involving apportionment. *Id.*

Unlike the amendment in *Schipani*, allowing the Trustees to plead the Equitable Offset Defense would not require the Court to reopen this case's liability inquiry.[5]  The defense reaches a damages question only.  As for Eric's litigation strategy, it is possible that he might have adjusted it had he known he would need to make up for holding onto the value of the purchase price during the course of litigation, for example by moving for judgment on the pleadings.  *See* Opposition at 10; 9/8/25 Oral Arg. Tr. at 61:14-19 ("Had we known that each time we passed . . . September 30 of each year, we would have said to you [in the conference discussing Eric's letter motion for judgment on the pleadings that] . . . the reason why this matters to us is that the purchase price is increasing under their theory of the case.").  But even with this offset, Eric's purchase price has not increased when the time value of money is taken into account.  In contrast, absent amendment to add this defense, Eric may receive a windfall from holding onto the purchase-price funds during litigation and then paying, in 2025 (or later) dollars the nominal amount he would have paid beginning in 2022.  Thus granting the Trustees leave to add the Equitable Offset Defense does not turn "silence into a tactical advantage" in the way described in *Schipani*, 541 F.3d at 164.  The Court is not reconsidering a past determination (such as liability) based on the Trustees' "silence,"

---

[5] Eric falls back on a district court case that is distinguishable on a similar ground.  *See* Opposition at 11.  In *Stein v. Needle*, as in *Schipani*, the court concluded that a proposed amendment was prejudicial because it introduced new grounds for liability after the litigation already had transpired for years without the defendants' awareness that they could be liable for attorneys' fees and punitive damages.  No. 19 Civ. 1634 (VLB), 2021 WL 5889343, at *4 (D. Conn. Dec. 13, 2021).

and Eric is not facing any disadvantage with respect to liability under the Shareholder's Agreement.

Nor has Eric shown prejudice based on a need for significant new discovery. Though courts are likelier to find prejudice "where the parties have already completed discovery and moved for summary judgment," *EEOC v. Hillstone Rest. Grp., Inc.*, 346 F.R.D. 26, 33 (S.D.N.Y. 2024), the Trustees have represented that further discovery concerning the equitable offset would be "narrow and new." 9/8/25 Oral Arg. Tr. at 47:13-16; *see PNC Bank, N.A. v. Wolters Kluwer Fin. Servs.*, 73 F. Supp. 3d 358, 375-76 (S.D.N.Y. 2014) (permitting amendment to a complaint after summary judgment where the "areas of discovery . . . are extremely modest"). Eric does not refute that claim with respect to the Equitable Offset Defense, instead arguing only that new, time-consuming broad discovery would be necessary for the Tax Offset Defenses. 9/8/25 Oral Arg. Tr. at 59:18-23, 65:18-66:6. Moreover, in oral argument, Eric argued that an offset fit better within "the parameters of a final judgment," *id.* at 69:24-70:5, suggesting that, even without the amendment, he would still later need to prepare evidence and arguments about the proper offset calculation. Likely for the same reason, Eric fails to marshal evidence that this amendment will delay the resolution of this litigation.

\* \* \*

Eric may score a windfall without an equitable offset of the purchase price. Though he is entitled to the Barbara Trusts' shares (*i.e.*, the Trustees' full performance), his full performance requires him to pay, under the terms of the Shareholder's Agreement, the purchase price as it was at the Sale Date. An offset of an amount to be determined following limited discovery would put the Trustees and Eric in the position they would have been in had the contract been fully performed according to its designated timeline.

Because allowing the proposed Equitable Offset Defense, premised on a specific performance theory, would neither be futile nor prejudice Eric, the Court grants the Trustees leave to amend their Amended Answer to add that defense. The Court will separately order briefing on whether and to what extent to initiate discovery in order to calculate the equitable offset.

## B.    Tax Offset Defenses

The Trustees' proposed Tax Offset Defenses do not fare as well. They seek to add "two distinct affirmative defenses to address different time periods for which an equitable offset is appropriate given that the tax characteristics of the 1994 Trust changed on May 1, 2024." Motion at 19.[6] As the Trustees explain, "[d]uring the litigation, Boar's Head allocated K-1 income to the Charitable Trusts. Boar's Head has elected to be treated as an S corporation pursuant to IRC Section 1362." *Id.* at 20. "After her death, Barbara's Estate and the 1994 Trust made the Internal Revenue Code ('IRC') Section 645 ('Section 645') election, which permitted the 1994 Trust to be taxed as part of Barbara's Estate. While the Section 645 election was in effect, Barbara's Estate was the deemed S corporation Shareholder, notwithstanding the fact that the 1994 Trust Shares were held in the 1994 Trust." *Id.* Due to the Section 645 election, "the 1994 Trust could take a charitable deduction for one hundred percent (100%) of the K-1 income allocated to it from Boar's Head that was distributed by Boar's Head, because the ultimate beneficiary of the 1994 Trust is a

---

[6] As with the Equitable Offset Defense, the Tax Offset Defenses are most consequential if the Court applies a retroactive Sale Date. *See* Reply at 9. If the Sale Date is established at a date in the future, as the Trustees now claim it should be, then the negative tax consequences giving rise to the Tax Offset Defenses "likely will not come to pass or will be significantly mitigated." *Id.* As stated, the Court declines to pass on the Sale Date dispute given, as the Trustees admit, "an argument pertaining to the date the Court should ultimately deem to be the effective date for a share transfer is not, in and of itself, an 'affirmative defense.'" Motion at 11 n.8; *see supra* III.A.1.ii.

charitable foundation." *Id.*  As a result, the 1994 Trust paid no income tax on the K-1 income from the Boar's Head distributions.  *Id.* at 20-21.

The Trustees are concerned that, depending on the Sale Date of the disputed shares, there may be adverse tax consequences to the 1994 Trust.  As they state, "Boar's Head would be under no obligation to, but may decide to, file amended returns reallocating K-1 income from the 1994 Trust to Eric.  This could require Eric and the 1994 Trust to file amended returns, and the previously claimed charitable deductions could be disallowed.  In that scenario, the IRS may assess taxes, penalties, and interest on this income to the extent it is not actually distributed or available for distribution to the ███████████████████████."  *Id.* at 21.

The Trustees therefore seek to add a defense under which "the amount of any damages awarded to Eric should be offset against taxes, penalties, and interest that Trustees would have to pay to the IRS for continuing to hold the 1994 Trust Shares."  *Id.*  Otherwise, the "Trustees and the Charitable Trusts could be required to pay a potentially significant tax liability related to the ownership of the 1994 Trust Shares that will ultimately be transferred to another shareholder."  *Id.*

In addition, the Trustees explain that "[a]s a result of the conclusion of the review of Barbara's Estate and the termination of the Section 645 Election," the "1994 Trust is now treated as the taxpayer with different tax rules and applicable elections.  As of May 1, 2024, the 1994 Trust gets a charitable deduction for only amounts of gross income actually paid to the ███████ ███████████████████—*i.e.*, it no longer benefits from a set aside deduction."  *Id.* at 24.  "Based on the Court's [summary judgment] decision and without the availability of the one hundred percent (100%) charitable deduction(s), the 1994 Trust will have to pay income tax on a portion of the K-1 income allocated to it by Boar's Head after May 1, 2024 and amounts that the 1994 Trust ultimately does not retain."  *Id.* at 24-25.  Due to these factors, the Trustees seek to add a

second defense under which the Trustees would be "entitled to an equitable offset equal to the tax liability attributable to the 1994 Trust Shares after May 1, 2024." *Id.* at 25.[7]

The Court concludes that these defenses would be futile. At heart, the Trustees' theory for why they are entitled to these defenses is relatively simple: "if Eric owned the 1994 Trust Shares during the applicable period and all benefits of ownership accrue to him, he should incur the tax liability." Reply at 9. As a result, their two Tax Offset Defenses ask Eric to pay "taxes, penalties, and interest that Trustees would have to pay to the IRS for continuing to hold the 1994 Trust Shares" during this litigation and "the tax liability attributable to the 1994 Trust Shares after May 1, 2024." Motion at 21, 25; *see* Proposed Second Am. Answer at 50-52.

The problem with this theory, as Eric points out, is that the Trustees provide no source of authority which suggests "that Eric should foot the bill for their wrongdoing." Opposition at 18. This case concerns a breach of a contract. The Court has determined that the Trustees breached the Shareholder's Agreement by failing to sell Eric the shares held by the Barbara 1994 Trust that were offered up through the waterfall upon Barbara's death. *See* Opinion at 45, 53. To the extent the Barbara 1994 Trust and the Barbara 2010 Trust face potential penalties and tax liabilities, it is because the Trustees failed to comply with their obligations under the Shareholder's Agreement and, as a result, apparently took an improper election on their taxes. The Tax Offset Defenses

---

[7] At a few points, the Trustees suggest that their operative pleading already provides a basis for this defense. *See, e.g.*, Motion at 19 (contending that the "Trustees first raised their tax-related concerns years ago" (citing Dkt. 84 at 15 (Answer to the Complaint); Dkt. 161 at 3 (Answer to the TACC)). Eric disagrees. *See* Opposition at 14 ("The Trustees' oblique reference to tax consequences arising from a transfer of the Barbara Trust Shares did not place Eric on notice that years later they would seek to offset the *Distributions* they received on account of the Shares during the pendency of the dispute."). The Court offers no opinion on the effect of the Trustees' operative pleading as to the allocation of any tax liabilities, which is better resolved at a future time.

would shift the responsibility for the consequences of the Trustees' wrongdoing from them to Eric, the prevailing party.

The Court does not find such tax offsets to be an equitable outcome. As Eric observes, the Trustees' defenses "would put Eric in a worse position than he would have been in had the Trustees performed under the Shareholder's Agreement," Opposition at 17, a result which the Trustees themselves have argued, when advocating for the Equitable Offset Defense, would "contravene[] the law of contract damages" in New York, Reply at 7-8 (citing *Lucente v. Int'l Bus. Machs. Corp.*, 146 F. Supp. 2d 298, 304 (S.D.N.Y. 2001)). The Trustees make no real attempt to justify shifting their resulting tax liability and the penalties they may accrue from taking an improper election to Eric under the proposed Tax Offset Defenses, other than to say that Eric should incur the resulting tax liability if he rightly should have owned the shares during the pendency of this litigation. *See id.* at 9.

But this point elides the Trustees' role as the breaching party. There is no apparent basis under law or equity to shift the consequences of the Trustees' wrongdoing onto Eric. While the Trustees cite, in passing, the decision in *Gulino v. Board of Education of the City School District of the City of New York*, No. 96 Civ. 8414 (KMW), 2016 WL 4129111, at *3 (S.D.N.Y. Aug. 3, 2016), *see* Reply at 9, the tax adjustment in that case was "a tax-component award" given to prevailing class members for the purpose of "compensat[ing] claimants fully for the additional tax liability they will incur as a result of receiving years of backpay in one lump sum," *Gulino*, 2016 WL 4129111, at *3. As the court there explained, that award was "appropriate when necessary to make a claimant whole." *Id.* While the decision in *Gulino* observed that "there may be cases where a tax adjustment lowers, rather than increases, awards for class members," *id.*, the court's overall goal was to fully compensate a class of claimants and to avoid penalizing them for the

wrongdoer's actions. *Gulino*, which balanced the competing interests involved in class wide adjudication, does not support the inequitable result that the Trustees are advocating for, in which Eric would be forced to pay for the liabilities and resulting tax penalties that result from the Trustees' own actions and breach.

The Trustees profess that shouldering the liabilities would be inequitable with respect to them and the trusts' purported beneficiaries. *See, e.g.*, Motion at 5 ("Trustees have consistently maintained a neutral position in this litigation by not selling the Subject Shares before the Court resolved the competing declaratory judgment claims while also trying to minimize harm to the Charitable Trusts."); Reply at 2 ("Eric wants more than he is entitled to regardless of who suffers— here, charitable foundations."). *But see* Opposition at 3 ("[T]he Trustees' attempt to recast themselves as neutral parties to this dispute is belied by their active litigation efforts against Eric and in support of Frank."). They nonetheless fail to overcome the fatal flaw in their position: they are the breaching party and, if they had performed their obligations under the Shareholder's Agreement, the adverse tax consequences would not have resulted. As the principle on which Trustees rely for their Equitable Offset Defense has long made clear, it is "fundamental . . . that 'damages are meant to put a plaintiff in the same economic position he would otherwise be in but for a defendant's breach of contract.'" *Aristocrat Leisure*, 727 F. Supp. 2d at 287 (quoting *Boyce*, 464 F.3d at 392). Here, by contrast, the Trustees' Tax Offset Defenses would put Eric in a worse position and therefore equity would not support the use of such offsets in this case.

In sum, the Court concludes that the proposed offsets which the Trustees seek in the Tax Offset Defenses would lack a viable basis in law. As a result, these defenses "would have no impact on the outcome of the action," so their addition would be futile. *Jimenez*, 775 F. Supp. 3d at 699 (internal quotation marks omitted).

### IV.  Conclusion

For the foregoing reasons, the Court grants the Trustees' motion to amend with respect to their proposed Equitable Offset Defense to the extent it relies on a specific performance theory. The Court denies the Trustees' motion to amend with respect to their proposed Tax Offset Defenses.

This Opinion and Order shall initially be filed under seal.  The parties shall have until October 7, 2025, to file any proposed redactions to this Opinion and Order, as well as a joint letter addressing why these redactions are justified under *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110 (2d Cir. 2006).  The parties shall submit a single set of proposed redactions, but may explain any disagreements in their joint letter.

The Clerk of Court is respectfully directed to close Docket Number 509.

SO ORDERED.

Dated: September 30, 2025
New York, New York

JOHN P. CRONAN
United States District Judge